1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,      : 21-CR-265(PKC)
4                                   :
                                    :
5                                   :
         -against-                  : United States Courthouse
6                                   : Brooklyn, New York
7                                   :
                                    : June 15, 2023
8    MICHAEL McMAHON, ZHENG         : 9:00 a.m.
     CONGYING, and YONG ZHU, also   :
9    known as "Jason Zhu,"          :
                                    :
10         Defendants.
     - - - - - - - - - - - - - X
11
           TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
12         BEFORE THE HONORABLE PAMELA K. CHEN
              UNITED STATES DISTRICT JUDGE
13
14   A P P E A R A N C E S:
15
     For the Government:  BREON S. PEACE, UNITED STATES ATTORNEY
16                        EASTERN DISTRICT OF New York
                             271 Cadman Plaza East
17                           Brooklyn, New York 11201
                          BY:  MEREDITH ARFA, ESQ.
18                             CHRISTINE BONOMO, ESQ.
                               IRISA CHEN, ESQ.
19                             CRAIG HEEREN, ESQ.
                               Assistant United States Attorneys
20
21                        U.S. DEPARTMENT OF JUSTICE
                          NATIONAL SECURITY DIVISION
22                           950 Pennsylvania Avenue, NW
                             Washington, D.C. 20530
23                        BY:  CHRISTINE BONOMO, Trial Attorney
24
25

APPEARANCES (Continued):

For the Defendant          GIBBONS P.C.
Michael McMahon:               One Gateway Center
                               Newark, New Jersey 07102
                           BY: GENNA AUTUMN CONTI,  ESQ.
                               LAWRENCE S. LUSTBERG, ESQ.


For the Defendant          GOLDBERGER & DUBIN, P.C.
Zheng Congying:                401 Broadway - Suite 306
                               New York, NY 10013
                           BY: PAUL GOLDBERGER, ESQ.
                               RENEE M. WONG, ESQ.


For the Defendant          LAW OFFICE KEVIN KERVENG TUNG
Yong Zhu:                      136-20 38th Avenue
                               Flushing, New York 11354
                           BY: KEVIN K. TUNG, ESQ.


Court Reporter:   SOPHIE NOLAN - OFFICIAL COURT REPORTER
                      Telephone: (718) 613-2622
                      E-mail: NolanEDNY@aol.com


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

                         * *          * *

1              (In open court.)

2           (The Hon. Pamela K. Chen, presiding.)

3              (Defendants present.)

4       THE COURT:  While we're getting the jury, let me

5   confirm that the defense has seen the overt acts that the

6   Government prepared for the jury instructions.

7       MR. LUSTBERG:  Yes, Your Honor.  We reviewed them

8   last night and indicated our consent.

9       THE COURT:  Good.  Terrific.  Thanks.

10      (Jury enters.)

11      THE COURT:  Please be seated, everyone.  Good

12  morning, ladies and gentlemen of the jury.  I hope you had a

13  good evening and avoided the rain, or at least brought an

14  umbrella.  I did not.

15      Let's have Mr. Heeren continue his rebuttal.

16      MR. HEEREN:  Thank you, Your Honor.

17      THE COURT:  Go ahead.

18  CONTINUED REBUTTAL CLOSING ARGUMENT

19  BY MR. HEEREN:

20      MR. HEEREN:  Good morning.  As I briefly explained

21  yesterday, nothing counsel for the defendants said in their

22  closing changes the basic facts of this case.  The defendants

23  each agreed to participate in a scheme to harass and

24  intimidate the victims so that they would return to China.

25  And they did so at the direction of the Chinese government.

1        Now, I'm not going to repeat what I said yesterday,

2   but I do want to briefly remind you and reorient you to a few

3   of the points I had made.

4        First, the evidence against Congying Zheng is

5   overwhelming.  There is simply no question that he

6   deliberately left the threatening note for the victims to

7   find.  DNA, fingerprints and a video confirm that fact.

8   Counsel conceded as much.  His only defense was a claim of

9   withdrawal, which is not a defense to the crime of interstate

10  stalking.  And as I expect you will learn today, does not

11  support a defense to his involvement in the conspiracy either.

12       Remember that the evidence showed at the end of the

13  day Zheng successfully threatened his intended victims.  Xu

14  Jin and Liu Fang were the ones who found the note.  He did not

15  get it back when he went back.  They found the note and they

16  took it down, and they were, in fact, intimidated.  And of

17  course, as I mentioned yesterday, the note itself made clear

18  -- made plain to Zheng what was obvious.  This message had

19  been handed down to him from the Chinese government.

20       Second, as to Zhu Yong, as I mentioned yesterday, it

21  is indisputable that Zhu was in direct contact with multiple

22  Chinese government officials such as Hu Ji and Sun Hui.  Those

23  are some of the same officials who are running the overall

24  stalking conference with Defendant McMahon, who coordinated

25  with prosecutor -- Chinese prosecutor Tu Lan, and who directed

1    additional reporting from coconspirator Johnny Zhu.  This is

2    not a coincidence.  And Zhu Yong himself admitted as much in

3    his post arrest interview.  He knew Hu Ji had come to the

4    United States to locate the victim Xu Jin.

5              This is also not a mistake or confusion.  Zhu Yong

6    on his own in that interview explained in detail about the

7    Chinese government's structure involved in this operation, the

8    bureau involved, the different departments competing for it.

9    And he knew exactly what he was doing.  Go back to that e-mail

10   that defense counsel for Mr. Zhu put in, that agreement that

11   he forwarded to Sun Hui belonged to is the QQ account.  Look

12   at it again.  There's no message in that forward.  He just

13   forwards it.  He forwards it with no message because they have

14   already communicated.  He knows what he is getting.  No

15   explanation is needed because they had already been in touch.

16   They knew what the plan was.

17             So, I want to spend the remainder of what I hope

18   will be a short amount of time here responding to some of the

19   arguments made by Defendant McMahon's counsel.

20             Now, one of Mr. McMahon's arguments was that he was

21   contacted originally by an attorney that he knew, a friend of

22   his, and that he did not have any history of working with the

23   Chinese government.  But that's besides the point.  That was

24   never the proof.  That was never the argument.  It's not the

25   basis for these charges.  The issue is whether at some point

1  Mr. McMahon learned and knew he was working for the Chinese

2  government and agreed to do that work.  And the answer is he

3  learned right away, days after he was contacted.  You saw the

4  evidence.  You heard it in our original summation.  He had

5  done some cursory Googling and quickly learned that the

6  Chinese government was the one trying to arrest the person he

7  was hired to investigate.

8        Now, Counsel made much of the idea that the average

9  American wouldn't know what Skynet or Fox Hunt is, but we

10 don't need to wonder about the average American.  He had a

11 document in his possession that he read and then forwarded it

12 to himself again in 2017 that said "Operation Skynet is an

13 operation to get people back to China."  Go look at it

14 yourself and read the quote.  We don't have to wonder.  He

15 knew.  He had the information in hand.

16       Even after he learned that the target was wanted by

17 the Chinese government, he decided to take the job.  You read

18 the e-mail where he said "I accept this job."  And you know he

19 understood what he was doing because he told you as much after

20 he was arrested.  The goal of the conspiracy was to find Xu

21 Jin so they, meaning the Chinese government, could prosecute

22 him.

23       Compare Mr. McMahon's knowledge and actions or his

24 claimed knowledge and action to what Eric Gallowitz told you.

25 Eric Gallowitz, a former NYPD officer, a friend of

1    Mr. McMahon, a witness called by the defense.  His testimony

2    was that the circumstances were atypical.  That was the word

3    he used, atypical.  That means unusual, strange, different.

4    He told you he thought it was related to a criminal matter

5    based on seeing that Interpol notice that Mr. McMahon

6    forwarded to him.

7            Now, consider the fact that Eric Gallowitz only had

8    that small sliver of information.  He did not know the

9    clients, and he told you he did not attend the in-person

10   meetings with Chinese police officer who Hu Ji, co-defendant

11   Zhu Yong, and then that separate hour-long meeting between

12   McMahon and co-conspirator Johnny Zhu.

13           So consider that -- consider all of the additional

14   information that McMahon had, the fact that who he was hired

15   by kept changing, four or five different people, that he was

16   asked to obtain unusual information, such as international

17   travel information about these people, about their daughter's

18   major.  And I want to pause on that because counsel put up

19   Government Exhibit 3026, and said, take a look at this, it's

20   just financial information, who would know.  Go look at the

21   e-mail.  After a little talk about the financial information,

22   they say, by the way, what can you find out about the

23   daughter, what's her major, what is she studying, what is she

24   doing.  You don't need somebody's child's major for a lawsuit.

25   You need it so that you can tell the person we know her major.

1  That's an intimidating fact to learn that the Chinese

2  government has learned.

3           And of course, he knew that they were bringing an

4  old man from China to New Jersey. Another fact that Eric

5  Gallowitz didn't know. Gallowitz was able to tell you with a

6  small sliver of information that he knew something was wrong,

7  something was atypical. McMahon knew the full story. He knew

8  it was wrong. He absolutely knew.

9           Now, setting aside the fact that there is direct

10  evidence, as we've shown, that Mr. McMahon knew, like his own

11  statements, Mr. McMahon argued that he can't be convicted

12  because there's no single piece of writing that says, I direct

13  you to work for the Chinese government. You are to stalk this

14  person. That's not the law. As you will be instructed, and

15  as I'm sure you'll not find surprising, a criminal conspiracy

16  is often done in secret. And the criminal purpose is often

17  not spelled out in writing. It would not be a good move.

18           And here, we know that the defendants and their

19  conspirators deliberately left much of this criminal activity

20  to in-person meetings and telephone calls so the statements

21  could not be later used against them. Now, this is where

22  context matters.

23           Defense counsel put up that picture of McMahon and

24  Chinese police officer Hu Ji and co-defendant Zhu Yong and

25  said it's just three men standing in a Panera Bread and the

1  government wants to convict them for being three men standing

2  in a Panera Bread.  That's, of course, not the case.  That's

3  one piece of evidence in a larger set of evidence.  When you

4  look at it together, you know what it really means.  Think

5  about this picture.

6          Remember Government Exhibit 4044 at 788.  That's the

7  day of the meeting at that Panera Bread when that picture was

8  taken.  And Jason Zhu, through the interpreter, contacts

9  McMahon and says he needs to meet with McMahon ASAP.  You know

10 what that means.  When someone says I need to see you ASAP,

11 that means I need to talk to you about something important.

12 Not a chitchat.  Something important.

13         There's a reason why Zhu Yong and the Chinese police

14 officer, Hu Ji, traveled from China to New Jersey specifically

15 for that meeting, why they didn't leave it to an e-mail or

16 even a phone call.  They weren't going to tell the truth, the

17 detailed truth, of the criminal activity in something that

18 would be recorded.  They needed to tell McMahon about it in

19 person.  And you know that they told him something important

20 and what he told them by what happened next.

21         Immediately after that meeting, McMahon hits up his

22 buddy in the DEA, Greg Finning for international travel

23 information.  That's Government Exhibit 4006-B, pages 830 to

24 841.  And then a few weeks later, McMahon starts communicating

25 directly with Eric Yan, who you all know is Hu Ji, the Chinese

1  police officer.  Eventually passing him Department of Homeland

2  Security information about a person's travel outside of the

3  United States.

4          They met in person to talk about getting that

5  information because they knew that that was part of an illegal

6  scheme.  And there's a reason why they had that second

7  in-person meeting in April of 2017.  I'm not going to go into

8  this in too much detail because my colleague, Ms. Arfa, laid

9  this out to you very well.  She showed you those slides, if

10 you remember.

11         Let's just put them back up for a moment.

12         (Exhibit published.)

13         MR. HEEREN:  Again, context is everything.  The

14 surveillance photo of Mr. McMahon walking into the Panera

15 Bread with his co-conspirators is not the only evidence.  The

16 evidence is the day before, Prosecutor Tu Lan directed Johnny

17 Zhu to tell McMahon everything.  Then they had a meeting, an

18 hour-long meeting.  Defense counsel conceded as much, yes, it

19 is an hour-long meeting.  They weren't talking about the

20 weather for an hour.

21         After that hour-long meeting, the next day when the

22 operation goes into effect, when the father is brought here,

23 it's seamless.  There's no confusion.  There's no questions.

24 Johnny Zhu says, I just got the package, ETA 7:40.  The man

25 does not say, What?  What package?  What do you mean?  He

1  knows what's going on.  And when later Johnny Zhu says do you

2  see the old man?  Again, no confusion.  He knows who he's

3  talking about, what he's looking for and what he needs to be

4  observing in the middle of the night, because they spent an

5  hour talking about it.

6         It's fair to infer in circumstances like this that

7  based on the things they said in the writing and what they did

8  after meetings, you can infer what happened at those meetings

9  and you can infer fairly that it was part of the illegal

10 scheme and providing further information and knowledge to

11 Michael McMahon.

12        And, of course, I would be remiss if I didn't

13 mention during that post arrest interview when Mr. McMahon

14 admits, well, I knew they were going to prosecute him.  And

15 again, they were going to prosecute him.  That's never in any

16 writing.  That's not written down anywhere.  How did he know

17 that?  Because he was told it in those meetings and on phone

18 calls.  He was asked, well, how did you learn about all of

19 this?  And he answers, I think they told me on a phone call.

20 So we know it's not just the written evidence, although that

21 written evidence is quite damning.

22        Mr. McMahon pointed to several different items, and

23 it's the prevalent proof that he actually did not know.  None

24 of these arguments stand up to even basic scrutiny.  Let's

25 start with the first one.  McMahon makes much of the fact that

1   they used the word company in certain of the chat messages.

2          Please -- we put those chat messages in -- go review

3   them.  But I want to remind you of something.  Again, context

4   is everything.  Remember those initial conversations with

5   McMahon.  He's not told he's hired for a company.  First he's

6   told he's got a female client that wants to hire you.  Then

7   the gender changes and it's Mr. Jason Xu, who wants to hire

8   you.  He has a personal debt to collect.

9          And only later when Eric Yan shows up and they start

10  using the word "company."  And of course, in between those

11  times Mr. McMahon did the only bit of research before

12  accepting this and learned, well, it's the Chinese government.

13  He knew from the start that there was no company involved.  Go

14  read the text messages.  Go see if you can find a single

15  description of this supposed company.  See if you can find a

16  name for the company.  If McMahon thought he was working for a

17  company, don't you think he would at least know the name of

18  it?  Go look at his voice.  You heard from Eric Gallowitz he

19  invoices his client -- he invoiced his client, the business,

20  McMahon Investigative Group.  Compare that to Michael

21  McMahon's invoices.  No company there.  Eric Yan, Johnny Zhu,

22  Jason Zhu.  It tells you the story as well.  This talk of a

23  company is nothing.  It was a flimsy cover story that they

24  shared.  A nod and a wink to what was really happening.  A way

25  to talk around what they all knew was true.

1            And you know that because eventually towards the end

2    when they were excited because they had succeeded, Johnny Zhu

3    let slip the truth.  Government Exhibit 805-B, at pages 31 to

4    33.  After McMahon had located the address of Xu Jin.  After

5    this complex scheme to bring and force his father to the U.S.

6    to try to force him back had one objective of finding the

7    victim's home.  They started talking about next steps and they

8    were excited and Johnny Zhu said, the Government, they

9    definitely grant you a nice trip if you can get Xu back to

10   China.  Ha-ha.  And McMahon said, Oh, nice.  Again, to get Xu

11   back to China.  Not to get the money.  Not to do a lawsuit.

12   To get Xu back to China.

13            They didn't say we'll grant you extra for helping

14   that company, for helping Whatever, Inc., we still don't know

15   the name.  He talked about bringing Xu Jin back to China,

16   because that's what it was about, doing something for the

17   Chinese government.

18            As I mentioned before and allowed the waiver, even

19   Eric Gallowitz knew this wasn't something about the company.

20   It was a criminal matter.

21            And that leads me to my next point.  Defense counsel

22   said -- I forget the exact phrasing, but he described it as

23   normal private investigator work, ordinary couple of days of

24   surveillance.  Again, you know the evidence doesn't bear that

25   out.  Early on, he was told no attorneys involved.  His client

1   list keeps changing.  He's told Jason Zhu is owed money and

2   then Eric Yan, and then a guy named Johnny Zhu comes in.

3   Think about how he's paid.  It keeps changing.  He goes from

4   getting a wire to then -- as soon as he's notably -- after he

5   does the research and finds that China daily article about

6   Skynet, he transferred the cash, the $5,000 in cash that

7   doesn't make its way into a bank account.  $3,000 in cash that

8   he puts in his son's bank account.  That's not normal.  That's

9   not normal business activity.  And of course, most

10  significantly, it's not in a vacuum, all these pieces.  Most

11  significantly, the elephant in the room that was not addressed

12  when counsel was talking about normal surveillance, what was

13  he surveilling?  He was surveilling a driver and a doctor

14  bringing an elderly man to a house.  And he knew about that.

15  I asked Eric Gallowitz that question.  I said, you know,

16  dozens of surveillance, have you ever done anything like that

17  before in your life?  Never.  It's not ordinary.  It was

18  atypical, as he said.

19          And McMahon knew this wasn't ordinary PI work.  He

20  knew it.  He knew it was stalking and harassment because he

21  himself discussed ratcheting it up, harass them directly.

22          Now, McMahon also suggested in his argument that his

23  calls to the local police and to the DEA was somehow proof

24  that he wasn't involved.  Some suggestion that this was him

25  trying to do the right thing.  The exact opposite is true.

1  Rather than use his law enforcement background to steer clear

2  of this obvious criminal activity to report suspicious

3  activity, he actually used his experience to help the crime

4  succeed.  Think about it, McMahon leaned on his friend at the

5  DEA to take information from a sensitive government database.

6  He had his friend violate obvious government rules and

7  regulations so that he can pass that information back to a

8  Chinese official located in China.  Why?  Because he knew --

9  McMahon knew what he was doing was already illegal.  Hu Ji

10  asked him to get international travel information, and this

11  was the only way to get accurate information.  It demonstrates

12  McMahon's guilty mind.

13          Now let's talk about the contact to local police.

14  He contacts them when he's doing surveillance.  Not to tell

15  them, hey, I've got this atypical operation here with an old

16  man.  He contacts the police so they don't come.  Think about

17  it.

18          Go read the police report.  There's nothing about

19  the details of the operation in that police report.  The

20  police reports say, hey, just FYI, there's going to be some

21  PI's here, don't worry about any suspicious activity calls.

22  That's not designed to get the police's attention.  That's

23  designed to keep the police away.  Eric Gallowitz told you

24  that when I asked him that question.  He said they're less

25  likely to show up when you call.  That's the transcript, at

1  page 1831.  And, remember, they discussed this in realtime.

2  They put it in an exhibit, Government Exhibit EG 3.  Gallowitz

3  asked McMahon, you're not going to tell the local police why

4  we're here; correct?  And McMahon said, no, I'm not going to

5  do that.

6         He called the police to avoid being caught comitting

7  a crime because he didn't want somebody to call and say, hey,

8  there's several suspicious vehicles driving around the

9  neighborhood, can you see what's up.  They didn't want to be

10  frustrated in their pursuit.  He leveraged his role as a

11  private investigator and former police officer.  He used his

12  experience to ensure that no one would come and help if anyone

13  called now.

14         I want to briefly address Mr. McMahon's law

15  enforcement background a little bit more since it was a major

16  point at the beginning of this case.

17         Now, the evidence shows that McMahon knew what he

18  was doing, regardless of his background.  But to the extent

19  that you need to consider whether McMahon consciously avoided

20  knowing what was going on, consider this fact:  If anyone

21  should have known what he was doing was wrong, that there were

22  major red flags that he should have looked into, that he was

23  obviously participating in criminal activity, it was a former

24  member of law enforcement.  I won't belabor all the unusual

25  circumstances again, but think about all of those things we

1    talked about.  You would think that a former member of law

2    enforcement, a former detective, you heard from Eric

3    Gallowitz, detectives investigate crimes and they're supposed

4    to ask questions.  When something doesn't add up, you follow

5    up.  That's why I asked those questions.  It's obvious.  But I

6    had to draw it out, because McMahon didn't do those things,

7    despite his training and experience.  He didn't ask those

8    questions.  He didn't investigate.  He looked the other way,

9    at best.  He knew what an arrest warrant was.  He knew what it

10   meant to prosecute somebody.  He knew what was going on.

11          Now, counsel pointed to our arguments about

12   Mr. McMahon's financial activity in this scheme and argued

13   that we were just claiming he was guilty because he was paid

14   in cash.  And that's obviously not true.  Yes, people get paid

15   in cash sometimes, we agree.  The point is the nature of the

16   financial transactions and how deeply suspicious they were.

17          Will you please put up that slide again?

18          (Exhibit published.)

19

20          (Continued on the following page.)

21

22

23

24

25

1  (Continuing)

2           (Exhibit published.)

3           MR. HEEREN:  This is not a single payment in cash.

4  Just look at how this evolved over time.  This is consistent

5  with a person who knows this cash is coming from something

6  illegal and he's trying to walk away from it, push it away

7  from his business.  Some of it he doesn't even put an account.

8  Just because he conceals it badly doesn't mean it's not an

9  attempt to conceal it.

10          And I would note, Counsel didn't even respond when

11  he was making his point to the fact that $5,000 is just

12  unaccounted for.  Just takes it and doesn't put it anywhere.

13  Why does he do that?  Why don't he account for it?  He knows

14  that money is dirty.

15          And I would note that the payments to his son's

16  account, it wasn't even supposed to go there.  Go back to

17  Government's Exhibit 805-B at pages 14 to 17.  Johnny Zhu is

18  the one who suggests putting the money into a bank account.

19  And he says:  I don't want to drive two hours again.  He

20  doesn't want to drive two hours again.  McMahon is the one who

21  said:  drive two hours to drop it to me in cash.  He wanted it

22  in cash.  So if he had had it this way, it would be $8,000

23  that is in a question mark box.

24          Why would you do this if this was an ordinary

25  business transaction?  You heard from Paul Brickfield.  We

1  asked him.  Has he ever paid Mr. McMahon that way?  The answer

2  was:  No.

3          And the tax returns that we pointed to just cement

4  this point.  He received a large amount of money, and I'm not

5  going to quibble about it; they claim it's $11,000 not

6  $19,000.  Even if we're talking about net instead of gross

7  profit, $11,000 for what they claim is five days of work is

8  quite a bit of money still.  He received a large amount of

9  money that he ultimately did not report.  And as I expect you

10  will hear, you are going to be instructed that willful intent

11  or guilty knowledge may be inferred from the secretive or

12  regular manner in which a transaction is carried out.  The way

13  that money moved into McMahon's pockets is obviously

14  irregular.

15          Finally, I want to last talk about stalking; the

16  stalking charges, which is where McMahon's Counsel ended.

17  Counsel for McMahon wants you to limit your consideration of

18  whether McMahon engaged in stalking to only hit McMahon's

19  personal, individual conduct.  But that's not how aiding and

20  abetting liability works.  If McMahon associated himself with

21  a crime and took steps to help make that crime succeed, then

22  he is guilty of aiding and abetting.  If someone who helps

23  another person commit a crime is -- someone who helps another

24  commit a crime is as guilty as if he had committed the crime

25  himself.  Listen to the instructions on it and follow the

1    Court's instructions.

2         So here, even if you don't believe that McMahon

3    personally harassed or intimidated the victims, though I

4    submit the evidence shows he did just that, he certainly took

5    steps to make the stalking done by Tu Lan, Johnny Zhu, and the

6    others in that scheme succeed.  He knew about the April 2017

7    plan to bring the father over.  He actually helped Johnny Zhu

8    and his coconspirators keep the operation under wraps by

9    calling the police and keeping them at bay.  He agreed that he

10   would -- he would surveil the house while the father went in

11   and then followed whoever went to meet with the elderly man.

12   He helped the plan succeed through his overall course of

13   conduct.  That's enough.  That makes him an aider and abettor.

14        Now a few other minor points.

15        Counsel argued that McMahon was never seen during

16   the surveillance operation so he couldn't have possibly

17   harassed him or intended to harass him.  I just want to note,

18   that's just wrong.  The evidence proves otherwise.  It was at

19   the beginning of the case, but Liu Yan testified, the

20   sister-in-law.  She testified, if you recall, that she saw

21   someone that she thought was tailing her, following her, the

22   morning she was driving her father to the mall.  Remember she

23   described the person as non-Chinese.  And that's actually, she

24   thought, you know, she was a little bit less stressed out by

25   it, okay, probably just be a Chinese person who's following

1   me.  That's at page 98 of the transcript.

2          And if you are remember, around that time we showed

3   her a picture that she identified as herself, right?  She said

4   yeah, that's me.  And that was Government's Exhibit, I

5   believe, 4010-A.  Go look at Government's Exhibit 4010 at

6   page 123.  Those are text messages between Michael McMahon and

7   Johnny Zhu from April 6th, 2017, in the morning.  And he texts

8   Johnny Zhu a picture of Liu Yan that he took on surveillance,

9   while she was driving her father to the Livingston mall.  It

10  was not totally covert.  He was seen.  And he was startled.

11  He was frightened.

12         And, of course, you know that McMahon did not want

13  to be totally covert.  He told them:  Let's go over, let's

14  harass them.  It's a small part of the overall scheme, but

15  it's important to remember that this was not, in fact, covert.

16         Another incorrect statement that was made was that

17  well, they didn't need McMahon's help, they didn't get the

18  address from McMahon, there's no evidence that they actually

19  got Xu Jin's address from Michael McMahon.  Again, that's not

20  correct.  Government's Exhibit 805-B, at page 5.  We had it

21  redacted because we didn't want to show the exact address on

22  screen, but go look at the unredacted version that you'll have

23  access to.  McMahon texts Johnny Zhu the exact address.

24  That's the first time in the evidence of the address being

25  received, confirming Xu Jin lives there.

1        Go to Government's Exhibit 2002, right around that

2    same time.  McMahon e-mails the surveillance photos he then

3    takes of the home at that address to Johnny Zhu, which Johnny

4    Zhu then forwards up the chain to his Chinese government

5    handlers.

6        And then, of course, go to Government's

7    Exhibit 3074, a direct email between Chinese police officer Hu

8    Ji as Eric Yan, to Michael McMahon, where he literally says:

9    Thank you for finding Xu Jin's address.  Again, it's one piece

10   of the overall scheme, but it was a critical piece.  He was

11   essential.

12       You know, finally, Counsel for all the defendants

13   argued in various ways that their clients are the real victims

14   here.  I think one of them said, you know, my client was a

15   victim, too.  I don't want to spend too much time on that, but

16   I do want to just pause on that thought for a second.  I want

17   to ask you to think about that and consider whether, based on

18   their actions, what they did, they're victims here.  I don't

19   think it merits too much more discussion.

20       But I do want to talk about one thing.  Counsel for

21   McMahon went one step further.  He argued that Xu Jin and his

22   family didn't suffer substantial emotional distress and I want

23   to stop and say that the law only requires us to show that the

24   intent was to cause substantial emotional distress, whether or

25   not you are actually distressed.

1        But be that as it may, the argument was, well, were

2   they really upset by this?  They sent the father back to

3   China.  Think about the testimony you heard.  You're the

4   people who assess it.  You determine its credibility.  Think

5   about how upset each of those victims were when they testified

6   before you.  I know it was at the beginning of the case, but

7   think about how Liu Yan talked about what she saw in her

8   sister after all this had happened, her withdrawal from her

9   family, from society, how upset that made her.  Think about

10  how upset Liu Fang was as she described the toll it had taken

11  on her life and her family.  And this incredible, incredible

12  claim that the decision to let their father return to China

13  with the PRC officials that were sent as minders was somehow

14  proof that they were not distressed.

15       You heard evidence of why they did that.  Go back to

16  that testimony.  They told you, their father's wife, the

17  grandmother, was still in China.  Xu Jin's sister, that man's

18  daughter, was there and they were threatening to throw her

19  back in prison if he did not return.  Think about the

20  incredible, heart-rending stress of that situation for Xu Jin

21  and their family.

22       Think about the dilemma; well, I don't want my

23  father going back with these people, but I know they have my

24  grandmother -- I know they have my mother and my sister.

25  Think about the choice for the father.  Does anyone seriously

1  believe they wanted that choice?  Why do you think they just

2  sent Xu Jin's father?  This wasn't a family trip for a reason.

3  Just the father.  Leave the mother behind.  Leave the sister

4  behind.  Because they are forcing their return.  The notion

5  that the victims did not suffer distress from this situation

6  or that it was not intended by this scheme is just without

7  merit.

8          You know, you think it should go without saying, but

9  given the facts of this case and what the defendants did, it

10  apparently needs to be said aloud.  A person living in the

11  United States should not have to live in fear that they will

12  receive a knock at the door and discover that their elderly

13  family member has been forced to travel around the world by a

14  large group of men and women.  A person living in the United

15  States should not have to live in fear that strangers will try

16  to enter their home and leave a note threatening the safety of

17  their wife and child.  A person living in the United States

18  should not have to live in fear that men working for a foreign

19  government will try to force him to leave his home, leave his

20  family, and travel to another country against his will.

21          The three defendants before you helped a foreign

22  government to work outside the U.S. system to talk and to

23  harass the victims in the hope of using fees to coerce their

24  return to China.  The defendants are responsible for their

25  conduct and that conduct was illegal.

1          Now, unlike the victims that the defendants stalked

2    for the Chinese government outside of the U.S. system, the

3    defendants in this case have been given their due process.

4    We've reached the end of the criminal justice process where

5    the defendants have had a fair trial.  Now it's time for them

6    to be held accountable for their actions, for terrorizing the

7    people you saw here at the direction of the Chinese

8    government.

9          Ladies and gentlemen, find these defendants guilty.

10   Not because I say they're guilty, not because my colleagues

11   say they're guilty, but because the facts, the evidence,

12   proves they are guilty beyond a reasonable doubt.  Find the

13   defendants guilty because they are guilty.

14         Thank you for your time.

15   JURY CHARGE

16   BY THE COURT:

17         THE COURT:  Thank you very much, Mr. Heeren.

18         So, Ladies and Gentlemen, I am now going to instruct

19   you on the law.  We are also going to have the charge

20   projected on the overhead so you can read along.  And my

21   philosophy, if I have not said this before in the trial,

22   though I think I did, is the trip always seems a little

23   shorter if you know where you are going.  So, the total number

24   of pages is 42 and let me say this, the law requires that I

25   read it into the record.  Because you will be getting a

1   hardcopy so you may wonder to yourself, why do I need to read

2   it to you then, because you are all capable of reading?  But I

3   am required to read it into the record and to you to ensure

4   that you actually hear the instructions that you will receive

5   in paper as well.  Okay.

6           So, Ladies and Gentlemen of the Jury, now that you

7   have heard all of the evidence in the case as well as the

8   arguments of the lawyers -- and again, my apologies to the

9   folks here that I cannot see you while I am doing this -- it

10  is my duty to give you instructions as to the law applicable

11  in this case.  We are all grateful to you for the close

12  attention you have given to this case thus far.  I ask that

13  you continue to do so as I give you these instructions.  You

14  will be receiving a paper copy of these instructions for use

15  during your deliberations and you may request multiple copies

16  as well.  But be considerate of the trees.

17          The defendants Michael McMahon, Zheng Congying and

18  Zheng Yong are charged with conspiracy to act as agents of a

19  foreign government, acting a agents of a foreign government,

20  conspiracy to engage in interstate stalking, and interstate

21  stalking.  The defendants have pleaded not guilty to these

22  charges and are presumed innocent.

23          My instructions will be in three parts:

24          First, I will instruct you regarding the general

25  rules that define and govern the duties of a jury in a

1  criminal case such as this;

2          Second, I will instruct you as to the particular

3  crimes charged in this case and the specific elements the

4  Government must prove with respect to each chime, and;

5          Third, I will give you some general rules regarding

6  your deliberation.

7          That actually should be deliberations.  It could be

8  either, but we'll go with deliberations.

9          So I am not going to read the table of contents,

10 that is merely there for your ease of reference.

11         Turning now to the general instructions:  Role of

12 the Court and jury.

13         Let me start by restating our respective roles as

14 Judge and jury.

15         Your duty, as I mentioned in my opening

16 instructions, is to find the facts from all of the evidence in

17 this case.  You are the sole judges of the facts, and it is

18 for you and you alone to determine what weight to give the

19 evidence, to resolve such conflicts as may have appeared in

20 the evidence, and to draw such inferences as you deem to be

21 reasonable and warranted from the evidence.

22         My job is to instruct you on the law.  You must

23 apply the law in accordance with my instructions, as to the

24 facts as you find them.  Sorry -- to the facts as you find

25 them.

1    And let me say this:  I unfortunately cannot read it

2 any faster than I am because we do have a court reporter and

3 translators who need to be able to do their jobs as I read.

4 Okay.

5    I remind you of your sworn obligation to follow the

6 law as I describe it to you, whether you agree with it or not.

7 You should not be concerned about the wisdom of any rule of

8 law that I state:  Regardless of any opinion you may have

9 about what the law may be -- or should be -- it would be a

10 violation of your oaths as jurors to base your verdict upon

11 any other view of the law than the one given to you in these

12 instructions.

13    If any of the lawyers have stated a legal principle

14 that differs from any that I state to you in my instructions,

15 you must be guided solely by what I instruct you about the

16 law.  You should not single out any one instruction as alone

17 stating the law, but should consider my instructions as a

18 whole.

19    Since it is your job -- not mine -- to find the

20 facts, I have neither expressed, nor attempted to intimate an

21 opinion about how you should decide the facts of this case.

22 You should not consider anything I have said or done in the

23 course of the trial, including these instructions, as

24 expressing any opinion about the facts or the merits of this

25 case.  This includes sustaining or overruling objections.  For

1  example, on occasion, I may have asked questions of a witness.

2  You should attach no special significance to these questions

3  simply because they were asked by me.

4         The defendants have been charged in an Indictment

5  with violating Federal laws.  The Indictment is merely a

6  statement of the charges against the defendants.  The

7  Indictment is not itself evidence, nor does it create an

8  inference of guilt.  As previously stated, the defendants have

9  entered a plea of not guilty to the charges against them in

10  the Indictment.

11         You must determine the facts in this case based

12  solely on the evidence presented, or those inferences which

13  can reasonably be drawn from the evidence presented.  Evidence

14  has been presented to you in the form of sworn testimony from

15  witnesses and documentary Exhibits that have been received in

16  evidence by me.

17         There are rules of evidence that control what can be

18  received into evidence.  When a lawyer asks a question or

19  offers an Exhibit into evidence, and a lawyer on the other

20  side thinks that it is not permitted by the rules of evidence,

21  that lawyer may object -- which you, of course, saw and heard

22  during the trial.  This simply meant that the lawyer wanted me

23  to make a decision on a particular rule of evidence.  Lawyers

24  have a duty to their client to object when they believe

25  something is improper under the rules of evidence.  You should

1   not be influenced by the objection itself.  If I sustained an

2   objection, you must ignore the question or Exhibit and must

3   not try to guess what the answer might have been or the

4   Exhibit might have contained.  If I overruled the objection

5   and the evidence was admitted, you should consider it like any

6   other evidence, but should not give it special attention

7   simply because of the objection.  Furthermore, as I will also

8   instruct you later, certain evidence was admitted only for a

9   limited purpose.

10          Certain things are not evidence and are to be

11  entirely disregarded by you in deciding what the facts are:

12  The Indictment; arguments, statements, or summations by the

13  lawyers; objections to the questions or to the offered

14  Exhibits, and; any testimony that has been excluded, stricken,

15  or that you have been instructed to disregard.

16          As I mentioned in my opening instructions, there

17  are, generally speaking, two types of evidence, direct and

18  circumstantial.  You may use both types of evidence in

19  reaching your verdict in this case.  There is no distinction

20  between the weight to be given to these two types of evidence.

21  You must base your verdict on a reasonable assessment of all

22  of the evidence in the case.

23          Direct evidence is testimony from a witness about

24  something he or she knows by virtue of his or her own

25  senses -- something he or she has seen, felt, touched, tasted,

1    or heard.

2           The other type of evidence -- circumstantial

3    evidence -- is proof of a chain of circumstances that points

4    to the existence or nonexistence of certain facts.  A simple

5    example of circumstantial evidence is as follows:  And

6    Mr. Lustberg did talk about this -- suppose you came to court

7    on a day when the weather was clear, sunny and dry, just like

8    today.  However, after several hours in the courtroom where

9    there are no windows, you observe a person come in wearing a

10   wet raincoat and another person shaking a wet umbrella.

11   Without you ever looking outside, you would not have direct

12   evidence that it rained, but you might infer from these

13   circumstances that while you were sitting in court, it rained

14   outdoors.

15          That is all it there is to circumstantial evidence.

16   On the basis of reason, experience, and common sense, you

17   infer the existence or nonexistence of a fact from one or more

18   established facts.

19          You are permitted to draw, from the facts that you

20   find to have been proved, such reasonable inferences as would

21   be justified in light of your experience.  Inferences are

22   deductions or conclusions that reason and common sense lead

23   you, the jury, to draw from the facts that have been

24   established by the evidence in the case.  Use your common

25   sense in drawing inferences; however, you are not permitted to

1   engage in mere guesswork or speculation.

2          There are times when differing inferences may be

3   drawn from facts, whether proved by direct or circumstantial

4   evidence.  Perhaps the Government asks you to draw one, and

5   the defendant asks you to draw another.  It is for you, and

6   you alone, to decide what inferences you will draw.

7          No significance should be attached to the fact that

8   a document, other Exhibit, or witness testimony was introduced

9   by one party rather than by the other.  Any party is entitled

10  to the benefit of any evidence tending to establish its

11  contentions, even though such evidence may have come from

12  witnesses or documents introduced by another party.

13         In deciding what the facts are in this case, you

14  must consider all of the evidence that has been offered.  In

15  doing this, you must decide which testimony to believe and

16  which testimony not to believe.  You are the sole judges of

17  credibility of the witnesses and the weight their testimony

18  deserves.  Your determination of the issue of credibility very

19  largely must depend upon the impression that a witness made

20  upon you as to whether or not that witness was telling the

21  truth or giving you an accurate version of what occurred.  You

22  may choose to disbelieve all or part of any witness's

23  testimony.  In deciding whether and to what extent to believe

24  a witness's testimony, you may take into account any number of

25  factors, including the following:

1      The witness's opportunity to see, hear, and know

2 about the events he or she described;

3      The witness's ability to recall and describe those

4 things;

5      The witness's manner in testifying -- was the

6 witness candid and forthright or did the witness seem as if he

7 or she was hiding something, being evasive, or suspect in some

8 way;

9      How the witness's testimony on direct examination

10 compared with how the witness testified on cross-examination

11 examination;

12      The reasonableness of the witness's testimony in

13 light of all of the other evidence in the case;

14      Whether the witness had any possible bias, any

15 relationship to a party, any motive to testify falsely, or any

16 possible interest in the outcome of the trial, and;

17      Whether the witness's testimony was contradicted by

18 his or her other testimony, by what that witness said or did

19 on a prior occasion, by the testimony of other witnesses, or

20 by other evidence.

21      Inconsistencies or discrepancies in the testimony of

22 a witness, or between the testimony of different witnesses,

23 may or may not cause you to discredit such testimony.  In

24 weighing the effects of a discrepancy, you should consider

25 whether it pertains to a matter of importance or an

VB          OCR          CRR

1  unimportant detail, and whether the discrepancy results from

2  an innocent error or intentional falsehood.

3          If you find that any statement by a witness on the

4  stand is false, in whole or in part, you may disregard the

5  particular part you find to be false or you may disregard his

6  or her entire testimony as not worthy of belief.

7          The defendants did not testify in this case.  Under

8  our Constitution, they have no obligation to testify or to

9  present any other evidence because it is the Government's

10 burden to prove their guilt beyond a reasonable doubt.  A

11 defendant is never required to prove that he is innocent.

12         You may not attach any significance to the fact that

13 the defendants did not testify, nor may you draw any adverse

14 inference against the defendants because they did not take the

15 witness stand.  In your deliberations in the jury room, you

16 may not consider this decision against the defendants in any

17 way.

18         During the trial, you heard testimony from current

19 and former law enforcement officers.  The fact that a witness

20 is or was employed as a law enforcement official does not mean

21 that his or her testimony is deserving of more or less

22 consideration or greater or lesser weight than that of an

23 ordinary witness.  It is for you to decide, after weighing all

24 the evidence and in light of the instructions I have given you

25 about the factors relevant to determining the credibility of

1    any witness, whether to accept the testimony of a law

2    enforcement witness, and what weight, if any, that testimony

3    deserves.

4            In this case, I have permitted certain witnesses to

5    express their opinions about matters that are in issue.  A

6    witness may be permitted to testify to an opinion on those

7    matters about which he or she has special knowledge, skill,

8    experience and training.  Such testimony is presented to you

9    on the theory that someone who is experienced and

10   knowledgeable in the field can assist you in understanding the

11   evidence or in reaching an independent decision on the facts.

12           In weighing that opinion testimony, you may consider

13   the witness's qualifications, his or her opinions, the reason

14   for testifying, as well as all of the other considerations

15   that ordinarily apply when you are deciding whether or not to

16   believe a witness's testimony.  You may give the opinion

17   testimony whatever weight, if any, you find it deserves in

18   light of all the evidence in this case.  You should not,

19   however, accept opinion testimony merely because I allowed the

20   witness to testify concerning his or her opinion, nor should

21   you substitute it for your own reason, judgment and common

22   sense.  The determination of the facts in this case rests

23   solely with you.

24           During this trial, you have heard argument about

25   "cooperating witnesses" and whether you should believe them or

1  not.  The Government argues, as it is permitted to do, that it

2  must take the witnesses as it finds them, and experience will

3  tell you that the Government sometimes must rely on the

4  testimony of a witness who admits to participating in criminal

5  activity to show criminal behavior by others.  For that

6  reason, the law allows the use of accomplice and coconspirator

7  testimony.  Indeed, it is the law in Federal Court that such

8  testimony may be enough, standing alone, for conviction if the

9  jury finds that the testimony establishes guilt beyond a

10 reasonable doubt.

11         However, it is also the case that cooperator

12 testimony is of such a nature that it must be scrutinized with

13 great care and viewed with particular caution when you decide

14 how much of that testimony, if any, to believe.  I have given

15 you some general considerations on credibility, and I will not

16 repeat them all here.  Instead, I will say a few things that

17 you may want to consider during your deliberations on the

18 subject of cooperating witnesses.

19         You should ask yourselves whether these witnesses

20 would benefit more by lying or telling the truth.  Was their

21 testimony made up in any way because they believed or hoped

22 they would how receive favorable treatment by testifying

23 falsely?  Or did they believe their interests would be served

24 by testifying truthfully?  If you believe a witness was

25 motivated by hopes of personal gain, was this motivation one

1  that would cause him to lie or would cause him or her to tell

2  the truth?  Did this motivation color his or her testimony at

3  all?

4          You have heard evidence that a Government witness

5  has pleaded guilty to charges arising out of some of the same

6  facts that are at issue in this case.  That evidence is before

7  you solely to assist you in evaluating the credibility of that

8  witness.  You are instructed that you are to draw no

9  conclusions or inferences of any kind about the guilt of the

10 defendants on trial before you from the fact that a

11 prosecution witness pleaded guilty to crimes.  The decision of

12 that witness to plead guilty was a personal decision that

13 witness made about his own guilt.  It may not be used by you

14 in any way as evidence against or unfavorable to the

15 defendants.

16         Finally, in relation to cooperating witnesses, you

17 have also heard testimony in this case about who will decide

18 the sentence of such a witness.  The question of punishment of

19 a cooperating witness is a duty that rests exclusively upon

20 the sentencing court, and you should not think about that

21 except as it may affect the witnesses credibility.

22         There was testimony at trial that the attorneys and

23 agents for the Government interviewed witnesses when preparing

24 for and during the course of the trial.  You should not draw

25 any unfavorable inference from that testimony.  Attorneys have

1    an obligation to prepare their case as thoroughly as possible

2    and, in the discharge of that responsibility, to interview

3    witnesses.  However, you may consider the frequency and

4    duration of these preparation sessions, and the impact they

5    may have had on the witness's testimony, in evaluating the

6    credibility of the witness.

7              Although the Government bears the burden of proof

8    beyond a reasonable doubt, and although a reasonable doubt can

9    arise from lack of evidence, you are instructed that there is

10   no legal requirement that the Government use any specific

11   investigative techniques or pursue every investigative lead to

12   prove its case.  Therefore, although you are to carefully

13   consider the evidence adduced by the Government, you are not

14   to speculate as to why they used the techniques they did or

15   why they did not use other techniques.

16             Additionally, the law does not require that all

17   things mentioned during the course of the trial be produced as

18   Exhibits.  Your concern is to determine whether or not, on the

19   evidence or lack of evidence, a defendant's guilt has been

20   proved beyond a reasonable doubt.

21

22             (Continued on following page.)

23

24

25

1   (Continuing)

2            THE COURT:  In this regard, I also charge you that

3   all persons who may have been present at any time or place

4   mentioned in the case, or who may appear to have some

5   knowledge of the issues in this case need not be called as

6   witnesses.  There is no duty on either side, however, to call

7   a witness whose testimony would be merely cumulative of

8   testimony already in evidence, or who would merely provide

9   additional testimony to facts already in evidence.  I remind

10  you, however, that because the law presumes that each

11  defendant is innocent, the burden of proving his guilt beyond

12  a reasonable doubt is on the Government throughout the trial.

13  Defendants do not have the burden of proving their innocence

14  or of producing any evidence or calling any witnesses at all.

15           During the trial in this case, you have heard

16  evidence concerning a variety of investigative techniques and

17  methods of collecting evidence.  Evidence was properly

18  admitted in this case and may be considered by you.  I

19  instruct you that any evidence that was presented to you was

20  obtained legally and you must give the evidence -- sorry --

21  must give the evidence consideration along with all the other

22  evidence in this case in determining whether the Government

23  has proved each of the defendants guilt beyond a reasonable

24  doubt.

25           During the trial, you have heard from some witnesses

1   who testified in Mandarin or Cantonese, and whose testimony

2   was translated into English.  You have also been shown

3   documents that were partially or entirely written in Chinese,

4   and you were provided with English translations of those

5   documents or portions of documents.  The interpreters

6   translated the witness' testimony and the parties agreed on

7   the English translations of the documents, recordings and

8   records.  Chinese-to-English translations of that evidence

9   have been admitted into evidence.  All jurors must consider

10  the same evidence.  If any of you speak Mandarin or Cantonese

11  or read Chinese, you must base -- you must all base your

12  decision on the evidence presented in the English translation.

13  These translations are evidence, not just guides, and I

14  instruct you to consider them just like any other evidence in

15  this case.

16          The parties presented certain evidence in the form

17  of charts and summaries.  These charts and summaries were

18  shown to you in order to make the other evidence more

19  meaningful and to aid you in considering the evidence.  They

20  are no better than the documents about which they are based

21  and are not themselves independent evidence.  Therefore, you

22  are to give no greater consideration to these charts or

23  summaries than you would give to the evidence upon which they

24  are based.  It is for you to decide whether the charts,

25  schedules, or summaries correctly present the information

1  contained in the testimony and in the exhibits on which they

2  are based.  You are entitled to consider the charts,

3  schedules, and summaries if you find that they are of

4  assistance to you in analyzing and understanding the evidence.

5          The Government has been permitted to distribute or

6  use transcripts, some in the form of subtitles, containing the

7  Government's interpretation of what was said on audio or video

8  recordings that were received into evidence.  Those

9  transcripts were provided to you as an aid or guide to assist

10  you in listening to the recordings.  However, they are not in

11  and of themselves evidence, and the versions of the video

12  recordings containing subtitles were not admitted as evidence.

13  You alone should decide what appears on the recordings based

14  on what you heard.  If you think you heard something

15  differently than it appeared on the transcript, then what you

16  heard controls.

17          A stipulation is an agreement among the parties that

18  a certain fact is true.  You should regard such agreed facts

19  as true.

20          During the trial, you have heard evidence about the

21  involvement of other persons in the events related to this

22  case.  You may not draw any inference, favorable or

23  unfavorable, toward the Government or the defendants from the

24  fact that a certain person or people are not on trial before

25  you.  Your certain concern is solely the defendants on trial

1    before you.  You should neither speculate as to the reason

2    these people are not on trial before you or allow their

3    absence as parties to influence in any way your deliberations

4    in this case.

5            During the trial in this case, I admitted particular

6    items of evidence for a limited purpose.  This evidence can be

7    considered by you only for that particular purpose and not for

8    any other purpose.

9            Throughout this trial, there have also been

10   references to alleged crimes committed by Xu Jin, X-U J-I-N,

11   and/or his family members in the People's Republic of China,

12   which I will also refer to in these instructions as China.

13   Whether these crimes were committed or not has no bearing on

14   the case before you, and you should not consider or speculate

15   about the merits of these allegations.

16           Finally, the Government has argued that some of the

17   conduct that -- you know what, Kate, we should remove that

18   "finally."

19           The Government has argued that some of the conduct

20   that Mr. McMahon engaged in allegedly as part of the crimes

21   charged in this case may have also violated other law, namely,

22   violating a user agreement and privacy laws in connection with

23   certain databases.  Mr. McMahon is not charged with any

24   offenses as a result of these violations and evidence that he

25   may have violated this or any other laws, including tax laws,

1    was admitted for a limited purpose, and you should only

2    consider that evidence in deciding whether Mr. McMahon had the

3    requisite intent to commit the crimes charged in the

4    indictment, and for no other purpose.

5            Finally, on cross-examination, Mr. Gallowitz was

6    asked about certain Civilian Complaint Review Board

7    proceedings with regard to Mr. McMahon.  Those proceedings

8    were only raised in the context of assessing Mr. Gallowitz's

9    opinion of Mr. McMahon and can only be considered by you in

10   evaluating that opinion.

11           Both the Government and the defense have the same

12   right to subpoena witnesses to testify on their behalf.  There

13   is no duty on either side, however, to call a witness whose

14   testimony would be merely cumulative of testimony already in

15   evidence, or who would merely provide additional testimony to

16   facts already in evidence.

17           I remind you, however, that because the law presumes

18   the defendants to be innocent, the burden of proving the

19   defendants's guilt beyond a reasonable doubt is on the

20   Government throughout the trial.  The defendants never have

21   the burden of proving their innocence or of producing any

22   evidence or calling any witnesses at all.

23           As I will instruct you momentarily, the indictment

24   contains several different counts or charges against each of

25   the defendants.  You must consider each count separately and

1    return a separate verdict of guilty or not guilty for each

2    count.  Whether you find a defendant guilty or not guilty as

3    to one count should not affect your verdict as to any of the

4    other charged counts.  Although the Defendants have been

5    charged together and are being tried together, you must

6    evaluate the evidence against each Defendant individually and

7    determine whether each Defendant is not guilty or guilty on a

8    particular count individually.

9           In determining the issues of fact and rendering a

10   verdict in this case, you should perform your duty with

11   complete impartiality and without bias, sympathy, or prejudice

12   as to any party.  All parties are equal before the law and are

13   entitled to the same fair consideration.  Relatedly, it would

14   be improper for you to consider, in reaching your decision as

15   to whether the Government has sustained its burden of proof,

16   any personal feelings you may have about the Defendants' race,

17   religion, national origin, sex, or age.  It would be equally

18   improper for you to allow any feelings you might have about

19   the nature of the crime charged to interfere with your

20   decision-making process.

21          The fact that this prosecution is brought in the

22   name of the United States of America entitles the Government

23   to no greater consideration than that accorded to any other

24   party to a litigation.  By the same token, the Government is

25   also entitled to no less consideration.  All parties, whether

1    the Government or individuals, are equal before the law.  The

2    Court expects that you will carefully and impartially consider

3    all of the evidence, follow the law as it is now being given

4    to you and reach a just verdict, regardless of the

5    consequences.

6           The question of punishment of the Defendants is of

7    no concern to the jury and should not, in any sense, enter

8    into or influence your deliberations.  The duty of imposing a

9    sentence rests exclusively upon the Court.  Your duty is to

10   weigh the evidence in the case and determine whether or not

11   each Defendant is guilty beyond a reasonable doubt, solely

12   upon the basis of such evidence.  Under your oath as jurors,

13   you cannot allow a consideration of the punishment that may be

14   imposed upon the Defendants, if they are convicted, to

15   influence your verdict in any way or in any sense enter into

16   your deliberations.

17          I will now give specific instructions regarding the

18   presumption of innocence and the burden of proof in this case.

19          So, ladies and gentlemen, now we're on page 14,

20   which means we are a third of the way through the

21   instructions.

22          If at any point, though, needs a nature break, just

23   raise your hand, or any other kind break.

24          I will also note at this time that I'm not reading

25   the headings that are in the instructions, but obviously they

1    are there for purely or primarily organizational purposes.

2              The Defendants have pleaded not guilty to the

3    charges in the indictment.  To convict the Defendants, the

4    burden is on the Government to prove each Defendant's guilt of

5    each element of each charge beyond a reasonable doubt.  This

6    burden never shifts to the Defendants, for the simple reason

7    that the law presumes the Defendants to be innocent and never

8    imposes upon the Defendants in a criminal case the burden or

9    duty of calling any witness or producing any evidence.

10             In other words, the Defendants start with a clean

11   slate and are presumed innocent of each charge until such

12   time, if ever, that you as a jury are satisfied that the

13   Government has proven that a particular Defendant is guilty of

14   a given charge beyond a reasonable doubt.

15             You may be wondering what constitute a reasonable

16   doubt.  The words almost define themselves.  It is a doubt

17   based upon reason.  It is a doubt that a reasonable person has

18   after carefully weighing all of the evidence.  It is a doubt

19   that would cause a reasonable person to hesitate to act in a

20   matter of importance in his or her personal life.  Proof

21   beyond ea reasonable doubt must, therefore, be proof that is

22   so convincing that a reasonable person, based on that proof,

23   would not hesitate to rely upon it in making an important

24   decision.

25             A reasonable doubt is not caprice or whim.  It is

1   not speculation or suspicion.  It is not an excuse to avoid

2   the performance of an unpleasant duty.  The law does not

3   require that the Government prove guilt beyond all possible

4   doubt.  Proof beyond a reasonable doubt is sufficient to

5   convict.

6           If, after fair and impartial consideration of all

7   the evidence, you are satisfied beyond a reasonable doubt of a

8   Defendant's guilt with respect to a particular charge against

9   him, you should find that Defendant guilty of that charge.  On

10  the other hand, if after fair and impartial consideration of

11  the evidence, you have a reasonable doubt as to a Defendant's

12  guilt with respect to a particular charge against him, you

13  must find that Defendant not guilty of that charge.

14          All right.  We are on page 7 now.

15          I will now turn to the second part of my

16  instructions and instruct you as to the legal elements of the

17  criminal counts the Government has alleged.

18          The indictment charges "in or about" and "on or

19  about" and "between" certain dates.  The proof need not

20  establish with certainty the exact date of an allege offense.

21  It is sufficient if the evidence establishes beyond a

22  reasonable doubt that an offense was committed on a date

23  reasonably near the dates alleged.

24          Because all four charges in the indictment against

25  the Defendants require you to consider the concept of

1  knowledge and intent, I will instruct you about those concepts

2  before addressing each of the charges specifically.

3          A person acts knowingly if he acts purposefully and

4  voluntarily, and not because of ignorance, mistake, accident

5  or carelessness.  Whether the Defendants acted knowingly may

6  be proven by their conduct and by all of the facts and

7  circumstances surrounding the case.

8          A person acts intentionally when he acts

9  deliberately and purposefully.  That is, the defendants's acts

10 must have been the product of their conscious, objective

11 decision, rather than the product of mistake or accident.  You

12 may infer that a person ordinarily intends all natural and

13 probable consequence of an act knowingly done.  It is

14 sufficient that a Defendant intentionally engages in conduct

15 that the law forbids.  The Defendants need not have been aware

16 of the specific law that their conduct may have violated.

17         In determining whether a Defendant acted knowingly,

18 you may also consider whether the Defendant deliberately

19 closed his eyes to what otherwise would have been obvious to

20 hill.  If you find beyond a reasonable doubt that the

21 Defendants you are considering acted, let's mark that the

22 Defendant you are considering, acted with or that the

23 defendants's floor positive in nor rans was solely and

24 entirely the result of a conscious purpose of avoid learning

25 the truth, then this element maybe satisfied, however guilty

1  knowledge may not be established by demonstrating that the

2  Defendant was merely neglect, foolish or mistaken.  It is

3  entirely up to you whether you find that the Defendant

4  deliberately closed his eyes and any inferences to be drawn

5  from the evidence on this issue.

6          The issues of knowledge and intent require you to

7  make a determination about a defendant's state of mind,

8  something that can rarely be proved directly.  Willful intent

9  or guilty knowledge may be inferred from the secretive or

10 irregular manner in which a transaction is carried out.  A

11 wise and careful consideration of all of the circumstances

12 shown by the evidence and the exhibits in the case may,

13 however, permit you to make a determination as to the

14 Defendant's state of mind.  Indeed, experience has taught that

15 frequently actions speak louder and more clearly than words,

16 and in your everyday affairs, you are frequently called upon

17 to determine a person's state of mind from their words and

18 actions in given circumstances.  You are asked to do the same

19 here.

20         The Defendants are formally charged in an

21 indictment.  As I instructed you at the outset of the case, an

22 indictment is simply a charge or accusation.  You will not be

23 provided a copy of the indictment itself, because an

24 indictment is merely a statement of the charges and not

25 evidence itself.

1       The indictment in this case contains four separate

2   counts, or separate offenses, and you will be called upon to

3   render a separate verdict on each of them as to each

4   Defendant.  I will go over them in detail, but let me

5   summarize them now.

6       Count One charges each of the Defendants with

7   conspiracy to act as agents of a foreign government without

8   prior notification to the Attorney General of the United

9   States.

10      Count Two charges each of the Defendants with -- why

11  don't we get rid of that second "each" -- with acting as

12  agents of a foreign government without prior notification to

13  the Attorney General of the United States.

14      Count Three charges each of the Defendants with

15  conspiracy to engage in interstate stalking.

16      Count Four charges each of the Defendants with --

17  again, remove the "each" -- with engaging in interstate

18  stalking.

19      You must consider each count of the indictment and

20  each Defendant's alleged involvement in that count separately,

21  and you will be called upon to render a separate verdict on

22  each count for each Defendant.  Whether you find a Defendant

23  guilty or not guilty as to one offense should not affect your

24  verdict as to any other counts.

25      There is one last point I want to make about the

1  indictment.  The indictment uses the word "and" and where my

2  instructions -- sorry -- where my instruction will use the

3  word "or."  Can we change it to whereas?  Whereas my

4  instructions will use the word "or."  This is a result of how

5  the Government formalizes its charges, and it is not a

6  statement of the law.  Where my instructions use the word

7  "or," that "or" is controlling over any other contradictory

8  phrasing in the indictment.

9        Counts One and Three of the indictment allege that

10  the Defendants participated in criminal conspiracy.

11        A conspiracy is an agreement by two or more persons

12  to accomplish some unlawful purpose.  It is sometimes referred

13  to as a criminal partnership.  The crime of conspiracy is an

14  offense separate from the crime the alleged conspirators

15  intended to commit.  A conspiracy is in and of itself a crime.

16  If a conspiracy exists, even if it fails to achieve its

17  purpose, it is still a punishable crime.  In order to prove

18  the crime of conspiracy charged in Counts One and Three of the

19  indictment, the Government must establish the following three

20  elements of the crime beyond a reasonable doubt:

21        First, two or more persons entered into the

22  particular unlawful agreement charged in the indictment;

23  second, the Defendant knowingly and intentionally became a

24  member of the conspiracy; and third, that an overt act was

25  committed in furtherance of the conspiracy.

1      The first element requires that the Government prove

2 that at least two to conspirators had a meeting of the minds,

3 and that they agreed to work together to accomplish the act of

4 the charged conspiracy.

5      To establish a conspiracy, the Government is not

6 required to prove that the alleged members of the conspiracy

7 met together and entered into any express or formal agreement.

8 Similarly, you need not find that the allege conspirators

9 stated in words or writing what the scheme was, its object or

10 purpose, or every precise detail of the scheme or the means by

11 which its object or purpose was to be accomplished.  What the

12 Government must prove is that there was a mutual

13 understanding, either spoken or unspoken, between two or more

14 people to accomplish an unlawful act by means of a joint plan

15 or common scheme.  You may find that the existence of an

16 agreement to disobey or violate the law has been established

17 by direct proof.  Because conspiracy is usually characterized

18 by secrecy, you may also infer its existence from the

19 circumstances and the conduct of the parties and others

20 involved.  You may consider the actions and statements of all

21 of these person in deciding whether a common design existed to

22 act together for the accomplishment of an unlawful purpose.

23      The second element requires that the Government

24 prove beyond a reasonable doubt that the Defendant knowingly

25 and intentionally became a member of the charged conspiracy.

1  I have already instructed you as to the terms knowingly and

2  intentionally.  In deciding whether the Defendants were

3  participants in or members of a conspiracy, you must consider

4  whether, based upon all of the evidence, the Defendant you are

5  considering knowingly and intentionally joined that

6  conspiracy; that is, they participated in it with knowledge of

7  its purpose and with the specific intention of furthering one

8  or more of its objectives.  Proof of a financial interest in

9  the outcome of a scheme is not essential, although if you find

10 that the Defendant did have a financial interest in the

11 outcome of a scheme, you may consider that as evidence of the

12 defendant's motive to join the conspiracy.

13         A defendant's knowledge is a matter of inference

14 from the facts proved.  To become a member of a conspiracy, a

15 defendant need not have known the identities of every member

16 of the conspiracy, nor need they have been apprised of all of

17 their activities.  A defendant need not have been fully

18 informed of all of the details or the scope of the conspiracy

19 in order to justify an inference of knowledge on his part.  A

20 defendant need not have joined in all of the conspiracy's

21 unlawful objectives.

22         So, now, ladies and gentlemen, we are going to the

23 second half of the instructions.  We're at page 22.

24         The extent of a defendant's participation has no

25 bearing on the issue of a defendant's guilt.  A conspirator's

1   liability is not measured by the extent or duration of his

2   participation.  Indeed, each member may perform separate and

3   distinction acts and may perform them at different times.

4   Some conspirators play major roles, while others play minor

5   parts in the scheme.  An equal role is not what the law

6   requires.  In fact, even a single act may be sufficient to

7   draw the Defendant you are considering within the circle of

8   the conspiracy.

9        I want to caution you, however, that a defendant's

10  mere presence at the scene of criminal activity or at

11  locations frequented by criminals does not by itself make him

12  a member of the conspiracy.  Similarly, mere association with

13  one and/or more members of the conspiracy does not

14  automatically make a defendant a member.  A person may know or

15  be friendly with a criminal without being a criminal himself.

16  Indeed, a person may be a criminal without being a member of

17  the charged conspiracy.  Mere similarity of conduct or the

18  fact that the individuals may have assembled together and

19  discussed common aims and interests does not necessarily

20  establish proof of the existence of a conspiracy.

21       I further caution you that mere knowledge, without

22  participation, in the unlawful plan is not sufficient.

23  Furthermore, the fact that a person, without any knowledge

24  that a crime is being committed, merely happens to act in a

25  way that furthers the purposes or objectives of the conspiracy

1   does not make that person a member.  More is required under

2   the law.  What is necessary is that a defendant must have

3   participated with knowledge of at least some of the purposes

4   or objectives of the conspiracy and with the intention of

5   aiding in the accomplishment of those unlawful ends.

6          In sum, to find the Defendant you are considering

7   guilty of conspiracy, you must find beyond a reasonable doubt

8   that, with an understanding of the unlawful nature of the

9   conspiracy, they intentionally engaged, advised, or assisted

10  in the conspiracy for the purpose of furthering an illegal

11  undertaking.

12         The third element requires that the Government prove

13  at least one overt act.  An overt act is any action intended

14  to help the objective of the conspiracy.  An overt need not

15  itself be a criminal act, but it must attribute to furthering

16  the conspiracy.  It is not required that all of the overt acts

17  alleged in the indictment be proven, or that the overt act was

18  committed at precisely the time alleged in the indictment.  It

19  is sufficient that if you are convinced beyond a reasonable

20  doubt that the overt act occurred at or about the time and

21  place stated.  Similarly, you need not find that any of the

22  Defendants themselves committed the overt act.  It is

23  sufficient for the Government to show that one of the

24  conspirators knowingly committed an overt act in furtherance

25  of the conspiracy, since, in the eyes of the law, such as act

1  becomes the act of all of the members of the conspiracy.

2         A conspiracy is often referred to as a partnership

3  in crime.  As in other types of partnerships, when people

4  enter into an conspiracy to accomplish an unlawful end, each

5  and every member becomes an agent for the other conspirators

6  in carrying out the conspiracy.  Accordingly, the reasonably

7  foreseeable acts, declarations, statements, and omissions of

8  any member of the conspiracy, and in furtherance of the common

9  purpose of the conspiracy, are deemed, under the law, to be

10 the acts of all of the members and all of the members are

11 responsible for such acts, declarations, statements, and

12 omissions.

13        If you find beyond a reasonable doubt that the

14 Defendants were members of each of the two conspiracies

15 charged in the indictment, then any acts done or statements

16 made in furtherance of the conspiracy by persons also found by

17 you to have been members of that conspiracy at the time those

18 act were committed or statements were made -- sorry -- were

19 committed or statements were made may be considered against

20 the Defendants, so long as the acts or statements were

21 reasonably foreseeable to the Defendants.  This is so even if

22 such acts were done and statements were made in the

23 Defendants' absence and without their knowledge.

24        However, before you may consider the statements or

25 acts of a co-conspirator in deciding the issue of the

1  Defendants' guilt, you must first determine that the acts or

2  statements were made during the existence of and in

3  furtherance of the unlawful scheme.  If the acts were done or

4  statements made by someone who you do not find to have been a

5  member of the conspiracy, or if they were not done or said in

6  furtherance of the conspiracy, they may not be considered by

7  you as evidence against the Defendants.

8          Counts Two and Four of the indictment allege that

9  the Defendants committed the crimes of acting as illegal

10  agents of a foreign government and interstate stalking.  The

11  indictment also alleges that the Defendants aided and abetted

12  the commission of these particular crimes.  Thus, even if you

13  find that the Government has not proven beyond a reasonable

14  doubt that the Defendant you are considering directly acted as

15  an agent of a foreign government in the United States without

16  notifying the Attorney General, or directly engaged in

17  interstate stalking, you must also consider whether the

18  Government has met its burden of proving that the Defendant --

19  of proving -- sorry -- the Defendants' guilt by considering

20  the Defendants' guilt under the aiding-and-abetting liability

21  theory.

22          Aiding and abetting is defined under federal law in

23  Title 18, United States Code, Section 2, which provides, in

24  pertinent part, the following:

25          Whoever commits an offense against the United States

1  or aids, abets, counsels, commands, induces or procures the

2  commission of a crime is punishable as a principal.  Under the

3  federal aiding and abetting statute, it is not necessary for

4  the Government to show that the Defendant himself physically

5  committed the crime with which he is charged in order for you

6  to find the Defendant guilty.  A person who aids or abets

7  another to commit an offense is just as guilty of that offense

8  as if he committed it himself.

9        Accordingly, you may find the Defendant guilty of

10 the offense charged if you find beyond a reasonable doubt that

11 the Government has proven that another person actually

12 committed an offense with which the Defendant is charged, and

13 that the Defendant aided and abetted that person in the

14 commission of the offense.

15       As I have indicated, the first requirement is that

16 you find that another person has committed the crime charged.

17 No one can be convicted the aiding and abetting the criminal

18 act of another if no crime was committed by the other person

19 in the first place.  But if you do find that a crime was

20 committed, then you must consider whether the Defendant aided

21 and abetted the commission of that crime.

22       To aid and abet another to commit a crime, a

23 defendant must do two things.  First, he must knowingly

24 associate himself in some way with the crime, and second, he

25 must participate in the crime by doing some act to help make

1    the crime succeed.

2          To establish that the Defendant you are considering

3    knowingly associated themselves with the crime, the Government

4    must establish that the Defendants knew and intended that the

5    crimes charged would be committed.

6          To establish that the Defendant participated in the

7    commission of the crime, the Government must prove that the

8    Defendant engaged in some affirmative act or overt -- sorry --

9    in some affirmative conduct or overt act for the specific

10   purpose of bringing about the crime.  A defendant's mere

11   presence where a crime is being committed, even coupled with

12   the knowledge by a defendant that a crime is being committed,

13   is not sufficient to establish aiding and abetting.  One who

14   has no knowledge that a crime is being committed or is about

15   to be committed, but inadvertently does something that aids in

16   the commission of that crime is not an aider or abettor.  An

17   aider or abettor must know that the crime is being committed

18   and act in a way that is intended to bring about the success

19   of the criminal venture.

20         To determine whether the Defendant you are

21   considering aided and abetted the commission of the crime with

22   which he is charged, ask yourself these questions:

23         Did he participate in the crime charged as something

24   he wished to bring about?

25         Did he knowingly associate with the criminal

1  venture?

2         Did he seek by his actions to make the criminal

3  venture succeed?

4         If he did, then the Defendant is an aider and

5  abettor, and therefore guilty of the offense.  If, on the

6  other hand, your answer to any of these questions is "no,"

7  then the Defendant is not an aider and abettor, you must find

8  him not -- sorry -- and you must find him not guilty under

9  that theory.

10        Another way in which you should evaluate the guilt

11 of the Defendants for Counts Two and Four, even if you do not

12 find that the Government has satisfied its burden of proof

13 with respect to direct liability or aiding-and-abetting

14 liability, is called co-conspirator liability.

15        If you find beyond a reasonable doubt that the

16 Defendant you are considering was a member of the conspiracy

17 charged in Count One of the indictment, then you may, but are

18 not required, find that Defendant guilty of the substantive

19 crime charged against him in Count Two.  Likewise, if you find

20 beyond a reasonable doubt that the Defendant you are

21 considering was a member of the conspiracy charged in Count

22 Three of the indictment, then you may, but are not required,

23 to find the Defendant guilty of the substantive crime charged

24 against him in Count Four.  To do so, however, you must first

25 find beyond a reasonable doubt each of the following elements

1  as to Counts Two and Four:

2         First, the subjective crime charged in Counts Two

3  and Four was committed by someone;

4         Second, the person or persons you find actually

5  committed the crime were members of the conspiracy you found

6  to have existed;

7         Third, the substantive crime was committed pursuant

8  to the common plan and understanding you found to exist among

9  the conspirators;

10        Fourth, the Defendant was a member of that

11 conspiracy at the time of the substantive -- at the time the

12 substantive crime was committed;

13        And fifth, the Defendant could have reasonably

14 foreseen that the substantive crime might be committed by his

15 co-conspirators.

16        If you find all five of these elements to exist

17 beyond a reasonable doubt, then you may find the Defendant

18 guilty of Counts Two and Four, even though he did not

19 personally participate in the acts constituting the crime or

20 did not have actual knowledge of it.

21

22        (Continued on next page.)

23

24

25

1    (Continuing.)

2         THE COURT:  The reason for this rule is simply

3    that a co-conspirator who commits a substantive crime

4    pursuant to a conspiracy is deemed to be the agent of the

5    other conspirators.  Therefore, all of the co-conspirators

6    bear criminal responsibility for the commission of the

7    substantive crimes.  If, however, you are not satisfied as

8    to the existence of any of these five elements, then you may

9    not find that defendant guilty of the substantive crime

10   unless the Government proves beyond a reasonable doubt that

11   the defendant personally committed the substantive crime

12   charged in Counts Two and Four, or aided and abetted the

13   commission of the substantive crime charged in Counts Two

14   and Four.

15        Defendant Zheng Congying has raised the defense

16   that he withdrew from the conspiracies charged in Counts One

17   and Three.  Once a person joins a conspiracy, that person

18   remains a member until he withdraws from it.  Any withdrawal

19   must be complete and it must be done in good faith.  A

20   person can withdraw from a conspiracy by taking some

21   affirmative steps to terminate or abandon his participation

22   in and efforts to promote the conspiracy.  In other words,

23   the defendant must have demonstrated some type of positive

24   action that disavowed or defeated the purpose of the

25   conspiracy.  Proof that the defendant merely ceased

1    conspiratorial activity is not enough.

2            Where a defendant, by his conspiratorial action,

3    sets in motion events that are designed to have effect

4    beyond the period of his active participation, the

5    defendants' affirmative act of withdrawal must be aimed at

6    weakening or undermining the foreseeable consequences of his

7    own participation in the conspiracy.

8            For example, a defendant may withdraw from a

9    conspiracy by giving a timely warning about the conspiracy

10   to proper law enforcement officials or wholly depriving his

11   prior efforts of effectiveness in the commission of the

12   crime or making appropriate efforts to prevent the

13   commission of a crime or by doing acts that are inconsistent

14   with the objects of the conspiracy and making reasonable

15   efforts to communicate those acts to his co-conspirators.

16           Defendant Zheng has the burden of proving that he

17   withdrew from the conspiracy by a preponderance of the

18   evidence.  In determining whether defendant Zheng withdrew

19   from the conspiracy, you may consider the relevant testimony

20   of all of the witnesses regardless of who called them and

21   all the relevant exhibits received in evidence regardless of

22   who produced them.  However, it is important to remember

23   that the fact that defendant Zheng has raised this defense

24   does not relieve the Government of its burden of proving

25   each and every element of the crime of conspiracy.

1      In this case, defendants contend that the

2 Government's proof fails to show the existence of only one

3 overall conspiracy.  Rather, they claim that there were

4 actually several separate and independent conspiracies with

5 various groups of members.  Whether there existed a single

6 unlawful agreement or many such agreements, or, indeed, no

7 agreement at all, is a question of fact for you, the jury,

8 to determine in accordance with the instructions I am about

9 to give you.

10      When two or more people join together to further

11 one common unlawful design or purpose, a single conspiracy

12 exists.  By way of contrast, multiple conspiracies exist

13 when there are separate unlawful agreements to achieve

14 distinct purposes.  Proof of several separate and

15 independent conspiracies is not proof of the single overall

16 conspiracy charged in the indictment, unless one of the

17 conspiracies proved is the single conspiracy described in

18 the indictment.

19      You may find that there was a single conspiracy

20 despite the fact that there were changes in either personnel

21 or activities or both.  The fact that the members of a

22 conspiracy may change does not necessarily imply that

23 separate conspiracies exist.

24      On the other hand, if you find that the conspiracy

25 charged in the indictment did not exist, you cannot find any

1   defendant guilty of the single conspiracy charged in the

2   indictment.  This is so even if you find that some

3   conspiracy other than the one charged in the indictment

4   existed, even though the purposes of both conspiracies may

5   have been the same and even though there may have been some

6   overlap in membership.

7           Similarly, if you find that a particular defendant

8   was a member of another conspiracy and not the one charged

9   in the indictment, then you must acquit the defendant of the

10  conspiracy charge.  Therefore, what you must do is determine

11  whether the conspiracy charged in the indictment existed.

12  If it did, you then must determine the nature of the

13  conspiracy and who were its members.

14          Count One of the indictment charges that all three

15  defendants, Michael McMahon, Zheng Congying, and Zhu Yong,

16  also known as Jason Zhu, was conspiring to commit an offense

17  against the United States in violation of Title 18, United

18  States Code Section 371.  Section 371 provides, in relevant

19  part, that:

20          If two or more persons conspire to commit an

21  offense against the United States, in any manner or for any

22  purpose, and one or more of such persons do any act to

23  effect the object of the conspiracy, each shall be guilty of

24  an offense against the United States.

25          The Government alleges that the object of the

1   conspiracy was for Michael McMahon, Zheng Congying, and Zhu

2   Yong, also known as Jason Zhu, to act in the United States

3   as an agent of a foreign government without first notifying

4   the Attorney General, in violation of federal law.

5   Specifically, the indictment reads as follows:

6           In or about and between September 2016 and

7   December 2019, both dates being approximate and inclusive,

8   within the Eastern District of New York and elsewhere, the

9   defendants Michael McMahon, Zheng Congying and Zhu Yong,

10  also known as Jason Zhu, together with others did knowingly

11  and willfully conspire to act in the United States as agents

12  of a foreign government, to wit:  The People's Republic of

13  China government, without prior notification to the Attorney

14  General of the United States, as required by law, contrary

15  to Title 18, United States Code Section 951(a).

16          I've already instructed you on the general

17  definition of "conspiracy," which, as I said, is an

18  agreement among two or more people to commit a crime.  Here,

19  the alleged crime charged in Count One is acting in the

20  United States as an agent of a foreign government,

21  specifically the People's Republic of China, or China,

22  without notifying the Attorney General.  I will next

23  instruct you on the particular elements of that suck

24  substantive crime.

25          As a reminder, the Government need not prove that

1    the defendants actually committed the unlawful act charged

2    as the object of the conspiracy in Count One.  Rather, if

3    you find that the defendant you are considering knowingly

4    and intentionally agreed to commit this crime, then you

5    should find that defendant guilty of Count One.

6           I remind you that the crime of conspiracy, an

7    agreement to violate a law, is an independent offense.  It

8    is separate and distinct from the actual violation of any

9    specific law.  Accordingly, you may find the defendants

10   guilty of the offenses charged in Count One -- it should be

11   the offense charged in Count One -- even if you find that

12   there was no violation of Count Two.

13          As previously mentioned, the conspiracy charged in

14   Count One requires proof of at least one overt act.  I will

15   not read the overt acts charged in the indictment, but you

16   will receive a copy of the overt acts alleged for Count One

17   of the indictment to review during your deliberations.  As a

18   reminder, it is not required that all of the overt acts

19   alleged in the indictment be proven or that any overt act

20   was committed at precisely the time alleged in the

21   indictment, nor do I need to find that the defendant himself

22   committed the overt act.  It is sufficient for the

23   Government to show that one of the conspirators knowingly

24   committed an overt act in furtherance of the conspiracy.

25          Count Two of the indictment charges that the

1  defendants, Michael McMahon, Zheng Congying, and Zhu Yong,

2  also known as Jason Zhu, were acting as agents of a foreign

3  government without prior notification to the Attorney

4  General of the United States.  The relevant language of the

5  statute, Title 18, United States Code Section 951, provides

6  that:

7          Whoever, other than a diplomatic or consular

8  officer or attaché, acts in the United States as an agent of

9  a foreign government without prior notification to the

10  Attorney General shall be guilty of a crime.

11          The addendum reads as follows with regard to

12  Count Two:

13          In or about and between September 2016 and

14  December 2019, both dates being approximate and inclusive,

15  within the Eastern District of New York and elsewhere, the

16  defendants Michael McMahon, Zheng Congying and Zhu Yong,

17  also known as Jason Zhu, together with others did knowingly

18  act in the United States as agents of a foreign government,

19  to wit:  The People's Republic of China government, without

20  prior notification to the Attorney General of the United

21  States as required by law.

22          To prove a violation of the crime charged in Count

23  Two of the indictment, the Government must establish each of

24  the following elements beyond a reasonable doubt:

25          First, the defendant acted as an agent of a

1 foreign government or official, specifically of China.

2      Second, the defendant failed to notify the

3 Attorney General that he would be acting as an agent of the

4 government or an official of China in the United States

5 prior to so acting.

6      Third, the defendant acted knowingly.

7      And fourth, the defendant acted, at least in part,

8 as an agent for the Government or an official of China while

9 in the United States.

10      The term "foreign government" includes any person

11 or group of persons exercising authority in fact or by law

12 or right over any country other than the United States, or

13 over any part of such country, and includes any subdivision

14 of any such group or agency to which such sovereign

15 authority or functions are directly or indirectly delegated.

16      The term "agent of a foreign government" means an

17 individual other than a diplomatic or consular officer or

18 attaché who agrees to operate in the United States subject

19 to the direction or control of a foreign government or

20 foreign government official.

21      Simply acting in accordance with foreign interests

22 does not make a person an agent of a foreign government.  To

23 be an agent of a foreign government, a person must do more

24 than act in parallel with a foreign government's interest or

25 pursue a mutual goal.  The Government must prove that the

1    defendant acted pursuant to an agreement to operate subject

2    to the direction or control of China, and that a Chinese

3    official directed or controlled the defendant's actions.

4            A foreign government or official's involvement in

5    the relationship does not need to be that of an employer of

6    the defendant; a lesser degree of control is sufficient.  A

7    person who agrees to operate subject to a more hands-off

8    form of direction would also be operating as an agent of a

9    foreign government.  An agreement to act as an agent of a

10   foreign government need not be contractual or formalized,

11   nor must payment or other compensation be received.  The

12   agreement may be established either by direct contact

13   between the agent and foreign government or indirect contact

14   through an intermediary or intermediaries.

15           You do not need to find that a defendant was an

16   agent during the entire period specified in the indictment.

17   If all jurors agree that it has been shown beyond a

18   reasonable doubt that a defendant was an agent of China at

19   any time within that period, and the Government has proven

20   beyond a reasonable doubt all other elements of the offense

21   as set forth in these instructions, then you must find that

22   defendant guilty of Count Two.

23           To find the defendant guilty of this offense, you

24   must find that the defendant knew that he was acting as an

25   agent of the Government or an official of China and knew

1    that he had not provided prior notification to the Attorney

2    General.  I have already instructed you to what "knowingly"

3    means, and you should apply that instruction here.  It is

4    not necessary, however, for the Government to prove that a

5    defendant knew that there was a law that required him to

6    provide notification to the Attorney General.  Ignorance of

7    the law is not a defense to this crime.

8              The parties have stipulated that none of the

9    defendants, nor the alleged co-conspirators, have notified

10   the Attorney General related to the alleged conduct in this

11   case.

12             Count Three of the indictment alleges that the

13   defendants conspired to commit an offense against the United

14   States, in violation of Title 18, United States Code Section

15   371, which I have previously instructed you on.  The

16   Government alleges that the object of the conspiracy was for

17   the defendants, together with others, to travel in

18   interstate and foreign commerce with the intent to harass

19   and intimidate, and place under surveillance with the intent

20   to harass and intimidate certain individuals, namely Xu Jin,

21   Liu Fang, and Xu Xinzi, also known as Sabrina Xu, in

22   violation of federal law.

23             Specifically, Count Three of the indictment

24   charges that:

25             In or about and between September 2016 and

1  December 2019, both dates being approximate and inclusive,

2  within the Eastern District of New York and elsewhere, the

3  defendants Michael McMahon, Zheng Congying, and Zhu Yong,

4  also known as Jason Zhu, together with others, did knowingly

5  and willfully conspire to travel in interstate and foreign

6  commerce with the intent to harass and intimidate, and place

7  under surveillance with the intent to harass and intimidate

8  one or more persons, to wit:  Xu Jin, Liu Fang, Xu Xinzi,

9  also known as Sabrina Xu.  And in the course of and as a

10  result of such travel, to engage in conduct that would

11  cause, would attempt to cause, and would be reasonably

12  expected to call Xu Jin, Liu Fang, Xu Xinzi always known as

13  Sabrina Xu, substantial emotional distress, contrary to

14  Title 18, United States Code Section 2261A(1)(B).

15          I have also instructed you with respect to the law

16  of conspiracy.  Those same principles apply here.

17          As I explained with regard to the conspiracy

18  charge indeed Count One, the Government need not prove that

19  the defendants actually committed the unlawful act charged

20  as the object of the interstate stalking conspiracy.

21  Rather, if you find that the defendant you are considering

22  knowingly and intentionally agreed to commit this crime,

23  then you should find that defendant guilty of Count Three.

24          As I also just reminded you with regard to Count

25  One, the crime of conspiracy charged in Count Three is

1  separate and distinct from the actual violation of any

2  specific law, and therefore you may find the defendant

3  guilty of the offense charged in Count Three even if you

4  find that there was no violation of the law prohibiting

5  interstate stalking.

6          Finally, as I previously mentioned with regard to

7  Count One, the conspiracy charged in Count Three requires

8  proof of at least one overt act.  I will not read the overt

9  acts charged in the indictment, but you will receive a copy

10  of the Overt Objects alleged in Count Three of the

11  indictment to review during your deliberations.  My prior

12  instructions about overt acts apply to Count Three as well.

13          Count Four of the indictment charges the

14  defendants with engaging in interstate stalking in violation

15  of federal law.  Specifically, Count Four of the indictment

16  charges that:

17          In or about and between September 2016 and

18  December 2019, both dates being approximate and inclusive,

19  within the Eastern District of New York and elsewhere, the

20  defendants Michael McMahon, Zheng Congying, and Zhu Yong,

21  also known as Jason Zhu, together with others, did knowingly

22  and intentionally travel in interstate and foreign commerce

23  with the intent to harass and intimidate, and place under

24  surveillance with the intent to harass and intimidate one or

25  more persons, to wit:  Xu Jin and Liu Fang; and in the

1  course of and as a result of such travel, engaged in conduct

2  that caused, attempted to cause, and would be reasonably

3  expected to cause Xu Jin and Liu Fang substantial emotional

4  distress.

5          The statute relevant to Count Four of Title 18 of

6  the United States Code Section 2261A(1)(B), which provides

7  in relevant part:

8          Whoever travels in interstate or foreign commerce

9  with the intent to harass, intimidate, or place under

10  surveillance with intent to harass, intimidate another

11  person, and in the course of or as a result of such travel

12  or presence engages in conduct that causes, attempts to

13  cause, or would reasonably be expected to cause substantial

14  emotional distress to a person, shall be guilty of a crime.

15          In order to prove the defendant guilty of

16  interstate stalking as charged in the indictment, the

17  Government must prove beyond a reasonable doubt each one of

18  the following three elements:

19          First, that the defendant traveled in interstate

20  or foreign commerce as charged in the indictment.

21          Second, that the defendant traveled in interstate

22  or foreign commerce with the intent to harass or intimidate

23  or place under surveillance with the intent to harass or

24  intimidate Xu Jin or Liu Fang.

25          And third, that in the course of or as a result of

1 such travel, the defendant caused, attempted to cause, or

2 reasonably expected to cause substantial emotional distress

3 to Xu Jin Liu Fang or a member of either Xu Jin's or Liu

4 Fang's immediate family.

5       I will explain each of these elements to you in

6 more detail.

7       The first element that the Government must prove

8 beyond a reasonable doubt is that the defendant traveled in

9 interstate or foreign commerce as charged in the indictment.

10 Travel in interstate or foreign commerce simply means travel

11 between two states or between the United States and a

12 foreign country.

13       The second element that the Government must prove

14 beyond a reasonable doubt is that the defendant traveled in

15 interstate commerce with the intent to harass, intimidate,

16 or place under surveillance with intent to harass or

17 intimidate Xu Jin or Liu Fang. Harass means to annoy

18 persistently or to create an unpleasant or hostile

19 situation.

20       Direct proof of a person's intent is almost never

21 available. It would be a rare case where it would be shown

22 that a person wrote or stated that as of a given time he or

23 she committed an act with a particular intent. Such direct

24 proof is not required. The ultimate fact of intent, though

25 subjective, may be established by circumstantial evidence

1    based upon the defendant's outward manifestations, his

2    words, his conduct, his acts, and all the surrounding

3    circumstances disclosed by the evidence and the rational or

4    logical inferences that may be drawn from them.

5            The third element that the Government must prove

6    beyond a reasonable doubt is that in the course of or as a

7    result of such travel, the defendant engaged in conduct, the

8    result of which caused, attempted to cause, or would be

9    reasonably expected to cause substantial emotional distress

10   to Xu Jin or Liu Fang or an immediate family member.

11           To establish this element, the Government must

12   prove that as a result of the defendant's conduct during or

13   after the travel in interstate commerce, Xu Jin or Liu Fang

14   or an immediate family member of Xu Jin or Liu Fang suffered

15   substantial emotional distress as a result of the

16   defendant's conduct, or that the defendant attempted or

17   reasonably expected to cause that emotional distress.

18           The term "immediate family member" means a spouse,

19   parent, brother, sister, child, or ward.  The term also

20   includes any other person living in Xu Jin's or Liu Fang's

21   household and related to Xu Jin or Liu Fang by blood or

22   marriage.

23           All right.  We are now in the home stretch.

24           I have now outlined for you the rules of law

25   applicable to this case, the process by which you weigh the

1   evidence and determine the facts, and the legal elements

2   that must be proved beyond a reasonable doubt.  In a few

3   minutes, you will retire to the jury room for your

4   deliberations.  I will now give you some general rules

5   regarding your deliberations.  Keep in mind that nothing I

6   have said in these instructions is intended to suggest to

7   you in and way what I think your verdict should be.  That is

8   entirely for you to decide.

9          By way of reminder, I instruct you, once again,

10  that it is your responsibility to Judge the facts in this

11  case from the evidence presented during the trial and to

12  apply the law as I have given it to you, and your verdict

13  must be based solely on this evidence and law, not on

14  anything else.

15         For your deliberations to proceed in an orderly

16  fashion, you must have a foreperson.  The custom in this

17  courthouse is for Juror Number 1 to act as the foreperson.

18  However, if when you begin deliberations you decide that you

19  want to elect another foreperson, you are entitled to do so.

20  The foreperson will be responsible for signing all

21  communications to the Court, for handing them to the Deputy

22  Marshal during your deliberations.  But, of course, his or

23  her vote is entitled to no greater weight than that of any

24  other juror.

25         It is very important that you not communicate with

1    anyone outside the jury room about your deliberations or

2    about anything touching on this case.  There is only one

3    exception to this rule.  If it becomes necessary during your

4    deliberations to communicate with me, you may send a note

5    through the Deputy Marshal signed by your foreperson.  No

6    member of the jury should attempt to communicate with me

7    except by a signed writing, and I will never communicate

8    with any member of the jury on any subject touching upon the

9    merits of the case other than in writing or orally here in

10   open court.

11        Your recollection governs; nobody else's.  If in

12   the course of your deliberations your recollection of any

13   part of the testimony should fail, or you should find

14   yourself in doubt concerning my instructions to you on the

15   law, you may request that a witness's or witnesses'

16   testimony or portions thereof be sent back to you in the

17   jury room.  Again, you may make such a request by note to

18   the Deputy Marshal.  I suggest, however, that you be

19   specific to avoid receiving testimony that you do not want

20   or need.  Describe as best and precisely as you can what you

21   want to hear, and be patient, because it sometimes takes a

22   while to find the testimony in the record.

23        To the extent possible, the exhibits that were

24   admitted as evidence during the trial will be sent back to

25   you for your deliberations.

1          I will note that because there is videotape

2    evidence, we'll also provide you with a laptop computer and

3    the videotape evidence on a flash drive that will have a

4    password.

5          (Discussion off the record.)

6          THE COURT:  We had a problem with the last trial

7    where the password was a bit confounding to the jurors, so

8    we've improved on that, and now those videos are loaded onto

9    this laptop, so you can access them directly without having

10   to enter a password.

11         Thank you for that, Government and Fida.

12

13         (Continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

1    (Continuing.)

2         THE COURT:  Okay.  Your duty is to reach a fair

3    conclusion from the law as I have given it to you and the

4    evidence that has been presented in this case.  This duty is

5    an important one.  When you are in the jury room, listen to

6    each other and discuss the evidence and issues in the case

7    amongst yourselves.

8         It is the duty of each of you as jurors to consult

9    with one another and to deliberate with a view towards

10   reaching agreement on a verdict if you can do so without

11   violating your individual judgment and conscious.  While you

12   should not surrender conscientious convictions of what the

13   truth is and of the weight and effect of the evidence, and

14   while each of you must decide the case for yourself and not

15   merely acquiesce in the conclusion of your fellow jurors, you

16   should examine the issues and the evidence before you with

17   candor and frankness, and with proper deference to and regard

18   to the opinions of your fellow jurors.

19        You should not hesitate to reconsider your opinion

20   from time to time and to change them if you are convinced they

21   are wrong.  However, do not surrender an honest conviction as

22   to the weight and effect of the evidence simply to arrive at a

23   verdict.

24        The decision you reach must be unanimous.  You must

25   all agree.

1    When you have reached a verdict, simply send me a

2  note signed by your foreperson that you have reached a

3  verdict.  Do not indicate what the verdict is.  In no

4  communication with the Court should you give a numerical count

5  of where the jury stands in its deliberations.

6          Remember, in your deliberations that the

7  Government's charges against the defendants are no passing

8  matter.  The parties and the Court are relying on you to give

9  full conscientious deliberation and consideration to the

10 issues and evidence before you.  In so doing, you carry out to

11 the fullest your oaths as jurors to well and truly try the

12 issues of this case and render a true verdict.

13          And let me add that you will receive a verdict

14 sheet, and that's where you will indicate what your verdict

15 is.

16          All right.  Let me speak at sidebar with the parties

17 to make sure that there's nothing else I need to advise you

18 on.

19

20          (Sidebar held outside of the hearing of the jury.)

21          (Continued on next page.)

22

23

24

25

1          (The following sidebar took place outside the
2  hearing of the jury.)
3          THE COURT:  First, starting with the Government.
4  Anything else that I need to advise the jury?
5          MR. HEEREN:  No, Your Honor.
6          THE COURT:  Mr. Lustberg?
7          MR. LUSTBERG:  I want to be sure that we've
8  preserved our objections.
9          THE COURT:  Mr. Goldberger.
10          MR. GOLDBERGER:  Nothing further.
11          THE COURT:  And Mr. Tung?
12          MR. TUNG:  Nothing further.
13          THE COURT:  Thank you.  We will send everything back
14  with them.
15          Have you folks agreed on the exhibits with
16  Ms. Gonzalez that were admitted?
17          MR. HEEREN:  I believe so.
18          THE COURT:  Excellent.  All right.
19          (Sidebar ends.)
20          (Continued on next page.)
21
22
23
24
25

1    (Continuing.)

2         THE COURT:  We're now going to call forward our

3    marshal to be sworn in.

4         (Marshal approaches.)

5         THE COURTROOM DEPUTY:  Please raise your right hand.

6    Do you solemnly swear or affirm that you will keep the jurors

7    in this cause together in a quiet and convenient place and to

8    let no one speak to them, nor shall you speak to them about

9    direction of this court?

10        THE MARSHAL:  I will.

11        THE COURTROOM DEPUTY:  Thank you.

12        THE COURT:  In a moment, folks, we will let you go.

13   But I do want to make two other comments.  One is your lunch

14   will be brought to you around 1:00, assuming it's on time.

15   You can deliberate while you are having lunch, or not, but you

16   should decide amongst yourselves how you want to proceed.  But

17   you are free to deliberate over lunch if you choose to do so

18   and you'll all agree to do so.

19        And the only other thing is we will send back, as I

20   said, a copy of the instructions to you, as well as a verdict

21   sheet, and then all of the exhibits will be sent back to you,

22   as well.

23        All right.  Thank you, everyone.  You are now

24   excused for your deliberations.

25        THE COURTROOM DEPUTY:  All rise.

1    (Jury exits to begin deliberations at 11:46 a.m.)

2         THE COURT:  Please be seated, everyone.  So, as I

3    mentioned before, the only thing we require you folks to do is

4    to leave your cellphone numbers with Ms. Gonzalez and don't

5    leave the courthouse so that if we get a note, you can come

6    back quickly.

7         I think the only other comment I want to make is, as

8    you heard, I told my law clerk to make some very small

9    typographical changes.  So those were made to the copy that

10   will be sent back to the jury.  I think you may want to wait

11   one moment just to see everything that was sent back.

12        I saw actually Ms. Gonzalez carrying the laptop, so

13   she -- let me confirm with my law clerk.

14        So I don't think it's necessary for you to flyspeck

15   the instructions that are being sent back.  But just so you

16   know and for the record, the jury instructions will be marked

17   as Court Exhibit 1, and the verdict sheet will be marked as

18   Court Exhibit 2.

19        (Court Exhibits 1 and 2 received in evidence.)

20        THE COURT:  Once you have left your phone numbers,

21   you are free to go.

22        MR. HEEREN:  Your Honor, I think just to -- I think

23   this is the case, but just to clarify.  The alternates are

24   being kept, but they're just being kept in a separate place.

25        THE COURT:  That is correct, yes.  As is my practice

1    to keep them here during the deliberations should we, God

2    forbid, lose one of our jurors during deliberations, but they

3    are in a separate room.

4              MR. HEEREN:  Thank you.

5              THE COURT:  All right.  So, folks, you are free to

6    go.

7              (Recess taken.)

8              THE COURT:  So we're going to go on the record for a

9    moment just to recap a bit of what's happened since the jury

10   started deliberating.  So there was a note marked as Court

11   Exhibit 3 that Ms. Gonzalez apprised everyone of and it simply

12   said, "Can we get 12 copies of the overt acts and tape for

13   attaching poster board notes," and parenthetically they wrote

14   "the large sheets of paper" and then "to the wall" question

15   mark.  And that was marked as Court Exhibit 3.

16             (Court Exhibit 3 received in evidence.)

17             THE COURT:  And Ms. Gonzalez took care of that

18   request by providing the 12 copies of the overt acts and some

19   tape.  The next note we just received has been marked as Court

20   Exhibit 4.

21             (Court Exhibit 4 received in evidence.)

22             THE COURT:  Court Exhibit 4 reads, "We can't hear

23   the audio from the videos on the laptop, specifically GX 703C,

24   loud enough.  Is there another way we can listen to what was

25   said in the video?  Can we get the jury room A/C higher to

1  make it cooler?"

2          So Ms. Gonzalez put the request in about the A/C to

3  our facilities folks and otherwise we're arranging for the

4  playing of 703C.

5          (Jury enters.)

6          THE COURT:  So everyone please be seated.

7          Ladies and gentlemen of the jury, I apologize for

8  the heat or temperature in the jury room.  As you know,

9  Ms. Gonzalez called to have it taken care of.  It seems at

10  least some progress has been made or at least you're relieved

11  to be here in this courtroom where he's much cooler.  We

12  received your last note about the difficulty of hearing the

13  audio from the video marked as Government Exhibit 703C.

14          So the solution we've come up with is to play that

15  video here with the benefit of the better speakers and the

16  projection onto the wall.  So, we'll play it all the way

17  through.

18          How many minutes is it, Mr. Heeren?

19          MR. HEEREN:  It's about seven minutes.

20          THE COURT:  And then you'll let us know if you want

21  to hear it again; or if anyone wants it to be stopped, raise

22  your hand and then we can do that.  All right?

23          Let's go ahead and play Government Exhibit 703C from

24  the beginning.

25          (Video played; video paused.)

1        THE COURT:  Does anyone want it replayed?  The first

2   minute?  We'll replay the first minute.

3            (Video played; video paused.)

4        THE COURT:  All right.  Thank you very much.

5        Ladies and gentlemen of the jury, you can return to

6   the jury room to continue your deliberations.

7            (Jury exits to continue deliberations at 4:48 p.m.)

8        THE COURT:  Everyone is free to go until we get

9   another note.

10

11

12   (Matter adjourned until Friday, June 16, 2023 at 9:30 a.m.)

13

14                      - ooOoo -

15

16

17

18

19

20

21

22

23

24

25

<u>I N D E X</u>

CONTINUED REBUTTAL CLOSING ARGUMENT

BY MR. HEEREN                                2126

JURY CHARGE BY THE COURT                     2148

<u>E X H I B I T S</u>

Court Exhibits 1 and 2                        2207

Court Exhibit 3                               2208

Court Exhibit 4                               2208

## $

**$11,000** [2] - 2142:5, 2142:7
**$19,000** [1] - 2142:6
**$3,000** [1] - 2137:7
**$5,000** [2] - 2137:6, 2141:11
**$8,000** [1] - 2141:22

## 0

**07102** [1] - 2125:4

## 1

**1** [4] - 2200:17, 2207:17, 2207:19, 2211:11
**10013** [1] - 2125:7
**11201** [1] - 2124:17
**11354** [1] - 2125:11
**11:46** [1] - 2207:1
**12** [2] - 2208:12, 2208:18
**123** [1] - 2144:6
**136-20** [1] - 2125:10
**14** [2] - 2141:17, 2168:19
**15** [1] - 2124:7
**16** [1] - 2210:12
**17** [1] - 2141:17
**18** [7] - 2180:23, 2188:17, 2189:15, 2191:5, 2194:14, 2195:14, 2197:5
**1831** [1] - 2139:1
**1:00** [1] - 2206:14

## 2

**2** [4] - 2180:23, 2207:18, 2207:19, 2211:11
**2002** [1] - 2145:1
**2016** [4] - 2189:6, 2191:13, 2194:25, 2196:17
**2017** [4] - 2129:12, 2133:7, 2143:6, 2144:7
**2019** [4] - 2189:7, 2191:14, 2195:1, 2196:18
**2023** [2] - 2124:7, 2210:12
**20530** [1] - 2124:22
**21-CR-265(PKC** [1] - 2124:3
**2126** [1] - 2211:5
**2148** [1] - 2211:6
**22** [1] - 2176:23
**2207** [1] - 2211:11
**2208** [2] - 2211:12, 2211:13
**2261A(1)(B** [1] - 2197:6
**2261A(1)(B)** [1] - 2195:14
**271** [1] - 2124:16

## 3

**3** [5] - 2139:2, 2208:11, 2208:15, 2208:16, 2211:12

**3026** [1] - 2130:19
**306** [1] - 2125:7
**3074** [1] - 2145:7
**31** [1] - 2136:3
**33** [1] - 2136:4
**371** [3] - 2188:18, 2194:15
**38th** [1] - 2125:10

## 4

**4** [4] - 2208:20, 2208:21, 2208:22, 2211:13
**4006-B** [1] - 2132:23
**401** [1] - 2125:7
**4010** [1] - 2144:5
**4010-A** [1] - 2144:5
**4044** [1] - 2132:6
**42** [1] - 2148:24
**4:48** [1] - 2210:7

## 5

**5** [1] - 2144:20

## 6

**613-2622** [1] - 2125:17
**6th** [1] - 2144:7

## 7

**7** [1] - 2170:14
**703C** [4] - 2208:23, 2209:4, 2209:13, 2209:23
**718** [1] - 2125:17
**788** [1] - 2132:6
**7:40** [1] - 2133:24

## 8

**805-B** [3] - 2136:3, 2141:17, 2144:20
**830** [1] - 2132:23
**841** [1] - 2132:24

## 9

**950** [1] - 2124:22
**951** [1] - 2191:5
**951(a)** [1] - 2189:15
**98** [1] - 2144:1
**9:00** [1] - 2124:8
**9:30** [1] - 2210:12

## A

**a.m** [3] - 2124:8, 2207:1, 2210:12
**A/C** [2] - 2208:25, 2209:2
**abandon** [1] - 2185:21
**abet** [1] - 2181:22

**abets** [2] - 2181:1, 2181:6
**abetted** [5] - 2180:11, 2181:13, 2181:21, 2182:21, 2185:12
**abetting** [8] - 2142:20, 2142:22, 2180:20, 2180:22, 2181:3, 2181:17, 2182:13, 2183:13
**abettor** [5] - 2143:13, 2182:16, 2182:17, 2183:5, 2183:7
**ability** [1] - 2156:3
**able** [2] - 2131:5, 2151:3
**absence** [2] - 2165:3, 2179:23
**absolutely** [1] - 2131:8
**accept** [3] - 2129:18, 2158:1, 2158:19
**accepting** [1] - 2135:12
**access** [2] - 2144:23, 2202:9
**accident** [2] - 2171:4, 2171:11
**accomplice** [1] - 2159:6
**accomplish** [4] - 2174:12, 2175:3, 2175:14, 2179:4
**accomplished** [1] - 2175:11
**accomplishment** [2] - 2175:22, 2178:5
**accordance** [3] - 2150:23, 2187:8, 2192:21
**accorded** [1] - 2167:23
**accordingly** [3] - 2179:6, 2181:9, 2190:9
**account** [8] - 2128:11, 2137:7, 2137:8, 2141:7, 2141:13, 2141:16, 2141:18, 2155:24
**accountable** [1] - 2148:6
**accurate** [2] - 2138:11, 2155:21
**accusation** [1] - 2172:22
**achieve** [2] - 2174:16, 2187:13
**acquiesce** [1] - 2203:15
**acquit** [1] - 2188:9
**act** [41] - 2149:18, 2169:19, 2171:13, 2173:7, 2174:24, 2175:3, 2175:14, 2175:22, 2177:6, 2177:24, 2178:13, 2178:17, 2178:20, 2178:22, 2178:24, 2178:25, 2179:1, 2179:18, 2181:18, 2181:25, 2182:8, 2182:9, 2182:18, 2186:5, 2188:22, 2189:2, 2189:11, 2190:1, 2190:14, 2190:19, 2190:22, 2190:24, 2191:18, 2192:24, 2193:9, 2195:19, 2196:8, 2198:23, 2200:17
**acted** [9] - 2171:5, 2171:17, 2171:21, 2171:22, 2180:14, 2191:25, 2192:6, 2192:7, 2193:1
**acting** [9] - 2149:19, 2173:11, 2180:9, 2189:19, 2191:2, 2192:3, 2192:5, 2192:21, 2193:24
**action** [4] - 2129:24, 2178:13, 2185:24, 2186:2
**actions** [8] - 2129:23, 2145:18, 2148:6, 2172:15, 2172:18, 2175:20, 2183:2, 2193:3
**active** [1] - 2186:4
**activities** [2] - 2176:17, 2187:21
**activity** [11] - 2131:19, 2132:17,

2137:9, 2138:2, 2138:3, 2138:21, 2139:23, 2140:12, 2159:5, 2177:10, 2186:1

**acts** [29] - 2126:5, 2171:3, 2171:8, 2171:9, 2177:3, 2178:16, 2179:7, 2179:10, 2179:11, 2179:15, 2179:20, 2179:22, 2179:25, 2180:1, 2180:3, 2184:19, 2186:13, 2186:15, 2190:15, 2190:16, 2190:18, 2191:8, 2196:9, 2196:12, 2199:2, 2208:12, 2208:18

**actual** [3] - 2184:20, 2190:8, 2196:1

**add** [2] - 2140:4, 2204:13

**addendum** [1] - 2191:11

**additional** [4] - 2128:1, 2130:13, 2162:9, 2166:15

**additionally** [1] - 2161:16

**address** [9] - 2136:4, 2139:14, 2144:18, 2144:19, 2144:21, 2144:23, 2144:24, 2145:3, 2145:9

**addressed** [1] - 2137:11

**addressing** [1] - 2171:2

**adduced** [1] - 2161:13

**adjourned** [1] - 2210:12

**admits** [2] - 2134:14, 2159:4

**admitted** [10] - 2128:2, 2153:5, 2153:8, 2162:18, 2163:9, 2164:12, 2165:5, 2166:1, 2201:24, 2205:16

**adverse** [1] - 2157:13

**advise** [2] - 2204:17, 2205:4

**advised** [1] - 2178:9

**affairs** [1] - 2172:16

**affect** [3] - 2160:21, 2167:3, 2173:23

**affirm** [1] - 2206:6

**age** [1] - 2167:17

**agency** [1] - 2192:14

**agent** [18] - 2179:5, 2180:15, 2185:4, 2189:3, 2189:20, 2191:8, 2191:25, 2192:3, 2192:8, 2192:16, 2192:22, 2192:23, 2193:8, 2193:9, 2193:13, 2193:16, 2193:18, 2193:25

**agents** [2] - 2149:18, 2149:19, 2160:23, 2173:7, 2173:12, 2180:10, 2189:11, 2191:2, 2191:18

**agree** [5] - 2140:15, 2151:6, 2193:17, 2203:25, 2206:18

**agreed** [9] - 2126:23, 2129:2, 2143:9, 2163:6, 2164:18, 2175:3, 2190:4, 2195:22, 2205:15

**agreement** [15] - 2128:10, 2164:17, 2165:22, 2174:11, 2174:22, 2175:7, 2175:16, 2187:6, 2187:7, 2187:18, 2190:7, 2193:1, 2193:9, 2193:12, 2203:10

**agreements** [2] - 2187:6, 2187:13

**agrees** [2] - 2192:18, 2193:7

**ahead** [2] - 2126:17, 2209:23

**aid** [3] - 2163:19, 2164:9, 2181:22

**aided** [6] - 2125:20, 2180:11, 2181:13, 2181:20, 2182:21, 2185:12

**aider** [5] - 2143:13, 2182:16, 2182:17,

2183:4, 2183:7

**aiding** [9] - 2142:19, 2142:22, 2178:5, 2180:20, 2180:22, 2181:3, 2181:17, 2182:13, 2183:13

**aiding-and-abetting** [2] - 2180:20, 2183:13

**aids** [3] - 2181:1, 2181:6, 2182:15

**aimed** [1] - 2186:5

**aims** [1] - 2177:19

**allegations** [1] - 2165:15

**allege** [4] - 2170:20, 2174:9, 2175:8, 2180:8

**alleged** [15] - 2165:10, 2170:17, 2170:23, 2173:20, 2174:14, 2175:6, 2178:17, 2178:18, 2189:19, 2190:16, 2190:19, 2190:20, 2194:9, 2194:10, 2196:10

**allegedly** [1] - 2165:20

**alleges** [4] - 2180:11, 2188:25, 2194:12, 2194:16

**allow** [3] - 2165:2, 2167:18, 2168:13

**allowed** [2] - 2136:18, 2158:19

**allows** [1] - 2159:6

**almost** [2] - 2169:16, 2198:20

**alone** [5] - 2150:18, 2151:16, 2155:6, 2159:8, 2164:13

**aloud** [1] - 2147:10

**alternates** [1] - 2207:23

**AMERICA** [1] - 2124:3

**America** [1] - 2167:22

**American** [2] - 2129:9, 2129:10

**amount** [2] - 2128:18, 2142:4, 2142:8

**analyzing** [1] - 2164:4

**annoy** [1] - 2198:17

**answer** [4] - 2129:2, 2142:1, 2153:3, 2183:6

**answers** [1] - 2134:19

**apologies** [1] - 2149:8

**apologize** [1] - 2209:7

**appear** [1] - 2162:4

**appeared** [2] - 2150:19, 2164:15

**applicable** [2] - 2149:10, 2199:25

**apply** [6] - 2150:23, 2158:15, 2194:3, 2195:16, 2196:12, 2200:12

**apprised** [2] - 2176:16, 2208:11

**approaches** [1] - 2206:4

**appropriate** [1] - 2186:12

**approximate** [4] - 2189:7, 2191:14, 2195:1, 2196:18

**April** [3] - 2133:7, 2143:6, 2144:7

**ARFA** [1] - 2124:17

**Arfa** [1] - 2133:8

**argued** [7] - 2131:11, 2140:12, 2143:15, 2145:13, 2145:21, 2165:16, 2165:19

**argues** [1] - 2159:1

**argument** [4] - 2128:24, 2137:22, 2146:1, 2158:24

**ARGUMENT** [2] - 2126:18, 2211:4

**arguments** [6] - 2128:19, 2128:20, 2134:24, 2140:11, 2149:8, 2153:12

**arise** [1] - 2161:9

**arising** [1] - 2160:5

**arranging** [1] - 2209:3

**arrest** [4] - 2128:3, 2129:6, 2134:13, 2140:9

**arrested** [1] - 2129:20

**arrive** [1] - 2203:22

**article** [1] - 2137:5

**ASAP** [2] - 2132:9, 2132:10

**aside** [1] - 2131:9

**assembled** [1] - 2177:18

**assess** [1] - 2146:4

**assessing** [1] - 2166:8

**assessment** [1] - 2153:21

**assist** [3] - 2158:10, 2160:7, 2164:9

**assistance** [1] - 2164:4

**Assistant** [1] - 2124:19

**assisted** [1] - 2178:9

**associate** [2] - 2181:24, 2182:25

**associated** [2] - 2142:20, 2182:3

**association** [1] - 2177:12

**assuming** [1] - 2206:14

**attach** [2] - 2152:2, 2157:12

**attached** [1] - 2155:7

**attaching** [1] - 2208:13

**attaché** [2] - 2191:8, 2192:18

**attempt** [3] - 2141:9, 2195:11, 2201:6

**attempted** [5] - 2151:20, 2197:2, 2198:1, 2199:8, 2199:16

**attempts** [1] - 2197:12

**attend** [1] - 2130:9

**attention** [3] - 2138:22, 2149:12, 2153:6

**attorney** [1] - 2128:21

**Attorney** [14] - 2124:23, 2173:8, 2173:13, 2180:16, 2189:4, 2189:13, 2189:22, 2191:3, 2191:10, 2191:20, 2192:3, 2194:1, 2194:6, 2194:10

**ATTORNEY** [1] - 2124:15

**attorneys** [3] - 2136:25, 2160:22, 2160:25

**Attorneys** [1] - 2124:19

**attribute** [1] - 2178:15

**atypical** [5] - 2130:2, 2130:3, 2131:7, 2137:18, 2138:15

**audio** [3] - 2164:7, 2208:23, 2209:13

**authority** [2] - 2192:11, 2192:15

**automatically** [1] - 2177:14

**AUTUMN** [1] - 2125:4

**available** [1] - 2198:21

**Avenue** [2] - 2124:22, 2125:10

**average** [2] - 2129:8, 2129:10

**avoid** [4] - 2139:6, 2170:1, 2171:24, 2201:19

**avoided** [2] - 2126:13, 2139:19

**aware** [1] - 2171:15

# B

**background** [3] - 2138:1, 2139:15, 2139:18
**badly** [1] - 2141:8
**bank** [4] - 2137:7, 2137:8, 2141:18
**base** [4] - 2151:10, 2153:21, 2163:11
**based** [13] - 2130:5, 2134:7, 2145:17, 2152:11, 2163:20, 2163:24, 2164:2, 2164:13, 2169:17, 2169:22, 2176:4, 2199:1, 2200:13
**basic** [2] - 2126:22, 2134:24
**basis** [3] - 2128:25, 2154:16, 2168:12
**bay** [1] - 2143:9
**bear** [2] - 2136:24, 2185:6
**bearing** [2] - 2165:13, 2176:25
**bears** [1] - 2161:7
**became** [2] - 2174:23, 2175:25
**become** [1] - 2176:14
**becomes** [3] - 2179:1, 2179:5, 2201:3
**BEFORE** [1] - 2124:12
**begin** [2] - 2200:18, 2207:1
**beginning** [4] - 2139:16, 2143:19, 2146:6, 2209:24
**behalf** [1] - 2166:12
**behavior** [1] - 2159:5
**behind** [2] - 2147:3, 2147:4
**belabor** [1] - 2139:24
**belief** [1] - 2157:6
**belonged** [1] - 2128:11
**benefit** [3] - 2155:10, 2159:20, 2209:15
**best** [2] - 2140:9, 2201:20
**better** [2] - 2163:20, 2209:15
**between** [15] - 2130:11, 2135:10, 2144:6, 2145:7, 2153:20, 2156:22, 2170:19, 2175:13, 2189:6, 2191:13, 2193:13, 2194:25, 2196:17, 2198:11
**beyond** [38] - 2148:12, 2157:10, 2159:9, 2161:8, 2161:20, 2162:11, 2162:23, 2166:19, 2168:11, 2169:5, 2169:14, 2169:21, 2170:3, 2170:4, 2170:7, 2170:21, 2171:20, 2174:20, 2175:24, 2178:7, 2178:19, 2179:13, 2180:13, 2181:10, 2183:15, 2183:20, 2183:25, 2184:17, 2185:10, 2186:4, 2191:24, 2193:17, 2193:20, 2197:17, 2198:8, 2198:14, 2199:6, 2200:2
**bias** [2] - 2156:14, 2167:11
**bit** [6] - 2135:11, 2139:15, 2142:8, 2143:24, 2202:7, 2208:9
**blood** [1] - 2199:21
**Board** [1] - 2166:6
**board** [1] - 2208:13
**BONOMO** [2] - 2124:18, 2124:23
**box** [1] - 2141:23
**Bread** [4] - 2131:25, 2132:2, 2132:7, 2133:15
**break** [2] - 2168:22, 2168:23

**BREON** [1] - 2124:15
**Brickfield** [1] - 2141:25
**briefly** [3] - 2126:20, 2127:2, 2139:14
**bring** [4] - 2136:5, 2143:7, 2182:18, 2182:24
**bringing** [4] - 2131:3, 2136:15, 2137:14, 2182:10
**Broadway** [1] - 2125:7
**Brooklyn** [2] - 2124:6, 2124:17
**brother** [1] - 2199:19
**brought** [4] - 2126:13, 2133:22, 2167:21, 2206:14
**buddy** [1] - 2132:22
**burden** [15] - 2157:10, 2161:7, 2162:11, 2162:13, 2166:18, 2166:21, 2167:15, 2168:18, 2169:4, 2169:6, 2169:8, 2180:18, 2183:12, 2186:16, 2186:24
**bureau** [1] - 2128:8
**business** [4] - 2135:19, 2137:9, 2141:7, 2141:25
**BY** [8] - 2124:17, 2125:4, 2125:8, 2125:11, 2126:19, 2148:16, 2211:5, 2211:6

# C

**Cadman** [1] - 2124:16
**candid** [1] - 2156:6
**candor** [1] - 2203:17
**cannot** [4] - 2149:9, 2151:1, 2168:13, 2187:25
**Cantonese** [2] - 2163:1, 2163:10
**capable** [1] - 2149:2
**caprice** [1] - 2169:25
**care** [3] - 2159:13, 2208:17, 2209:9
**careful** [1] - 2172:11
**carefully** [3] - 2161:12, 2168:2, 2169:18
**carelessness** [1] - 2171:5
**carried** [2] - 2142:12, 2172:10
**carry** [1] - 2204:10
**carrying** [2] - 2179:6, 2207:12
**case** [61] - 2126:22, 2132:2, 2139:16, 2143:19, 2146:6, 2147:9, 2148:3, 2149:7, 2149:11, 2149:12, 2150:1, 2150:3, 2150:17, 2151:21, 2151:25, 2152:11, 2153:19, 2153:22, 2154:24, 2155:13, 2156:13, 2157:7, 2158:4, 2158:18, 2158:22, 2159:11, 2160:6, 2160:17, 2161:1, 2161:12, 2162:4, 2162:5, 2162:15, 2162:18, 2162:22, 2163:15, 2164:22, 2165:4, 2165:5, 2165:14, 2165:21, 2167:10, 2168:10, 2168:18, 2169:8, 2171:7, 2172:12, 2172:21, 2173:1, 2187:1, 2194:11, 2198:21, 2199:25, 2200:11, 2201:2, 2201:9, 2203:4, 2203:6, 2203:14, 2204:12, 2207:23
**cash** [9] - 2137:6, 2137:7, 2140:14,

2140:15, 2141:3, 2141:5, 2141:21, 2141:22
**caught** [1] - 2139:6
**CAUSE** [1] - 2124:11
**caused** [3] - 2197:2, 2198:1, 2199:8
**causes** [1] - 2197:12
**caution** [3] - 2159:13, 2177:9, 2177:21
**ceased** [1] - 2185:25
**cellphone** [1] - 2207:4
**cement** [1] - 2142:3
**Center** [1] - 2125:3
**certain** [13] - 2135:1, 2153:8, 2153:10, 2154:4, 2158:4, 2163:16, 2164:18, 2164:24, 2164:25, 2165:23, 2166:6, 2170:19, 2194:20
**certainly** [1] - 2143:4
**certainty** [1] - 2170:20
**chain** [2] - 2145:4, 2154:3
**change** [3] - 2174:3, 2187:22, 2203:20
**changes** [2] - 2126:22, 2135:7, 2187:20, 2207:9
**changing** [3] - 2130:15, 2137:1, 2137:3
**characterized** [1] - 2175:17
**CHARGE** [2] - 2148:15, 2211:6
**charge** [12] - 2148:19, 2162:2, 2169:5, 2169:11, 2169:14, 2170:8, 2170:9, 2170:12, 2170:13, 2172:22, 2188:10, 2195:18
**charged** [52] - 2149:18, 2150:3, 2152:4, 2165:21, 2165:23, 2166:3, 2167:4, 2167:5, 2167:19, 2172:20, 2174:18, 2174:22, 2175:4, 2175:25, 2177:17, 2179:15, 2181:5, 2181:10, 2181:12, 2181:16, 2182:5, 2182:22, 2182:23, 2183:17, 2183:19, 2183:21, 2183:23, 2184:2, 2185:12, 2185:13, 2185:16, 2187:16, 2187:25, 2188:1, 2188:3, 2188:8, 2188:11, 2189:19, 2190:1, 2190:10, 2190:11, 2190:13, 2190:15, 2191:22, 2195:19, 2195:25, 2196:3, 2196:7, 2196:9, 2197:16, 2197:20, 2198:9
**charges** [23] - 2128:25, 2142:16, 2149:22, 2152:6, 2152:9, 2160:5, 2166:24, 2169:3, 2170:18, 2170:24, 2171:2, 2172:24, 2173:6, 2173:10, 2173:14, 2173:16, 2174:5, 2188:14, 2190:25, 2194:24, 2196:13, 2196:16, 2204:7
**charts** [5] - 2163:17, 2163:22, 2163:24, 2164:2
**chat** [2] - 2135:1, 2135:2
**CHEN** [2] - 2124:12, 2124:18
**chen** [1] - 2126:2
**child** [2] - 2147:17, 2199:19
**child's** [1] - 2130:24
**chime** [1] - 2150:4
**China** [26] - 2126:24, 2129:13, 2131:4, 2132:14, 2136:10, 2136:11, 2136:12,

2136:15, 2137:5, 2138:8, 2146:3, 2146:12, 2146:17, 2147:24, 2165:11, 2165:12, 2189:13, 2189:21, 2191:19, 2192:1, 2192:4, 2192:8, 2193:2, 2193:18, 2193:25

**Chinese** [29] - 2126:25, 2127:19, 2127:22, 2127:25, 2128:7, 2128:23, 2129:1, 2129:6, 2129:17, 2129:21, 2130:10, 2131:1, 2131:13, 2131:24, 2132:13, 2132:25, 2135:12, 2136:17, 2138:8, 2143:23, 2143:25, 2145:4, 2145:7, 2148:2, 2148:7, 2163:3, 2163:8, 2163:11, 2193:2

**Chinese-to-English** [1] - 2163:8

**chitchat** [1] - 2132:12

**choice** [2] - 2146:25, 2147:1

**choose** [2] - 2155:22, 2206:17

**CHRISTINE** [2] - 2124:18, 2124:23

**circle** [1] - 2177:7

**circumstances** [10] - 2130:2, 2134:6, 2139:25, 2154:3, 2154:13, 2171:7, 2172:11, 2172:18, 2175:19, 2199:3

**circumstantial** [6] - 2153:18, 2154:2, 2154:5, 2154:15, 2155:3, 2198:25

**Civilian** [1] - 2166:6

**claim** [5] - 2127:8, 2142:5, 2142:7, 2146:12, 2187:3

**claimed** [1] - 2129:24

**claiming** [1] - 2140:13

**clarify** [1] - 2207:23

**clean** [1] - 2169:10

**clear** [3] - 2127:17, 2138:1, 2154:7

**clearly** [1] - 2172:15

**clerk** [2] - 2207:8, 2207:13

**client** [6] - 2135:6, 2135:19, 2136:25, 2145:14, 2152:24

**clients** [2] - 2130:9, 2145:13

**close** [1] - 2149:11

**closed** [2] - 2171:19, 2172:4

**CLOSING** [2] - 2126:18, 2211:4

**closing** [1] - 2126:22

**co** [11] - 2130:10, 2130:12, 2131:24, 2133:15, 2179:25, 2183:14, 2184:15, 2185:3, 2185:5, 2186:15, 2194:9

**co-conspirator** [4] - 2130:12, 2179:25, 2183:14, 2185:3

**co-conspirators** [5] - 2133:15, 2184:15, 2185:5, 2186:15, 2194:9

**co-defendant** [2] - 2130:10, 2131:24

**coconspirator** [2] - 2128:1, 2159:6

**coconspirators** [1] - 2143:8

**Code** [7] - 2180:23, 2188:18, 2189:15, 2191:5, 2194:14, 2195:14, 2197:6

**coerce** [1] - 2147:23

**coincidence** [1] - 2128:2

**colleague** [1] - 2133:8

**colleagues** [1] - 2148:10

**collect** [1] - 2135:8

**collecting** [1] - 2162:17

**color** [1] - 2160:2

**coming** [1] - 2141:5

**committing** [1] - 2139:6

**commands** [1] - 2181:1

**comment** [1] - 2207:7

**comments** [1] - 2206:13

**commerce** [10] - 2194:18, 2195:6, 2196:22, 2197:8, 2197:20, 2197:22, 2198:9, 2198:10, 2198:15, 2199:13

**commission** [11] - 2180:12, 2181:2, 2181:14, 2181:21, 2182:7, 2182:16, 2182:21, 2185:6, 2185:13, 2186:11, 2186:13

**commit** [12] - 2142:23, 2142:24, 2166:3, 2174:15, 2181:7, 2181:22, 2188:16, 2188:20, 2189:18, 2190:4, 2194:13, 2195:22

**commits** [2] - 2180:25, 2185:3

**committed** [36] - 2142:24, 2165:10, 2165:13, 2170:22, 2174:25, 2177:24, 2178:18, 2178:22, 2178:24, 2179:18, 2179:19, 2180:9, 2181:5, 2181:8, 2181:12, 2181:16, 2181:18, 2181:20, 2182:5, 2182:11, 2182:12, 2182:14, 2182:15, 2182:17, 2184:3, 2184:5, 2184:7, 2184:12, 2184:14, 2185:11, 2190:1, 2190:20, 2190:22, 2190:24, 2195:19, 2198:23

**common** [12] - 2154:16, 2154:22, 2154:24, 2158:21, 2175:15, 2175:21, 2177:19, 2179:8, 2184:8, 2187:11

**communicate** [5] - 2186:15, 2200:25, 2201:4, 2201:6, 2201:7

**communicated** [1] - 2128:14

**communicating** [1] - 2132:24

**communication** [1] - 2204:4

**communications** [1] - 2200:21

**company** [11] - 2135:1, 2135:5, 2135:10, 2135:13, 2135:15, 2135:16, 2135:17, 2135:21, 2135:23, 2136:14, 2136:19

**compare** [1] - 2129:23

**Compare** [1] - 2135:20

**compared** [1] - 2156:10

**compensation** [1] - 2193:11

**competing** [1] - 2128:8

**Complaint** [1] - 2166:6

**complete** [2] - 2167:11, 2185:19

**complex** [1] - 2136:5

**computer** [1] - 2202:2

**Computer** [1] - 2125:20

**Computer-aided** [1] - 2125:20

**computerized** [1] - 2125:20

**conceal** [1] - 2141:9

**conceals** [1] - 2141:8

**conceded** [2] - 2127:8, 2133:18

**concept** [1] - 2170:25

**concepts** [1] - 2171:1

**concern** [3] - 2161:18, 2164:25, 2168:7

**concerned** [1] - 2151:7

**concerning** [3] - 2158:20, 2162:16, 2201:14

**conclusion** [2] - 2203:3, 2203:15

**conclusions** [2] - 2154:22, 2160:9

**conduct** [20] - 2142:19, 2143:13, 2147:25, 2165:17, 2165:19, 2171:6, 2171:14, 2171:16, 2175:19, 2177:17, 2182:9, 2194:10, 2195:10, 2197:1, 2197:12, 2199:2, 2199:7, 2199:12, 2199:16

**conference** [1] - 2127:24

**confirm** [3] - 2126:5, 2127:7, 2207:13

**confirming** [1] - 2144:25

**conflicts** [1] - 2150:19

**confounding** [1] - 2202:7

**confusion** [3] - 2128:5, 2133:23, 2134:2

**CONGYING** [1] - 2124:8

**Congying** [11] - 2125:7, 2127:4, 2149:17, 2185:15, 2188:15, 2189:1, 2189:9, 2191:1, 2191:16, 2195:3, 2196:20

**connection** [1] - 2165:22

**conscientious** [2] - 2203:12, 2204:9

**conscious** [3] - 2171:10, 2171:24, 2203:11

**consciously** [1] - 2139:19

**consent** [1] - 2126:8

**consequence** [1] - 2171:13

**consequences** [2] - 2168:5, 2186:6

**consider** [34] - 2130:7, 2130:13, 2139:19, 2139:20, 2145:17, 2151:17, 2151:22, 2153:5, 2155:14, 2156:24, 2157:16, 2158:12, 2159:17, 2161:3, 2161:13, 2163:9, 2163:14, 2164:2, 2165:14, 2166:2, 2166:25, 2167:14, 2168:2, 2170:25, 2171:18, 2173:19, 2175:20, 2176:3, 2176:11, 2179:24, 2180:17, 2181:20, 2186:19

**considerate** [1] - 2149:16

**consideration** [12] - 2142:17, 2157:22, 2162:21, 2163:22, 2167:13, 2167:23, 2167:25, 2168:13, 2170:6, 2170:10, 2172:11, 2204:9

**considerations** [2] - 2158:14, 2159:15

**considered** [5] - 2162:18, 2165:7, 2166:9, 2179:19, 2180:6

**considering** [14] - 2163:19, 2171:21, 2171:22, 2176:5, 2177:7, 2178:6, 2180:14, 2180:19, 2182:2, 2182:21, 2183:16, 2183:21, 2190:3, 2195:21

**consistent** [1] - 2141:4

**conspiracies** [8] - 2179:14, 2185:16, 2187:4, 2187:12, 2187:15, 2187:17, 2187:23, 2188:4

**conspiracy** [91] - 2127:11, 2129:20, 2131:15, 2149:18, 2149:20, 2173:7, 2173:15, 2174:10, 2174:11, 2174:13, 2174:15, 2174:16, 2174:18, 2174:24, 2174:25, 2175:4, 2175:5, 2175:6,

2175:17, 2175:25, 2176:3, 2176:6, 2176:12, 2176:14, 2176:16, 2176:18, 2177:8, 2177:12, 2177:13, 2177:17, 2177:20, 2177:25, 2178:4, 2178:7, 2178:9, 2178:10, 2178:14, 2178:16, 2178:25, 2179:1, 2179:2, 2179:4, 2179:6, 2179:8, 2179:9, 2179:16, 2179:17, 2180:5, 2180:6, 2183:16, 2183:21, 2184:5, 2184:11, 2185:4, 2185:17, 2185:20, 2185:22, 2185:25, 2186:7, 2186:9, 2186:14, 2186:17, 2186:19, 2186:25, 2187:3, 2187:11, 2187:16, 2187:17, 2187:19, 2187:22, 2187:24, 2188:1, 2188:3, 2188:8, 2188:10, 2188:11, 2188:13, 2188:23, 2189:1, 2189:17, 2190:2, 2190:6, 2190:13, 2190:24, 2194:16, 2195:16, 2195:17, 2195:20, 2195:25, 2196:7

**conspiracy's** [1] - 2176:20
**conspirator** [4] - 2130:12, 2179:25, 2183:14, 2185:3
**conspirator's** [1] - 2176:25
**conspiratorial** [2] - 2186:1, 2186:2
**conspirators** [15] - 2131:19, 2133:15, 2174:14, 2175:2, 2175:8, 2177:4, 2178:24, 2179:5, 2184:9, 2184:15, 2185:5, 2186:15, 2190:23, 2194:9
**conspire** [2] - 2188:20, 2189:11, 2195:5
**conspired** [1] - 2194:13
**conspiring** [1] - 2188:16
**constitute** [1] - 2169:15
**constituting** [1] - 2184:19
**Constitution** [1] - 2157:8
**consular** [2] - 2191:7, 2192:17
**consult** [1] - 2203:8
**contact** [4] - 2127:21, 2138:13, 2193:12, 2193:13
**contacted** [2] - 2128:21, 2129:3
**contacts** [3] - 2132:8, 2138:14, 2138:16
**contained** [2] - 2153:4, 2164:1
**containing** [2] - 2164:6, 2164:12
**contains** [2] - 2166:24, 2173:1
**contend** [1] - 2187:1
**contentions** [1] - 2155:11
**contents** [1] - 2150:9
**context** [4] - 2131:22, 2133:13, 2135:3, 2166:8
**CONTI** [1] - 2125:4
**continue** [4] - 2126:15, 2149:13, 2210:6, 2210:7
**Continued** [7] - 2125:1, 2140:20, 2161:22, 2184:22, 2202:13, 2204:21, 2205:20
**CONTINUED** [2] - 2126:18, 2211:4
**Continuing** [5] - 2141:1, 2162:1, 2185:1, 2203:1, 2206:1
**contractual** [1] - 2193:10
**contradicted** [1] - 2156:17

**contradictory** [1] - 2174:7
**contrary** [2] - 2189:14, 2195:13
**contrast** [1] - 2187:12
**control** [4] - 2152:17, 2192:19, 2193:2, 2193:6
**controlled** [1] - 2193:3
**controlling** [1] - 2174:7
**controls** [1] - 2164:16
**convenient** [1] - 2206:7
**conversations** [1] - 2135:4
**convict** [3] - 2132:1, 2169:3, 2170:5
**convicted** [3] - 2131:11, 2168:14, 2181:17
**conviction** [2] - 2159:8, 2203:21
**convictions** [1] - 2203:12
**convinced** [2] - 2178:19, 2203:20
**convincing** [1] - 2169:22
**cooler** [2] - 2209:1, 2209:11
**cooperating** [4] - 2158:25, 2159:18, 2160:16, 2160:19
**cooperator** [1] - 2159:11
**coordinated** [1] - 2127:24
**copies** [3] - 2149:15, 2208:12, 2208:18
**copy** [6] - 2149:14, 2172:23, 2190:16, 2196:9, 2206:20, 2207:9
**correct** [3] - 2139:4, 2144:20, 2207:25
**correctly** [1] - 2163:25
**counsel** [10] - 2126:21, 2127:8, 2128:10, 2128:19, 2130:18, 2131:23, 2133:18, 2136:21, 2137:12, 2140:11
**Counsel** [7] - 2129:8, 2141:10, 2142:16, 2142:17, 2143:15, 2145:12, 2145:20
**counsels** [1] - 2181:1
**Count** [35] - 2173:6, 2173:10, 2173:14, 2173:16, 2183:17, 2183:19, 2183:21, 2183:24, 2188:14, 2189:19, 2190:2, 2190:5, 2190:10, 2190:11, 2190:12, 2190:14, 2190:16, 2190:25, 2191:12, 2191:22, 2193:22, 2194:12, 2194:23, 2195:18, 2195:23, 2195:24, 2195:25, 2196:3, 2196:7, 2196:10, 2196:12, 2196:13, 2196:15, 2197:5
**count** [8] - 2166:25, 2167:2, 2167:3, 2167:8, 2173:19, 2173:20, 2173:22, 2204:4
**country** [4] - 2147:20, 2192:12, 2192:13, 2198:12
**counts** [5] - 2166:24, 2167:4, 2170:17, 2173:2, 2173:24
**Counts** [10] - 2174:9, 2174:18, 2180:8, 2183:11, 2184:1, 2184:2, 2184:18, 2185:12, 2185:13, 2185:16
**couple** [1] - 2136:23
**coupled** [1] - 2182:11
**course** [10] - 2127:17, 2131:3, 2132:2, 2134:12, 2135:10, 2137:9, 2143:12, 2144:12, 2145:6, 2151:23, 2152:21, 2160:24, 2161:17, 2195:9, 2197:1, 2197:11, 2197:25, 2199:6, 2200:22,

2201:12
**Court** [16] - 2125:17, 2150:12, 2159:7, 2168:2, 2168:9, 2200:21, 2204:4, 2204:8, 2207:17, 2207:18, 2207:19, 2208:10, 2208:15, 2208:19, 2208:22, 2211:11
**court** [11] - 2126:1, 2151:2, 2154:6, 2154:13, 2160:20, 2201:10, 2206:9, 2208:16, 2208:21, 2211:12, 2211:13
**COURT** [33] - 2124:1, 2125:17, 2126:4, 2126:9, 2126:11, 2126:17, 2148:16, 2148:17, 2162:2, 2185:2, 2202:6, 2203:2, 2205:3, 2205:6, 2205:9, 2205:11, 2205:13, 2205:18, 2206:2, 2206:12, 2207:2, 2207:20, 2207:25, 2208:5, 2208:8, 2208:17, 2208:22, 2209:6, 2209:20, 2210:1, 2210:4, 2210:8, 2211:6
**Court's** [1] - 2143:1
**courthouse** [2] - 2200:17, 2207:5
**Courthouse** [1] - 2124:5
**courtroom** [2] - 2154:8, 2209:11
**COURTROOM** [3] - 2206:5, 2206:11, 2206:25
**cover** [1] - 2135:23
**covert** [3] - 2144:10, 2144:13, 2144:15
**CRAIG** [1] - 2124:19
**create** [2] - 2152:7, 2198:18
**credibility** [2] - 2146:4, 2155:17, 2155:18, 2157:25, 2159:15, 2160:7, 2160:21, 2161:6
**crime** [63] - 2127:9, 2138:3, 2139:7, 2142:21, 2142:23, 2142:24, 2167:19, 2174:13, 2174:14, 2174:15, 2174:17, 2174:18, 2174:20, 2177:24, 2179:3, 2181:2, 2181:5, 2181:16, 2181:18, 2181:19, 2181:21, 2181:22, 2181:24, 2181:25, 2182:1, 2182:3, 2182:7, 2182:10, 2182:11, 2182:12, 2182:14, 2182:16, 2182:17, 2182:21, 2182:23, 2183:19, 2183:23, 2184:2, 2184:5, 2185:3, 2185:9, 2185:11, 2185:13, 2186:12, 2186:13, 2186:25, 2189:18, 2189:19, 2189:24, 2190:4, 2190:6, 2191:10, 2191:22, 2194:7, 2195:22, 2195:25, 2197:14
**crimes** [11] - 2140:3, 2150:3, 2160:11, 2165:10, 2165:13, 2165:20, 2166:3, 2180:9, 2180:12, 2182:5, 2185:7
**criminal** [26] - 2130:4, 2131:15, 2131:16, 2131:19, 2132:17, 2136:20, 2138:2, 2139:23, 2148:4, 2150:1, 2159:4, 2159:5, 2169:8, 2170:17, 2174:10, 2174:13, 2177:10, 2177:15, 2177:16, 2178:15, 2181:17, 2182:19, 2182:25, 2183:2, 2185:6
**CRIMINAL** [1] - 2124:11
**criminals** [1] - 2177:11
**critical** [1] - 2145:10

**cross** [2] - 2156:10, 2166:5
**cross-examination** [2] - 2156:10, 2166:5
**cumulative** [2] - 2162:7, 2166:14
**current** [1] - 2157:18
**cursory** [1] - 2129:5
**custom** [1] - 2200:16

# D

**D.C** [1] - 2124:22
**daily** [1] - 2137:5
**damning** [1] - 2134:21
**database** [1] - 2138:5
**databases** [1] - 2165:23
**date** [2] - 2170:20, 2170:22
**dates** [6] - 2170:19, 2170:23, 2189:7, 2191:14, 2195:1, 2196:18
**daughter** [2] - 2130:23, 2146:18
**daughter's** [1] - 2130:17
**days** [3] - 2129:3, 2136:23, 2142:7
**DEA** [3] - 2132:22, 2137:23, 2138:5
**debt** [1] - 2135:8
**December** [4] - 2189:7, 2191:14, 2195:1, 2196:18
**decide** [12] - 2151:21, 2155:6, 2155:15, 2157:23, 2159:13, 2160:17, 2163:24, 2164:13, 2200:8, 2200:18, 2203:14, 2206:16
**decided** [1] - 2129:17
**deciding** [8] - 2153:11, 2155:13, 2155:23, 2158:15, 2166:2, 2175:21, 2176:2, 2179:25
**decision** [12] - 2146:12, 2152:23, 2157:16, 2158:11, 2160:11, 2160:12, 2163:12, 2167:14, 2167:20, 2169:24, 2171:11, 2203:24
**decision-making** [1] - 2167:20
**declarations** [2] - 2179:7, 2179:11
**deductions** [1] - 2154:22
**deem** [1] - 2150:20
**deemed** [2] - 2179:9, 2185:4
**deeply** [1] - 2140:16
**defeated** [1] - 2185:24
**Defendant** [47] - 2125:3, 2125:6, 2125:10, 2127:24, 2128:19, 2167:6, 2167:7, 2168:11, 2169:13, 2170:9, 2170:13, 2171:14, 2171:17, 2171:18, 2171:22, 2172:2, 2172:3, 2173:4, 2173:22, 2174:23, 2175:24, 2176:4, 2176:10, 2177:7, 2178:6, 2180:14, 2180:18, 2181:4, 2181:6, 2181:9, 2181:12, 2181:13, 2181:20, 2182:2, 2182:6, 2182:8, 2182:20, 2183:4, 2183:7, 2183:16, 2183:18, 2183:20, 2183:23, 2184:10, 2184:13, 2184:17
**defendant** [52] - 2130:10, 2131:24, 2155:5, 2157:11, 2162:11, 2167:2, 2176:15, 2176:17, 2176:20, 2177:14, 2178:2, 2181:23, 2182:12, 2185:9,

2185:11, 2185:15, 2185:23, 2185:25, 2186:2, 2186:8, 2186:16, 2186:18, 2186:23, 2188:1, 2188:7, 2188:9, 2190:3, 2190:5, 2190:21, 2191:25, 2192:2, 2192:6, 2192:7, 2193:1, 2193:6, 2193:15, 2193:18, 2193:22, 2193:23, 2193:24, 2194:5, 2195:21, 2195:23, 2196:2, 2197:15, 2197:19, 2197:21, 2198:1, 2198:8, 2198:14, 2199:7, 2199:16
**defendant's** [12] - 2161:19, 2172:7, 2176:12, 2176:13, 2176:24, 2176:25, 2177:9, 2182:10, 2193:3, 2199:1, 2199:12, 2199:16
**Defendant's** [5] - 2169:4, 2170:8, 2170:11, 2172:14, 2173:20
**defendants** [46] - 2124:10, 2126:21, 2126:22, 2131:18, 2145:12, 2147:9, 2147:21, 2147:24, 2148:1, 2148:3, 2148:5, 2148:9, 2148:13, 2149:17, 2149:21, 2152:4, 2152:6, 2152:8, 2157:7, 2157:13, 2157:14, 2157:16, 2160:10, 2160:15, 2162:13, 2162:23, 2164:23, 2164:25, 2166:18, 2166:20, 2166:25, 2187:1, 2188:15, 2189:9, 2190:1, 2190:9, 2191:1, 2191:16, 2194:9, 2194:13, 2194:17, 2195:3, 2195:19, 2196:14, 2196:20, 2204:7
**Defendants** [30] - 2126:3, 2167:4, 2168:6, 2168:14, 2169:2, 2169:3, 2169:6, 2169:7, 2169:8, 2169:10, 2170:25, 2171:5, 2171:15, 2171:21, 2172:20, 2173:6, 2173:10, 2173:14, 2173:16, 2174:10, 2176:2, 2178:22, 2179:14, 2179:20, 2179:21, 2180:7, 2180:9, 2180:11, 2182:4, 2183:11
**defendants'** [1] - 2186:5
**Defendants'** [5] - 2167:16, 2179:23, 2180:1, 2180:19, 2180:20
**defendants's** [3] - 2166:19, 2171:9, 2171:23
**defense** [13] - 2126:5, 2127:8, 2127:9, 2127:11, 2128:10, 2130:1, 2131:23, 2133:18, 2136:21, 2166:11, 2185:15, 2186:23, 2194:7
**deference** [1] - 2203:17
**define** [2] - 2149:25, 2169:16
**defined** [1] - 2180:22
**definitely** [1] - 2136:9
**definition** [1] - 2189:17
**degree** [1] - 2193:6
**delegated** [1] - 2192:15
**deliberate** [3] - 2203:9, 2206:15, 2206:17
**deliberately** [5] - 2127:6, 2131:19, 2171:9, 2171:18, 2172:4
**deliberating** [1] - 2208:10
**deliberation** [2] - 2150:6, 2204:9
**deliberations** [27] - 2149:15, 2150:7, 2150:8, 2157:15, 2159:17, 2165:3,

2168:8, 2168:16, 2190:17, 2196:11, 2200:4, 2200:5, 2200:15, 2200:18, 2200:22, 2201:1, 2201:4, 2201:12, 2201:25, 2204:5, 2204:6, 2206:24, 2207:1, 2208:1, 2208:2, 2210:6, 2210:7
**demonstrated** [1] - 2185:23
**demonstrates** [1] - 2138:11
**demonstrating** [1] - 2172:1
**Department** [1] - 2133:1
**DEPARTMENT** [1] - 2124:21
**departments** [1] - 2128:8
**depriving** [1] - 2186:10
**DEPUTY** [3] - 2206:5, 2206:11, 2206:25
**Deputy** [3] - 2200:21, 2201:5, 2201:18
**describe** [3] - 2151:6, 2156:3, 2201:20
**described** [5] - 2136:22, 2143:23, 2146:10, 2156:2, 2187:17
**description** [1] - 2135:15
**deserves** [3] - 2155:18, 2158:3, 2158:17
**deserving** [1] - 2157:21
**design** [2] - 2175:21, 2187:11
**designed** [3] - 2138:22, 2138:23, 2186:3
**despite** [2] - 2140:7, 2187:20
**detail** [6] - 2128:6, 2133:8, 2157:1, 2173:4, 2175:10, 2198:6
**detailed** [1] - 2132:17
**details** [2] - 2138:19, 2176:18
**detective** [1] - 2140:2
**detectives** [1] - 2140:3
**determination** [4] - 2155:18, 2158:22, 2172:7, 2172:13
**determine** [13] - 2146:4, 2150:18, 2152:11, 2161:18, 2167:7, 2168:10, 2172:17, 2180:1, 2182:20, 2187:8, 2188:10, 2188:12, 2200:1
**determining** [5] - 2157:25, 2162:22, 2167:9, 2171:17, 2186:18
**different** [7] - 2128:8, 2130:3, 2130:15, 2134:22, 2156:22, 2166:24, 2177:3
**differently** [1] - 2164:15
**differing** [1] - 2155:2
**differs** [1] - 2151:14
**difficulty** [1] - 2209:12
**dilemma** [1] - 2146:22
**diplomatic** [2] - 2191:7, 2192:17
**direct** [14] - 2127:21, 2131:9, 2131:12, 2145:7, 2153:17, 2153:23, 2154:11, 2155:3, 2156:9, 2175:17, 2183:13, 2193:12, 2198:20, 2198:23
**directed** [3] - 2127:25, 2133:16, 2193:3
**direction** [6] - 2126:25, 2148:7, 2192:19, 2193:2, 2193:8, 2206:9
**directly** [7] - 2132:25, 2137:21, 2172:8, 2180:14, 2180:16, 2192:15, 2202:9

**dirty** [1] - 2141:14
**disavowed** [1] - 2185:24
**disbelieve** [1] - 2155:22
**discharge** [1] - 2161:2
**disclosed** [1] - 2199:3
**discover** [1] - 2147:12
**discredit** [1] - 2156:23
**discrepancies** [1] - 2156:21
**discrepancy** [2] - 2156:24, 2157:1
**discuss** [1] - 2203:6
**discussed** [3] - 2137:21, 2139:1, 2177:19
**discussion** [2] - 2145:19, 2202:5
**disobey** [1] - 2175:16
**disregard** [3] - 2153:15, 2157:4, 2157:5
**disregarded** [1] - 2153:11
**distinct** [3] - 2187:14, 2190:8, 2196:1
**distinction** [2] - 2153:19, 2177:3
**distress** [10] - 2145:22, 2145:24, 2147:5, 2195:13, 2197:4, 2197:14, 2198:2, 2199:9, 2199:15, 2199:17
**distressed** [2] - 2145:25, 2146:14
**distribute** [1] - 2164:5
**District** [4] - 2189:8, 2191:15, 2195:2, 2196:19
**DISTRICT** [4] - 2124:1, 2124:1, 2124:12, 2124:16
**DIVISION** [1] - 2124:21
**DNA** [1] - 2127:7
**doctor** [1] - 2137:13
**document** [2] - 2129:11, 2155:8
**documentary** [1] - 2152:15
**documents** [6] - 2155:12, 2163:3, 2163:5, 2163:7, 2163:20
**done** [11] - 2129:5, 2131:16, 2137:16, 2143:5, 2151:22, 2171:13, 2179:15, 2179:22, 2180:3, 2180:5, 2185:19
**door** [1] - 2147:12
**doubt** [45] - 2148:12, 2157:10, 2159:10, 2161:8, 2161:20, 2162:12, 2162:24, 2166:19, 2168:11, 2169:5, 2169:14, 2169:16, 2169:17, 2169:18, 2169:21, 2169:25, 2170:4, 2170:7, 2170:11, 2170:22, 2171:20, 2174:20, 2175:24, 2178:7, 2178:20, 2179:13, 2180:14, 2181:10, 2183:15, 2183:20, 2183:25, 2184:17, 2185:10, 2191:24, 2193:18, 2193:20, 2197:17, 2198:8, 2198:14, 2199:6, 2200:2, 2201:14
**down** [3] - 2127:16, 2127:19, 2134:16
**dozens** [1] - 2137:16
**draw** [12] - 2140:6, 2150:20, 2154:19, 2154:23, 2155:4, 2155:5, 2155:6, 2157:13, 2160:8, 2160:24, 2164:22, 2177:7
**drawing** [1] - 2154:25
**drawn** [4] - 2152:13, 2155:3, 2172:4, 2199:4
**drive** [4] - 2141:19, 2141:20, 2141:21,

2202:3
**driver** [1] - 2137:13
**driving** [3] - 2139:8, 2143:22, 2144:9
**drop** [1] - 2141:21
**dry** [1] - 2154:7
**DUBIN** [1] - 2125:6
**due** [1] - 2148:3
**duration** [2] - 2161:4, 2177:1
**during** [24] - 2134:13, 2143:15, 2149:15, 2152:22, 2157:18, 2158:24, 2159:17, 2160:24, 2161:17, 2162:15, 2162:25, 2164:20, 2165:5, 2180:2, 2190:17, 2193:16, 2196:11, 2199:12, 2200:11, 2200:22, 2201:3, 2201:24, 2208:1, 2208:2
**duties** [1] - 2149:25
**duty** [14] - 2149:10, 2150:15, 2152:24, 2160:19, 2162:6, 2166:13, 2167:10, 2168:8, 2168:9, 2169:9, 2170:2, 2203:2, 2203:4, 2203:8

# E

**e-mail** [4] - 2128:9, 2129:18, 2130:21, 2132:15
**E-mail** [1] - 2125:18
**e-mails** [1] - 2145:2
**ea** [1] - 2169:21
**early** [1] - 2136:25
**ease** [1] - 2150:10
**East** [1] - 2124:16
**Eastern** [4] - 2189:8, 2191:15, 2195:2, 2196:19
**EASTERN** [2] - 2124:1, 2124:16
**effect** [5] - 2133:22, 2186:3, 2188:23, 2203:13, 2203:22
**effectiveness** [1] - 2186:11
**effects** [1] - 2156:24
**efforts** [4] - 2185:22, 2186:11, 2186:12, 2186:15
**EG** [1] - 2139:2
**either** [8] - 2127:11, 2150:8, 2162:6, 2166:13, 2175:13, 2187:20, 2193:12, 2198:3
**elderly** [3] - 2137:14, 2143:11, 2147:12
**elect** [1] - 2200:19
**element** [10] - 2169:5, 2171:25, 2175:1, 2175:23, 2178:12, 2186:25, 2198:7, 2198:13, 2199:5, 2199:11
**elements** [12] - 2150:3, 2170:16, 2174:20, 2183:25, 2184:16, 2185:8, 2189:23, 2191:24, 2193:20, 2197:18, 2198:5, 2200:1
**elephant** [1] - 2137:11
**elsewhere** [4] - 2189:8, 2191:15, 2195:2, 2196:19
**email** [1] - 2145:7
**emotional** [9] - 2145:22, 2145:24, 2195:13, 2197:3, 2197:14, 2198:2, 2199:9, 2199:15, 2199:17

**employed** [1] - 2157:20
**employer** [1] - 2193:5
**end** [4] - 2127:12, 2136:1, 2148:4, 2179:4
**ended** [1] - 2142:16
**ends** [2] - 2178:5, 2205:19
**enforcement** [8] - 2138:1, 2139:15, 2139:24, 2140:2, 2157:19, 2157:20, 2158:2, 2186:10
**engage** [4] - 2149:20, 2155:1, 2173:15, 2195:10
**engaged** [7] - 2142:18, 2165:20, 2178:9, 2180:16, 2182:8, 2197:1, 2199:7
**engages** [2] - 2171:14, 2197:12
**engaging** [2] - 2173:17, 2196:14
**English** [5] - 2163:2, 2163:4, 2163:7, 2163:8, 2163:12
**ensure** [2] - 2139:12, 2149:3
**enter** [5] - 2147:16, 2168:7, 2168:15, 2179:4, 2202:10
**entered** [3] - 2152:9, 2174:21, 2175:7
**enters** [2] - 2126:10, 2209:5
**entire** [2] - 2157:6, 2193:16
**entirely** [5] - 2153:11, 2163:3, 2171:24, 2172:3, 2200:8
**entitled** [6] - 2155:9, 2164:2, 2167:13, 2167:25, 2200:19, 2200:23
**entitles** [1] - 2167:22
**equal** [2] - 2167:12, 2168:1, 2177:5
**equally** [1] - 2167:17
**Eric** [14] - 2129:24, 2129:25, 2130:7, 2131:4, 2132:25, 2135:9, 2135:18, 2135:21, 2136:19, 2137:2, 2137:15, 2138:23, 2140:2, 2145:8
**error** [1] - 2157:2
**ESQ** [9] - 2124:17, 2124:18, 2124:18, 2124:19, 2124:25, 2125:5, 2125:8, 2125:8, 2125:11
**essential** [2] - 2145:11, 2176:9
**establish** [6] - 2155:10, 2170:20, 2174:19, 2175:5, 2177:20, 2182:2, 2182:4, 2182:6, 2182:13, 2191:23, 2199:11
**established** [6] - 2154:18, 2154:24, 2172:1, 2175:16, 2193:12, 2198:25
**establishes** [2] - 2159:9, 2170:21
**ETA** [1] - 2133:24
**evaluate** [2] - 2167:6, 2183:10
**evaluating** [3] - 2160:7, 2161:5, 2166:10
**evasive** [1] - 2156:7
**evening** [1] - 2126:13
**events** [3] - 2156:2, 2164:21, 2186:3
**eventually** [2] - 2133:1, 2136:1
**everyday** [1] - 2172:16
**evidence** [133] - 2127:4, 2127:12, 2129:4, 2131:10, 2132:3, 2133:15, 2133:16, 2134:20, 2134:21, 2136:24, 2139:17, 2143:4, 2143:18, 2144:18,

2144:24, 2146:15, 2148:11, 2149:7, 2150:16, 2150:19, 2150:20, 2150:21, 2152:7, 2152:12, 2152:13, 2152:16, 2152:17, 2152:18, 2152:19, 2152:20, 2152:23, 2152:25, 2153:5, 2153:6, 2153:8, 2153:10, 2153:17, 2153:18, 2153:20, 2153:22, 2153:23, 2154:2, 2154:3, 2154:5, 2154:12, 2154:15, 2154:24, 2155:4, 2155:10, 2155:11, 2155:14, 2156:13, 2156:20, 2157:9, 2157:24, 2158:11, 2158:18, 2160:4, 2160:6, 2160:14, 2161:9, 2161:13, 2161:19, 2162:8, 2162:9, 2162:14, 2162:16, 2162:17, 2162:19, 2162:20, 2162:21, 2162:22, 2163:8, 2163:9, 2163:10, 2163:12, 2163:13, 2163:14, 2163:16, 2163:18, 2163:19, 2163:21, 2163:23, 2164:4, 2164:8, 2164:11, 2164:12, 2164:20, 2165:6, 2165:24, 2166:2, 2166:15, 2166:16, 2166:22, 2167:6, 2168:3, 2168:10, 2168:12, 2169:9, 2169:18, 2170:7, 2170:11, 2170:21, 2172:5, 2172:12, 2172:25, 2176:4, 2176:11, 2180:7, 2186:18, 2186:21, 2198:25, 2199:3, 2200:1, 2200:11, 2200:13, 2201:24, 2202:2, 2202:3, 2203:4, 2203:6, 2203:13, 2203:16, 2203:22, 2204:10, 2207:19, 2208:16, 2208:21

**evolved** [1] - 2141:4
**exact** [5] - 2136:22, 2137:25, 2144:21, 2144:23, 2170:20
**exactly** [1] - 2128:9
**examination** [4] - 2156:9, 2156:10, 2156:11, 2166:5
**examine** [1] - 2203:16
**example** [3] - 2152:1, 2154:5, 2186:8
**excellent** [1] - 2205:18
**except** [2] - 2160:21, 2201:7
**exception** [1] - 2201:3
**excited** [2] - 2136:2, 2136:8
**excluded** [1] - 2153:14
**exclusively** [2] - 2160:19, 2168:9
**excuse** [1] - 2170:1
**excused** [1] - 2206:24
**exercising** [1] - 2192:11
**exhibit** [1] - 2139:2
**Exhibit** [30] - 2130:19, 2132:6, 2132:23, 2133:12, 2136:3, 2139:2, 2140:18, 2141:2, 2141:17, 2144:4, 2144:5, 2144:20, 2145:1, 2145:7, 2152:19, 2153:2, 2153:4, 2155:8, 2207:17, 2207:18, 2208:11, 2208:15, 2208:16, 2208:20, 2208:21, 2208:22, 2209:13, 2209:23, 2211:12, 2211:13
**Exhibits** [5] - 2152:15, 2153:14, 2161:18, 2207:19, 2211:11
**exhibits** [6] - 2164:1, 2172:12, 2186:21, 2201:23, 2205:15, 2206:21
**exist** [5] - 2184:8, 2184:16, 2187:12,

2187:23, 2187:25
**existed** [5] - 2175:21, 2184:6, 2187:5, 2188:4, 2188:11
**existence** [8] - 2154:4, 2154:17, 2175:15, 2175:18, 2177:20, 2180:2, 2185:8, 2187:2
**exists** [2] - 2174:16, 2187:12
**exits** [2] - 2207:1, 2210:7
**expect** [2] - 2127:10, 2142:9
**expected** [6] - 2195:12, 2197:3, 2197:13, 2198:2, 2199:9, 2199:17
**expects** [1] - 2168:2
**experience** [8] - 2138:3, 2139:12, 2140:7, 2154:16, 2154:21, 2158:8, 2159:2, 2172:14
**experienced** [1] - 2158:9
**explain** [1] - 2198:5
**explained** [3] - 2126:20, 2128:6, 2195:17
**explanation** [1] - 2128:15
**express** [2] - 2158:5, 2175:7
**expressed** [1] - 2151:20
**expressing** [1] - 2151:24
**extent** [5] - 2139:18, 2155:23, 2176:24, 2177:1, 2201:23
**extra** [1] - 2136:13
**eyes** [3] - 2171:19, 2172:4, 2178:25

## F

**facilities** [1] - 2209:3
**fact** [29] - 2127:7, 2127:16, 2130:7, 2130:14, 2131:1, 2131:4, 2131:9, 2134:25, 2139:20, 2141:11, 2144:15, 2154:17, 2155:7, 2157:12, 2157:19, 2160:10, 2164:18, 2164:24, 2167:9, 2167:21, 2177:6, 2177:18, 2177:23, 2186:23, 2187:7, 2187:20, 2187:21, 2192:11, 2198:24
**factors** [2] - 2155:25, 2157:25
**facts** [28] - 2126:22, 2147:9, 2148:11, 2150:16, 2150:17, 2150:24, 2151:20, 2151:21, 2151:24, 2152:11, 2153:11, 2154:4, 2154:18, 2154:19, 2154:23, 2155:3, 2155:13, 2158:11, 2158:22, 2160:6, 2162:9, 2164:18, 2166:16, 2171:6, 2176:14, 2200:1, 2200:10
**fail** [1] - 2201:13
**failed** [1] - 2192:2
**fails** [2] - 2174:16, 2187:2
**fair** [6] - 2134:6, 2148:5, 2167:13, 2170:6, 2170:10, 2203:2
**fairly** [1] - 2134:9
**faith** [1] - 2185:19
**false** [2] - 2157:4, 2157:5
**falsehood** [1] - 2156:22
**falsely** [2] - 2156:15, 2159:23
**family** [12] - 2145:22, 2146:9, 2146:11, 2146:21, 2147:2, 2147:13, 2147:20, 2165:11, 2198:4, 2199:10, 2199:14,

2199:18
**Fang** [14] - 2127:14, 2146:10, 2194:21, 2195:8, 2195:12, 2196:25, 2197:3, 2197:24, 2198:3, 2198:17, 2199:10, 2199:13, 2199:14, 2199:21
**Fang's** [2] - 2198:4, 2199:20
**far** [1] - 2149:12
**fashion** [1] - 2200:16
**faster** [1] - 2151:2
**father** [12] - 2133:22, 2136:5, 2143:7, 2143:10, 2143:22, 2144:9, 2146:2, 2146:12, 2146:23, 2146:25, 2147:2, 2147:3
**father's** [1] - 2146:16
**favorable** [2] - 2159:22, 2164:22
**fear** [3] - 2147:11, 2147:15, 2147:18
**federal** [5] - 2180:22, 2181:3, 2189:4, 2194:22, 2196:15
**Federal** [2] - 2152:5, 2159:7
**feelings** [2] - 2167:16, 2167:18
**fees** [1] - 2147:23
**fellow** [2] - 2203:15, 2203:18
**felt** [1] - 2153:25
**female** [1] - 2135:6
**few** [5] - 2127:2, 2132:24, 2143:14, 2159:16, 2200:2
**Fida** [1] - 2202:11
**field** [1] - 2158:10
**fifth** [1] - 2184:13
**finally** [7] - 2142:15, 2145:12, 2160:16, 2165:16, 2165:18, 2166:5, 2196:6
**financial** [6] - 2130:20, 2130:21, 2140:12, 2140:16, 2176:8, 2176:10
**fingerprints** [1] - 2127:7
**Finning** [1] - 2132:22
**first** [20] - 2127:4, 2134:25, 2135:5, 2144:24, 2149:24, 2174:21, 2175:1, 2180:1, 2181:15, 2181:19, 2181:23, 2183:24, 2184:2, 2189:3, 2191:25, 2197:19, 2198:7, 2205:3, 2210:1, 2210:2
**five** [4] - 2130:15, 2142:7, 2184:16, 2185:8
**flags** [1] - 2139:22
**flash** [1] - 2202:3
**flimsy** [1] - 2135:23
**floor** [1] - 2171:23
**Flushing** [1] - 2125:11
**flyspeck** [1] - 2207:14
**folks** [6] - 2149:9, 2205:15, 2206:12, 2207:3, 2208:5, 2209:3
**follow** [4] - 2140:4, 2142:25, 2151:5, 2168:3
**followed** [1] - 2143:11
**following** [11] - 2140:20, 2143:21, 2143:25, 2155:25, 2161:22, 2174:19, 2180:24, 2183:25, 2191:24, 2197:18, 2205:1
**follows** [3] - 2154:5, 2189:5, 2191:11
**foolish** [1] - 2172:2

**FOR** [1] - 2124:11
**forbid** [1] - 2208:2
**forbids** [1] - 2171:15
**force** [3] - 2136:5, 2136:6, 2147:19
**forced** [1] - 2147:13
**forcing** [1] - 2147:4
**foreign** [36] - 2147:18, 2147:21, 2149:19, 2173:7, 2173:12, 2180:10, 2180:15, 2189:3, 2189:12, 2189:20, 2191:2, 2191:9, 2191:18, 2192:1, 2192:10, 2192:16, 2192:19, 2192:20, 2192:21, 2192:22, 2192:23, 2192:24, 2193:4, 2193:9, 2193:10, 2193:13, 2194:18, 2195:5, 2196:22, 2197:8, 2197:20, 2197:22, 2198:9, 2198:10, 2198:12
**foreperson** [6] - 2200:16, 2200:17, 2200:19, 2200:20, 2201:5, 2204:2
**foreseeable** [3] - 2179:7, 2179:21, 2186:6
**foreseen** [1] - 2184:14
**forget** [1] - 2136:22
**form** [4] - 2152:14, 2163:16, 2164:6, 2193:8
**formal** [1] - 2175:7
**formalized** [1] - 2193:10
**formalizes** [1] - 2174:5
**formally** [1] - 2172:20
**former** [6] - 2129:25, 2139:11, 2139:23, 2140:1, 2140:2, 2157:19
**forth** [1] - 2193:21
**forthright** [1] - 2156:6
**forward** [2] - 2128:12, 2206:2
**forwarded** [3] - 2128:11, 2129:11, 2130:6
**forwards** [3] - 2128:13, 2145:4
**Four** [12] - 2173:16, 2180:8, 2183:11, 2183:24, 2184:1, 2184:3, 2184:18, 2185:12, 2185:14, 2196:13, 2196:15, 2197:5
**four** [3] - 2130:15, 2170:24, 2173:1
**fourth** [2] - 2184:10, 2192:7
**Fox** [1] - 2129:9
**frankness** [1] - 2203:17
**free** [4] - 2206:17, 2207:21, 2208:5, 2210:8
**frequency** [1] - 2161:3
**frequented** [1] - 2177:11
**frequently** [2] - 2172:15, 2172:16
**Friday** [1] - 2210:12
**friend** [4] - 2128:21, 2129:25, 2138:4, 2138:6
**friendly** [1] - 2177:15
**frightened** [1] - 2144:11
**frustrated** [1] - 2139:10
**full** [2] - 2131:7, 2204:9
**fullest** [1] - 2204:11
**fully** [1] - 2176:17
**functions** [1] - 2192:15

**furtherance** [7] - 2174:25, 2178:24, 2179:8, 2179:16, 2180:3, 2180:6, 2190:24
**furthering** [3] - 2176:7, 2178:10, 2178:15
**furthermore** [2] - 2153:7, 2177:23
**furthers** [1] - 2177:25
**FYI** [1] - 2138:20

## G

**gain** [1] - 2159:25
**Gallowitz** [12] - 2129:24, 2129:25, 2130:7, 2131:5, 2135:18, 2136:19, 2137:15, 2138:23, 2139:2, 2140:3, 2166:5
**Gallowitz's** [1] - 2166:8
**Gateway** [1] - 2125:3
**gender** [1] - 2135:7
**general** [6] - 2149:24, 2150:5, 2150:11, 2159:15, 2189:16, 2200:4
**General** [13] - 2173:8, 2173:13, 2180:16, 2189:4, 2189:14, 2189:22, 2191:4, 2191:10, 2191:20, 2192:3, 2194:2, 2194:6, 2194:10
**generally** [1] - 2153:17
**GENNA** [1] - 2125:4
**Gentlemen** [2] - 2148:18, 2149:6
**gentlemen** [6] - 2126:12, 2148:9, 2168:19, 2176:22, 2209:7, 2210:5
**GIBBONS** [1] - 2125:3
**given** [13] - 2147:9, 2148:3, 2149:12, 2151:11, 2153:20, 2157:24, 2159:14, 2168:3, 2169:14, 2172:18, 2198:22, 2200:12, 2203:3
**goal** [2] - 2129:20, 2192:25
**God** [1] - 2208:1
**GOLDBERGER** [3] - 2125:6, 2125:8, 2205:10
**Goldberger** [1] - 2205:9
**Gonzalez** [7] - 2205:16, 2207:4, 2207:12, 2208:11, 2208:17, 2209:2, 2209:9
**Googling** [1] - 2129:5
**govern** [1] - 2149:25
**government** [46] - 2126:25, 2127:19, 2127:22, 2128:23, 2129:2, 2129:6, 2129:17, 2129:21, 2131:2, 2131:13, 2132:1, 2135:12, 2136:17, 2138:5, 2138:6, 2145:4, 2147:19, 2147:22, 2148:2, 2148:8, 2149:19, 2173:7, 2173:12, 2180:10, 2180:15, 2189:3, 2189:12, 2189:13, 2189:20, 2191:3, 2191:9, 2191:18, 2191:19, 2192:1, 2192:4, 2192:10, 2192:16, 2192:19, 2192:20, 2192:22, 2192:23, 2193:4, 2193:9, 2193:10, 2193:13
**Government** [70] - 2124:15, 2126:6, 2130:19, 2132:6, 2132:23, 2136:3, 2136:8, 2139:2, 2150:4, 2155:4,

2159:1, 2159:3, 2160:4, 2160:23, 2161:7, 2161:10, 2161:13, 2162:12, 2162:22, 2164:5, 2164:23, 2165:16, 2165:19, 2166:11, 2166:20, 2167:15, 2167:22, 2167:24, 2168:1, 2169:4, 2169:13, 2170:3, 2170:17, 2174:5, 2174:19, 2175:1, 2175:5, 2175:12, 2175:23, 2178:12, 2178:23, 2180:13, 2180:18, 2181:4, 2181:11, 2182:3, 2182:7, 2183:12, 2185:10, 2186:24, 2188:25, 2189:25, 2190:23, 2191:23, 2192:8, 2192:25, 2193:19, 2193:25, 2194:4, 2194:16, 2195:18, 2197:17, 2198:7, 2198:13, 2199:5, 2199:11, 2202:11, 2205:3, 2209:13, 2209:23
**government's** [2] - 2128:7, 2192:24
**Government's** [10] - 2141:17, 2144:4, 2144:5, 2144:20, 2145:1, 2145:6, 2157:9, 2164:7, 2187:2, 2204:7
**governs** [1] - 2201:11
**grandmother** [2] - 2146:17, 2146:24
**grant** [2] - 2136:9, 2136:13
**grateful** [1] - 2149:11
**great** [1] - 2159:13
**greater** [4] - 2157:22, 2163:22, 2167:23, 2200:23
**Greg** [1] - 2132:22
**gross** [1] - 2142:6
**group** [3] - 2147:14, 2192:11, 2192:14
**Group** [1] - 2135:20
**groups** [1] - 2187:5
**guess** [1] - 2153:3
**guesswork** [1] - 2155:1
**guide** [1] - 2164:9
**guided** [1] - 2151:15
**guides** [1] - 2163:13
**guilt** [18] - 2152:8, 2157:10, 2159:9, 2160:9, 2160:13, 2161:19, 2162:11, 2162:23, 2166:19, 2169:4, 2170:3, 2170:8, 2170:12, 2176:25, 2180:1, 2180:19, 2180:20, 2183:10
**guilty** [52] - 2138:12, 2140:13, 2142:11, 2142:22, 2142:24, 2148:9, 2148:10, 2148:11, 2148:12, 2148:13, 2149:21, 2152:9, 2160:5, 2160:11, 2160:12, 2167:1, 2167:2, 2167:7, 2168:11, 2169:2, 2169:13, 2170:9, 2170:13, 2171:25, 2172:9, 2173:23, 2178:7, 2181:6, 2181:7, 2181:9, 2183:5, 2183:8, 2183:18, 2183:23, 2184:18, 2185:9, 2188:1, 2188:23, 2190:5, 2190:10, 2191:10, 2193:22, 2193:23, 2195:23, 2196:3, 2197:14, 2197:15
**guy** [1] - 2137:2
**GX** [1] - 2208:23

## H

**Ha-ha** [1] - 2136:10

**half** [1] - 2176:23
**hand** [7] - 2129:15, 2168:23, 2170:10, 2183:6, 2187:24, 2206:5, 2209:22
**handed** [1] - 2127:19
**handing** [1] - 2200:21
**handlers** [1] - 2145:5
**hands** [1] - 2193:7
**hands-off** [1] - 2193:7
**harass** [18] - 2126:23, 2137:21, 2143:17, 2144:14, 2147:23, 2194:18, 2194:20, 2195:6, 2195:7, 2196:23, 2196:24, 2197:9, 2197:10, 2197:22, 2197:23, 2198:15, 2198:16, 2198:17
**harassed** [2] - 2143:3, 2143:17
**harassment** [1] - 2137:20
**hardcopy** [1] - 2149:1
**headings** [1] - 2168:25
**hear** [6] - 2142:10, 2149:4, 2156:1, 2201:21, 2208:22, 2209:21
**heard** [20] - 2129:4, 2135:18, 2140:2, 2141:25, 2146:3, 2146:15, 2149:7, 2152:21, 2154:1, 2157:18, 2158:24, 2160:4, 2160:17, 2162:15, 2162:25, 2164:14, 2164:16, 2164:20, 2207:8
**hearing** [3] - 2204:20, 2205:2, 2209:12
**heart** [1] - 2146:20
**heart-rending** [1] - 2146:20
**heat** [1] - 2209:8
**Heeren** [3] - 2126:15, 2148:17, 2209:18
**HEEREN** [12] - 2124:19, 2126:16, 2126:19, 2126:20, 2133:13, 2141:3, 2205:5, 2205:17, 2207:22, 2208:4, 2209:19, 2211:5
**held** [2] - 2148:6, 2204:20
**help** [6] - 2138:3, 2139:12, 2142:21, 2144:17, 2178:14, 2181:25
**helped** [3] - 2143:7, 2143:12, 2147:21
**helping** [2] - 2136:13, 2136:14
**helps** [2] - 2142:22, 2142:23
**herself** [1] - 2144:3
**hesitate** [3] - 2169:19, 2169:23, 2203:19
**hiding** [1] - 2156:7
**higher** [1] - 2208:25
**hill** [1] - 2171:20
**himself** [10] - 2128:2, 2129:12, 2137:21, 2142:20, 2142:25, 2177:15, 2181:4, 2181:8, 2181:24, 2190:21
**hire** [2] - 2135:6, 2135:7
**hired** [3] - 2129:7, 2130:14, 2135:5
**history** [1] - 2128:22
**hit** [1] - 2142:18
**hits** [1] - 2132:21
**home** [5] - 2136:7, 2145:3, 2147:16, 2147:19, 2199:23
**Homeland** [1] - 2133:1
**Hon** [1] - 2126:2
**honest** [1] - 2203:21

**Honor** [4] - 2126:7, 2126:16, 2205:5, 2207:22
**HONORABLE** [1] - 2124:12
**hope** [3] - 2126:12, 2128:17, 2147:23
**hoped** [1] - 2159:21
**hopes** [1] - 2159:25
**hostile** [1] - 2198:18
**hour** [6] - 2130:11, 2133:18, 2133:19, 2133:20, 2133:21, 2134:5
**hour-long** [4] - 2130:11, 2133:18, 2133:19, 2133:21
**hours** [4] - 2141:19, 2141:20, 2141:21, 2154:8
**house** [2] - 2137:14, 2143:10
**household** [1] - 2199:21
**Hu** [8] - 2127:22, 2128:3, 2130:10, 2131:24, 2132:14, 2132:25, 2138:9, 2145:7
**Hui** [2] - 2127:22, 2128:11
**Hunt** [1] - 2129:9

## I

**idea** [1] - 2129:8
**identified** [1] - 2144:3
**identities** [1] - 2176:15
**ignorance** [2] - 2171:4, 2194:6
**ignore** [1] - 2153:2
**illegal** [7] - 2133:5, 2134:9, 2138:9, 2141:6, 2147:25, 2178:10, 2180:9
**immediate** [4] - 2198:4, 2199:10, 2199:14, 2199:18
**immediately** [1] - 2132:21
**impact** [1] - 2161:4
**impartial** [2] - 2170:6, 2170:10
**impartiality** [1] - 2167:11
**impartially** [1] - 2168:2
**imply** [1] - 2187:22
**importance** [2] - 2156:25, 2169:20
**important** [8] - 2132:11, 2132:12, 2132:19, 2144:15, 2169:23, 2186:22, 2200:25, 2203:5
**imposed** [1] - 2168:14
**imposes** [1] - 2169:8
**imposing** [1] - 2168:8
**impression** [1] - 2155:19
**improper** [3] - 2152:25, 2167:14, 2167:18
**improved** [1] - 2202:8
**in-person** [3] - 2130:9, 2131:20, 2133:7
**inadvertently** [1] - 2182:15
**Inc** [1] - 2136:14
**includes** [4] - 2151:25, 2192:10, 2192:13, 2199:20
**including** [3] - 2151:23, 2155:25, 2165:25
**inclusive** [4] - 2189:7, 2191:14, 2195:1, 2196:18

**inconsistencies** [1] - 2156:21
**inconsistent** [1] - 2186:13
**incorrect** [1] - 2144:16
**incredible** [3] - 2146:11, 2146:20
**indeed** [6] - 2159:7, 2172:14, 2177:2, 2177:16, 2187:6, 2195:18
**independent** [3] - 2158:11, 2163:21, 2187:4, 2187:15, 2190:7
**indicate** [2] - 2204:3, 2204:14
**indicated** [2] - 2126:8, 2181:15
**Indictment** [5] - 2152:4, 2152:5, 2152:7, 2152:10, 2153:12
**indictment** [49] - 2166:4, 2166:23, 2169:3, 2170:18, 2170:24, 2172:21, 2172:22, 2172:23, 2172:24, 2173:1, 2173:19, 2174:1, 2174:8, 2174:9, 2174:19, 2174:22, 2178:17, 2178:18, 2179:15, 2180:8, 2180:11, 2183:17, 2183:22, 2187:16, 2187:18, 2187:25, 2188:2, 2188:3, 2188:9, 2188:11, 2188:14, 2189:5, 2190:15, 2190:17, 2190:19, 2190:21, 2190:25, 2191:23, 2193:16, 2194:12, 2194:23, 2196:9, 2196:11, 2196:13, 2196:15, 2197:16, 2197:20, 2198:9
**indirect** [1] - 2193:13
**indirectly** [1] - 2192:15
**indisputable** [1] - 2127:21
**individual** [3] - 2142:19, 2192:17, 2203:11
**individually** [2] - 2167:6, 2167:8
**individuals** [3] - 2168:1, 2177:18, 2194:20
**induces** [1] - 2181:1
**infer** [7] - 2134:6, 2134:8, 2134:9, 2154:12, 2154:17, 2171:12, 2175:18
**inference** [6] - 2152:8, 2157:14, 2160:25, 2164:22, 2176:13, 2176:19
**inferences** [10] - 2150:20, 2152:12, 2154:20, 2154:21, 2154:25, 2155:2, 2155:6, 2160:9, 2172:4, 2199:4
**inferred** [2] - 2142:11, 2172:9
**influence** [3] - 2165:3, 2168:8, 2168:15
**influenced** [1] - 2153:1
**information** [17] - 2129:15, 2130:8, 2130:14, 2130:16, 2130:17, 2130:20, 2130:21, 2131:6, 2132:23, 2133:2, 2133:5, 2134:10, 2138:5, 2138:7, 2138:10, 2138:11, 2163:25
**informed** [1] - 2176:18
**initial** [1] - 2135:4
**innocence** [3] - 2162:13, 2166:21, 2168:18
**innocent** [7] - 2149:22, 2157:2, 2157:11, 2162:11, 2166:18, 2169:7, 2169:11
**instead** [2] - 2142:6, 2159:16
**instruct** [13] - 2148:18, 2149:24, 2150:2, 2150:22, 2151:15, 2153:8,

2162:19, 2163:14, 2166:23, 2170:16, 2171:1, 2189:23, 2200:9
**instructed** [11] - 2131:14, 2142:10, 2153:15, 2160:8, 2161:9, 2172:21, 2176:1, 2189:16, 2194:2, 2194:15, 2195:15
**instruction** [3] - 2151:16, 2174:2, 2194:3
**instructions** [34] - 2126:6, 2142:25, 2143:1, 2149:4, 2149:10, 2149:13, 2149:14, 2149:23, 2150:11, 2150:16, 2150:23, 2151:12, 2151:14, 2151:17, 2151:23, 2153:16, 2157:24, 2165:12, 2168:17, 2168:21, 2168:25, 2170:16, 2174:2, 2174:4, 2174:6, 2176:23, 2187:8, 2193:21, 2196:12, 2200:6, 2201:14, 2206:20, 2207:15, 2207:16
**intended** [8] - 2127:13, 2143:17, 2147:6, 2174:15, 2178:13, 2182:4, 2182:18, 2200:6
**intends** [1] - 2171:12
**intent** [21] - 2142:10, 2145:24, 2166:3, 2171:1, 2172:6, 2172:8, 2194:18, 2194:19, 2195:6, 2195:7, 2196:23, 2196:24, 2197:9, 2197:10, 2197:22, 2197:23, 2198:15, 2198:16, 2198:20, 2198:23, 2198:24
**intention** [2] - 2176:7, 2178:4
**intentional** [1] - 2157:2
**intentionally** [10] - 2171:8, 2171:14, 2174:23, 2175:25, 2176:2, 2176:5, 2178:9, 2190:4, 2195:22, 2196:22
**interest** [4] - 2156:16, 2176:8, 2176:10, 2192:24
**interests** [3] - 2159:23, 2177:19, 2192:21
**interfere** [1] - 2167:19
**intermediaries** [1] - 2193:14
**intermediary** [1] - 2193:14
**international** [3] - 2130:16, 2132:22, 2138:10
**Interpol** [1] - 2130:5
**interpretation** [1] - 2164:7
**interpreter** [1] - 2132:8
**interpreters** [1] - 2163:5
**interstate** [21] - 2127:9, 2149:20, 2173:15, 2173:17, 2180:10, 2180:17, 2194:18, 2195:5, 2195:20, 2196:5, 2196:14, 2196:22, 2197:8, 2197:16, 2197:19, 2197:21, 2198:9, 2198:10, 2198:15, 2199:13
**interview** [4] - 2128:3, 2128:6, 2134:13, 2161:2
**interviewed** [1] - 2160:23
**intimate** [1] - 2151:20
**intimidate** [13] - 2126:24, 2194:19, 2194:20, 2195:6, 2195:7, 2196:23, 2196:24, 2197:9, 2197:10, 2197:22, 2197:24, 2198:15, 2198:17
**intimidated** [2] - 2127:16, 2143:3

**intimidating** [1] - 2131:1
**introduced** [2] - 2155:8, 2155:12
**investigate** [3] - 2129:7, 2140:3, 2140:8
**Investigative** [1] - 2135:20
**investigative** [3] - 2161:11, 2162:16
**investigator** [2] - 2136:23, 2139:11
**invoiced** [1] - 2135:19
**invoices** [2] - 2135:19, 2135:21
**involved** [6] - 2128:7, 2128:8, 2135:13, 2136:25, 2137:24, 2175:20
**involvement** [4] - 2127:11, 2164:21, 2173:20, 2193:4
**IRISA** [1] - 2124:18
**irregular** [2] - 2142:14, 2172:10
**issue** [7] - 2128:25, 2155:18, 2158:5, 2160:6, 2172:5, 2176:25, 2179:25
**issues** [7] - 2162:5, 2167:9, 2172:6, 2203:6, 2203:16, 2204:10, 2204:12
**items** [2] - 2134:22, 2165:6
**itself** [8] - 2127:17, 2152:7, 2153:1, 2172:23, 2172:25, 2174:15, 2177:11, 2178:15

## J

**Jason** [12] - 2124:9, 2132:8, 2135:7, 2135:22, 2137:1, 2188:16, 2189:2, 2189:10, 2191:2, 2191:17, 2195:4, 2196:21
**Jersey** [3] - 2125:4, 2131:4, 2132:14
**Ji** [8] - 2127:22, 2128:3, 2130:10, 2131:24, 2132:14, 2132:25, 2138:9, 2145:8
**JIN** [1] - 2165:10
**Jin** [21] - 2127:14, 2128:4, 2129:21, 2136:4, 2136:15, 2144:25, 2145:21, 2146:20, 2165:10, 2194:20, 2195:8, 2195:12, 2196:25, 2197:3, 2197:24, 2198:3, 2198:17, 2199:10, 2199:13, 2199:14, 2199:21
**Jin's** [6] - 2144:19, 2145:9, 2146:17, 2147:2, 2198:3, 2199:20
**job** [4] - 2129:17, 2129:18, 2150:22, 2151:19
**jobs** [1] - 2151:3
**Johnny** [17] - 2128:1, 2130:12, 2133:16, 2133:24, 2134:1, 2135:21, 2136:2, 2136:8, 2137:2, 2141:17, 2143:5, 2143:7, 2144:7, 2144:8, 2144:23, 2145:3
**join** [2] - 2176:12, 2187:10
**joined** [2] - 2176:5, 2176:20
**joins** [1] - 2185:17
**joint** [1] - 2175:14
**JUDGE** [1] - 2124:12
**Judge** [2] - 2150:14, 2200:10
**judges** [2] - 2150:17, 2155:16
**judgment** [2] - 2158:21, 2203:11
**June** [2] - 2124:7, 2210:12

**Juror** [1] - 2200:17
**juror** [1] - 2200:24
**jurors** [11] - 2151:10, 2163:9, 2168:12, 2193:17, 2202:7, 2203:8, 2203:15, 2203:18, 2204:11, 2206:6, 2208:2
**JURY** [3] - 2124:11, 2148:15, 2211:6
**jury** [30] - 2126:4, 2126:6, 2126:12, 2149:25, 2150:12, 2150:14, 2154:23, 2157:15, 2159:9, 2168:7, 2169:12, 2187:7, 2200:3, 2201:1, 2201:6, 2201:8, 2201:17, 2203:5, 2204:5, 2204:20, 2205:2, 2205:4, 2207:10, 2207:16, 2208:9, 2208:25, 2209:7, 2209:8, 2210:5, 2210:6
**Jury** [5] - 2126:10, 2149:6, 2207:1, 2209:5, 2210:7
**justice** [1] - 2148:4
**JUSTICE** [1] - 2124:21
**justified** [1] - 2154:21
**justify** [1] - 2176:19

## K

**Kate** [1] - 2165:17
**keep** [5] - 2138:23, 2143:8, 2200:5, 2206:6, 2208:1
**keeping** [1] - 2143:9
**keeps** [2] - 2137:1, 2137:3
**kept** [3] - 2130:15, 2207:24
**KERVENG** [1] - 2125:10
**KEVIN** [2] - 2125:10, 2125:11
**kind** [2] - 2160:9, 2168:23
**knock** [1] - 2147:12
**knowing** [1] - 2139:20
**knowingly** [21] - 2171:3, 2171:5, 2171:13, 2171:17, 2174:23, 2175:24, 2176:1, 2176:5, 2178:24, 2181:23, 2182:3, 2182:25, 2189:10, 2190:3, 2190:23, 2191:17, 2192:6, 2194:2, 2195:4, 2195:22, 2196:21
**knowledge** [20] - 2129:23, 2129:24, 2134:10, 2142:11, 2158:7, 2162:5, 2171:1, 2172:1, 2172:6, 2172:9, 2176:6, 2176:13, 2176:19, 2177:21, 2177:23, 2178:3, 2179:23, 2182:12, 2182:14, 2184:20
**knowledgeable** [1] - 2158:10
**known** [13] - 2124:9, 2139:21, 2176:15, 2188:16, 2189:2, 2189:10, 2191:2, 2191:17, 2194:21, 2195:4, 2195:9, 2195:12, 2196:21
**knows** [6] - 2128:14, 2134:1, 2134:2, 2141:5, 2141:13, 2153:24

## L

**lack** [2] - 2161:9, 2161:19
**ladies** [5] - 2126:12, 2148:9, 2168:19, 2176:22, 2209:7, 2210:5
**Ladies** [2] - 2148:18, 2149:6

VB        OCR        CRR

**laid** [1] - 2133:8
**Lan** [3] - 2127:25, 2133:16, 2143:5
**language** [1] - 2191:4
**laptop** [4] - 2202:2, 2202:9, 2207:12, 2208:23
**large** [4] - 2142:4, 2142:8, 2147:14, 2208:14
**largely** [1] - 2155:19
**larger** [1] - 2132:3
**last** [5] - 2126:8, 2142:15, 2173:25, 2202:6, 2209:12
**LAW** [1] - 2125:10
**law** [62] - 2131:14, 2138:1, 2139:14, 2139:24, 2140:1, 2143:20, 2145:23, 2148:19, 2148:24, 2149:10, 2150:22, 2150:23, 2151:6, 2151:8, 2151:9, 2151:11, 2151:16, 2151:17, 2157:19, 2157:20, 2158:1, 2159:6, 2159:7, 2161:16, 2162:10, 2165:21, 2166:17, 2167:12, 2168:1, 2168:3, 2169:7, 2170:2, 2171:15, 2171:16, 2174:6, 2175:16, 2177:5, 2178:2, 2178:25, 2179:9, 2180:22, 2186:10, 2189:4, 2189:14, 2190:7, 2190:9, 2191:21, 2192:11, 2194:5, 2194:7, 2194:22, 2195:15, 2196:2, 2196:4, 2196:15, 2199:24, 2200:12, 2200:13, 2201:15, 2203:3, 2207:8, 2207:13
**LAWRENCE** [1] - 2125:5
**laws** [4] - 2152:5, 2165:22, 2165:25
**lawsuit** [2] - 2130:24, 2136:11
**lawyer** [4] - 2152:18, 2152:19, 2152:21, 2152:22
**lawyers** [4] - 2149:8, 2151:13, 2152:23, 2153:13
**lead** [2] - 2154:22, 2161:11
**leads** [1] - 2136:21
**leaned** [1] - 2138:4
**learn** [3] - 2127:10, 2131:1, 2134:18
**learned** [6] - 2129:1, 2129:3, 2129:5, 2129:16, 2131:2, 2135:12
**learning** [1] - 2171:24
**least** [10] - 2126:13, 2135:17, 2175:2, 2178:3, 2178:13, 2190:14, 2192:7, 2196:8, 2209:10
**leave** [8] - 2132:15, 2147:3, 2147:16, 2147:19, 2207:4, 2207:5
**left** [3] - 2127:6, 2131:19, 2207:20
**legal** [4] - 2151:13, 2161:10, 2170:16, 2200:1
**legally** [1] - 2162:20
**less** [4] - 2138:24, 2143:24, 2157:21, 2167:25
**lesser** [2] - 2157:22, 2193:6
**leveraged** [1] - 2139:10
**liability** [6] - 2142:20, 2177:1, 2180:20, 2183:13, 2183:14
**lie** [1] - 2160:1
**life** [3] - 2137:17, 2146:11, 2169:20
**light** [4] - 2154:21, 2156:13, 2157:24,
2158:18
**likely** [1] - 2138:25
**likewise** [1] - 2183:19
**limit** [1] - 2142:17
**limited** [3] - 2153:9, 2165:6, 2166:1
**list** [1] - 2137:1
**listen** [3] - 2142:25, 2203:5, 2208:24
**listening** [1] - 2164:10
**literally** [1] - 2145:8
**litigation** [1] - 2167:24
**Liu** [19] - 2127:14, 2143:19, 2144:8, 2146:7, 2146:10, 2194:21, 2195:8, 2195:12, 2196:25, 2197:3, 2197:24, 2198:3, 2198:17, 2199:10, 2199:13, 2199:14, 2199:20, 2199:21
**live** [3] - 2147:11, 2147:15, 2147:18
**lives** [1] - 2144:25
**living** [4] - 2147:10, 2147:14, 2147:17, 2199:20
**Livingston** [1] - 2144:9
**loaded** [1] - 2202:8
**local** [3] - 2137:23, 2138:13, 2139:3
**locate** [1] - 2128:4
**located** [2] - 2136:4, 2138:8
**locations** [1] - 2177:11
**logical** [1] - 2199:4
**Look** [1] - 2128:11
**look** [8] - 2129:13, 2130:19, 2130:20, 2132:4, 2135:18, 2141:4, 2144:5, 2144:22
**looked** [2] - 2139:22, 2140:8
**looking** [2] - 2134:3, 2154:11
**lose** [1] - 2208:2
**loud** [1] - 2208:24
**louder** [1] - 2172:15
**lunch** [2] - 2206:13, 2206:15, 2206:17
**Lustberg** [2] - 2154:6, 2205:6
**LUSTBERG** [3] - 2125:5, 2126:7, 2205:7
**lying** [1] - 2159:20

## M

**mail** [5] - 2125:18, 2128:9, 2129:18, 2130:21, 2132:15
**mails** [1] - 2145:2
**major** [7] - 2130:18, 2130:23, 2130:24, 2130:25, 2139:15, 2139:22, 2177:4
**mall** [2] - 2143:22, 2144:9
**man** [6] - 2131:4, 2133:24, 2134:2, 2137:14, 2138:16, 2143:11
**man's** [1] - 2146:17
**Mandarin** [2] - 2163:1, 2163:10
**manifestations** [1] - 2199:1
**manner** [4] - 2142:12, 2156:5, 2172:10, 2188:21
**mark** [3] - 2141:23, 2171:21, 2208:15
**marked** [6] - 2207:16, 2207:17, 2208:10, 2208:15, 2208:19, 2209:13
**marriage** [1] - 2199:22
**marshal** [2] - 2206:3, 2206:4
**Marshal** [3] - 2200:22, 2201:5, 2201:18
**MARSHAL** [1] - 2206:10
**Matter** [1] - 2210:12
**matter** [6] - 2130:4, 2136:20, 2156:25, 2169:20, 2176:13, 2204:8
**matters** [3] - 2131:22, 2158:5, 2158:7
**McMahon** [66] - 2124:8, 2125:3, 2127:24, 2129:1, 2130:1, 2130:5, 2130:12, 2130:14, 2131:7, 2131:10, 2131:11, 2131:23, 2132:9, 2132:18, 2132:21, 2132:24, 2133:14, 2133:17, 2134:11, 2134:13, 2134:22, 2134:25, 2135:5, 2135:11, 2135:16, 2135:20, 2136:4, 2136:10, 2137:19, 2137:22, 2138:4, 2138:9, 2139:3, 2139:4, 2139:17, 2139:19, 2140:6, 2141:20, 2142:1, 2142:17, 2142:18, 2142:20, 2143:2, 2143:15, 2144:6, 2144:12, 2144:18, 2144:19, 2144:23, 2145:2, 2145:8, 2145:21, 2149:17, 2165:20, 2165:23, 2166:2, 2166:7, 2166:9, 2188:15, 2189:1, 2189:9, 2191:1, 2191:16, 2195:3, 2196:20
**McMahon's** [17] - 2128:19, 2128:20, 2129:23, 2135:21, 2138:12, 2139:14, 2140:12, 2142:13, 2142:16, 2142:18, 2144:17
**mean** [3] - 2133:25, 2141:8, 2157:20
**meaning** [1] - 2129:21
**meaningful** [1] - 2163:19
**means** [12] - 2130:3, 2132:4, 2132:10, 2132:11, 2168:20, 2175:10, 2175:14, 2192:16, 2194:3, 2198:10, 2198:17, 2199:18
**meant** [2] - 2140:10, 2152:22
**measured** [1] - 2177:1
**meet** [2] - 2132:9, 2143:11
**meeting** [10] - 2130:11, 2132:7, 2132:15, 2132:21, 2133:7, 2133:17, 2133:18, 2133:19, 2133:21, 2175:2
**meetings** [5] - 2130:10, 2131:20, 2134:8, 2134:17
**member** [26] - 2139:24, 2140:1, 2147:13, 2174:24, 2175:25, 2176:14, 2176:15, 2177:2, 2177:12, 2177:14, 2177:16, 2178:1, 2179:5, 2179:8, 2180:5, 2183:16, 2183:21, 2184:10, 2185:18, 2188:8, 2198:3, 2199:10, 2199:14, 2199:18, 2201:6, 2201:8
**members** [13] - 2165:11, 2175:6, 2176:3, 2177:13, 2179:1, 2179:10, 2179:14, 2179:17, 2184:5, 2187:5, 2187:21, 2188:13
**membership** [1] - 2188:6
**men** [4] - 2131:25, 2132:1, 2147:14, 2147:18
**mention** [1] - 2134:13
**mentioned** [10] - 2127:17, 2127:20,

2136:18, 2150:15, 2153:16, 2161:17, 2162:4, 2190:13, 2196:6, 2207:3
**mere** [6] - 2155:1, 2177:10, 2177:12, 2177:17, 2177:21, 2182:10
**MEREDITH** [1] - 2124:17
**merely** [12] - 2150:10, 2152:5, 2158:19, 2162:7, 2162:8, 2166:14, 2166:15, 2172:2, 2172:24, 2177:24, 2185:25, 2203:15
**merit** [1] - 2147:7
**merits** [4] - 2145:19, 2151:24, 2165:15, 2201:9
**message** [2] - 2127:18, 2128:12, 2128:13
**messages** [4] - 2135:1, 2135:2, 2135:14, 2144:6
**met** [3] - 2133:4, 2175:7, 2180:18
**methods** [1] - 2162:17
**MICHAEL** [1] - 2124:8
**Michael** [14] - 2125:3, 2134:11, 2135:20, 2144:6, 2144:19, 2145:8, 2149:17, 2188:15, 2189:1, 2189:9, 2191:1, 2191:16, 2195:3, 2196:20
**middle** [1] - 2134:4
**might** [5] - 2153:3, 2153:4, 2154:12, 2167:18, 2184:14
**mind** [5] - 2138:12, 2172:7, 2172:14, 2172:17, 2200:5
**minders** [1] - 2146:13
**minds** [1] - 2175:2
**mine** [1] - 2151:19
**minor** [2] - 2143:14, 2177:4
**minute** [2] - 2210:2
**minutes** [3] - 2200:3, 2209:18, 2209:19
**mistake** [3] - 2128:5, 2171:4, 2171:11
**mistaken** [1] - 2172:2
**moment** [4] - 2133:11, 2206:12, 2207:11, 2208:9
**momentarily** [1] - 2166:23
**money** [8] - 2136:11, 2137:1, 2141:14, 2141:18, 2142:4, 2142:8, 2142:9, 2142:13
**morning** [4] - 2126:12, 2126:20, 2143:22, 2144:7
**most** [1] - 2137:9
**Most** [1] - 2137:10
**mother** [2] - 2146:24, 2147:3
**motion** [1] - 2186:3
**motivated** [1] - 2159:25
**motivation** [2] - 2159:25, 2160:2
**motive** [2] - 2156:15, 2176:12
**move** [1] - 2131:17
**moved** [1] - 2142:13
**MR** [15] - 2126:7, 2126:16, 2126:19, 2126:20, 2133:13, 2141:3, 2205:5, 2205:7, 2205:10, 2205:12, 2205:17, 2207:22, 2208:4, 2209:19, 2211:5
**multiple** [3] - 2127:21, 2149:15, 2187:12

**must** [66] - 2150:4, 2150:22, 2151:15, 2152:11, 2153:2, 2153:21, 2155:14, 2155:15, 2155:19, 2159:2, 2159:3, 2159:12, 2162:20, 2162:21, 2163:9, 2163:11, 2166:25, 2167:5, 2169:21, 2170:13, 2171:10, 2173:19, 2174:19, 2175:12, 2176:3, 2178:2, 2178:7, 2178:15, 2180:1, 2180:17, 2181:20, 2181:23, 2181:25, 2182:4, 2182:7, 2182:17, 2183:7, 2183:8, 2183:24, 2185:19, 2185:23, 2186:5, 2188:9, 2188:10, 2188:12, 2191:23, 2192:23, 2192:25, 2193:11, 2193:21, 2193:24, 2197:17, 2198:7, 2198:13, 2199:5, 2199:11, 2200:2, 2200:13, 2200:16, 2203:14, 2203:24
**mutual** [2] - 2175:12, 2192:25

# N

**name** [4] - 2135:16, 2135:17, 2136:15, 2167:22
**named** [1] - 2137:2
**namely** [2] - 2165:21, 2194:20
**national** [1] - 2167:17
**NATIONAL** [1] - 2124:21
**natural** [1] - 2171:12
**nature** [6] - 2140:15, 2159:12, 2167:19, 2168:22, 2178:8, 2188:12
**near** [1] - 2170:23
**necessarily** [2] - 2177:19, 2187:22
**necessary** [5] - 2178:2, 2181:3, 2194:4, 2201:3, 2207:14
**need** [28] - 2129:10, 2130:24, 2130:25, 2132:10, 2132:11, 2139:19, 2144:17, 2149:1, 2151:3, 2162:5, 2170:19, 2171:15, 2175:8, 2176:15, 2176:16, 2176:17, 2176:20, 2178:14, 2178:21, 2189:25, 2190:21, 2193:5, 2193:10, 2193:15, 2195:18, 2201:20, 2204:17, 2205:4
**needed** [2] - 2128:15, 2132:18
**needs** [4] - 2132:9, 2134:3, 2147:10, 2168:22
**neglect** [1] - 2172:2
**neighborhood** [1] - 2139:9
**net** [1] - 2142:6
**never** [11] - 2128:24, 2134:15, 2137:17, 2143:15, 2157:11, 2166:20, 2169:6, 2169:7, 2198:20, 2201:7
**NEW** [1] - 2124:1
**New** [12] - 2124:6, 2124:16, 2124:17, 2125:4, 2125:7, 2125:11, 2131:4, 2132:14, 2189:8, 2191:15, 2195:2, 2196:19
**Newark** [1] - 2125:4
**next** [10] - 2132:20, 2133:21, 2136:7, 2136:21, 2184:22, 2189:22, 2202:13, 2204:21, 2205:20, 2208:19
**nice** [2] - 2136:9, 2136:10

**night** [2] - 2126:8, 2134:4
**nobody** [1] - 2201:11
**NOLAN** [1] - 2125:17
**nolanEDNY@aol.com** [1] - 2125:18
**non** [2] - 2143:23
**non-Chinese** [1] - 2143:23
**none** [2] - 2134:23, 2194:8
**nonexistence** [2] - 2154:4, 2154:17
**normal** [4] - 2136:23, 2137:8, 2137:9, 2137:12
**notably** [1] - 2137:4
**note** [18] - 2127:6, 2127:14, 2127:15, 2127:17, 2141:10, 2141:15, 2143:17, 2147:16, 2168:24, 2201:4, 2201:17, 2202:1, 2204:2, 2207:5, 2208:10, 2208:19, 2209:12, 2210:9
**notes** [1] - 2208:13
**nothing** [7] - 2126:21, 2135:23, 2138:18, 2200:5, 2204:17, 2205:10, 2205:12
**notice** [1] - 2130:5
**notification** [8] - 2173:8, 2173:12, 2189:13, 2191:3, 2191:9, 2191:20, 2194:1, 2194:6
**notified** [1] - 2194:9
**notify** [1] - 2192:2
**notifying** [3] - 2180:16, 2189:3, 2189:22
**notion** [1] - 2147:4
**number** [2] - 2148:23, 2155:24
**Number** [1] - 2200:17
**numbers** [2] - 2207:4, 2207:20
**numerical** [1] - 2204:4
**NW** [1] - 2124:22
**NY** [1] - 2125:7
**NYPD** [1] - 2129:25

# O

**oath** [1] - 2168:12
**oaths** [2] - 2151:10, 2204:11
**object** [9] - 2152:21, 2152:24, 2175:9, 2175:11, 2188:23, 2188:25, 2190:2, 2194:16, 2195:20
**objection** [4] - 2153:1, 2153:2, 2153:4, 2153:7
**objections** [3] - 2151:25, 2153:13, 2205:8
**objective** [3] - 2136:6, 2171:10, 2178:14
**objectives** [4] - 2176:8, 2176:21, 2177:25, 2178:4
**Objects** [1] - 2196:10
**objects** [1] - 2186:14
**obligation** [3] - 2151:5, 2157:8, 2161:1
**observe** [1] - 2154:9
**observing** [1] - 2134:4
**obtain** [1] - 2130:16
**obtained** [1] - 2162:20

**obvious** [5] - 2127:18, 2138:2, 2138:6, 2140:5, 2171:19
**obviously** [4] - 2139:23, 2140:14, 2142:13, 2168:25
**occasion** [2] - 2152:1, 2156:19
**occurred** [2] - 2155:21, 2178:20
**OF** [5] - 2124:1, 2124:3, 2124:11, 2124:16, 2124:21
**offense** [20] - 2170:20, 2170:22, 2173:23, 2174:14, 2180:25, 2181:7, 2181:10, 2181:12, 2181:14, 2183:5, 2188:16, 2188:21, 2188:24, 2190:7, 2190:11, 2193:20, 2193:23, 2194:13, 2196:3
**offenses** [3] - 2165:24, 2173:2, 2190:10
**offered** [2] - 2153:13, 2155:14
**offers** [1] - 2152:19
**OFFICE** [1] - 2125:10
**officer** [9] - 2129:25, 2130:10, 2131:24, 2132:14, 2133:1, 2139:11, 2145:7, 2191:8, 2192:17
**officers** [1] - 2157:19
**OFFICIAL** [1] - 2125:17
**official** [8] - 2138:8, 2157:20, 2192:1, 2192:4, 2192:8, 2192:20, 2193:3, 2193:25
**official's** [1] - 2193:4
**officials** [4] - 2127:22, 2127:23, 2146:13, 2186:10
**often** [3] - 2131:16, 2179:2
**old** [3] - 2131:4, 2134:2, 2138:15
**omissions** [2] - 2179:7, 2179:12
**once** [3] - 2185:17, 2200:9, 2207:20
**One** [17] - 2125:3, 2173:6, 2174:9, 2174:18, 2183:17, 2185:16, 2188:14, 2189:19, 2190:2, 2190:5, 2190:10, 2190:11, 2190:14, 2190:16, 2195:18, 2195:25, 2196:7
**one** [46] - 2128:20, 2129:6, 2132:3, 2134:25, 2136:6, 2139:12, 2141:18, 2141:20, 2145:9, 2145:14, 2145:20, 2145:21, 2151:11, 2151:16, 2154:17, 2155:4, 2155:9, 2159:25, 2167:3, 2173:23, 2173:25, 2176:7, 2177:13, 2178:13, 2178:23, 2181:17, 2182:13, 2187:2, 2187:11, 2187:16, 2188:3, 2188:8, 2188:22, 2190:14, 2190:23, 2195:8, 2196:8, 2196:24, 2197:17, 2201:2, 2203:5, 2203:9, 2206:8, 2206:13, 2207:11, 2208:2
**ones** [1] - 2127:14
**ooOoo** [1] - 2210:14
**open** [2] - 2126:1, 2201:10
**opening** [2] - 2150:15, 2153:16
**operate** [3] - 2192:18, 2193:1, 2193:7
**operating** [1] - 2193:8
**operation** [7] - 2128:7, 2129:13, 2133:22, 2138:15, 2138:19, 2143:8, 2143:16

**Operation** [1] - 2129:12
**opinion** [11] - 2151:8, 2151:21, 2151:24, 2158:6, 2158:12, 2158:16, 2158:19, 2158:20, 2166:9, 2166:10, 2203:19
**opinions** [3] - 2158:5, 2158:13, 2203:18
**opportunity** [1] - 2156:1
**opposite** [1] - 2137:25
**orally** [1] - 2201:9
**order** [5] - 2163:18, 2174:17, 2176:19, 2181:5, 2197:15
**orderly** [1] - 2200:15
**ordinarily** [2] - 2158:15, 2171:12
**ordinary** [5] - 2136:23, 2137:17, 2137:19, 2141:24, 2157:23
**organizational** [1] - 2169:1
**origin** [1] - 2167:17
**original** [1] - 2129:4
**originally** [1] - 2128:21
**otherwise** [3] - 2143:18, 2171:19, 2209:3
**outcome** [3] - 2156:16, 2176:9, 2176:11
**outdoors** [1] - 2154:14
**outlined** [1] - 2199:24
**outset** [1] - 2172:21
**outside** [7] - 2133:2, 2147:22, 2148:2, 2154:11, 2201:1, 2204:20, 2205:1
**outward** [1] - 2199:1
**overall** [6] - 2127:23, 2143:12, 2144:14, 2145:10, 2187:3, 2187:15
**overhead** [1] - 2148:20
**overlap** [1] - 2188:6
**overruled** [1] - 2153:4
**overruling** [1] - 2151:25
**overt** [24] - 2126:5, 2174:24, 2178:13, 2178:14, 2178:16, 2178:17, 2178:20, 2178:22, 2178:24, 2182:8, 2182:9, 2190:14, 2190:15, 2190:16, 2190:18, 2190:19, 2190:22, 2190:24, 2196:8, 2196:12, 2208:12, 2208:18
**Overt** [1] - 2196:10
**overwhelming** [1] - 2127:5
**owed** [1] - 2137:1
**own** [6] - 2128:6, 2131:10, 2153:24, 2158:21, 2160:13, 2186:7

## P

**P.C** [2] - 2125:3, 2125:6
**p.m** [1] - 2210:7
**package** [2] - 2133:24, 2133:25
**page** [13] - 2139:1, 2140:20, 2144:1, 2144:6, 2144:20, 2161:22, 2168:19, 2170:14, 2176:23, 2184:22, 2202:13, 2204:21, 2205:20
**pages** [4] - 2132:23, 2136:3, 2141:17, 2148:24

**paid** [4] - 2137:3, 2140:13, 2140:14, 2142:1
**PAMELA** [1] - 2124:12
**Pamela** [1] - 2126:2
**Panera** [4] - 2131:25, 2132:2, 2132:7, 2133:14
**paper** [3] - 2149:5, 2149:14, 2208:14
**parallel** [1] - 2192:24
**parent** [1] - 2199:19
**parenthetically** [1] - 2208:13
**part** [15] - 2133:5, 2134:9, 2144:14, 2155:22, 2157:4, 2157:5, 2165:20, 2170:15, 2176:19, 2180:24, 2188:19, 2192:7, 2192:13, 2197:7, 2201:13
**partially** [1] - 2163:3
**participants** [1] - 2176:3
**participate** [4] - 2126:23, 2181:25, 2182:23, 2184:19
**participated** [4] - 2174:10, 2176:6, 2178:3, 2182:6
**participating** [2] - 2139:23, 2159:4
**participation** [6] - 2176:24, 2177:2, 2177:22, 2185:21, 2186:4, 2186:7
**particular** [15] - 2150:2, 2152:23, 2157:5, 2159:13, 2165:5, 2165:7, 2167:8, 2169:13, 2170:8, 2170:12, 2174:22, 2180:12, 2188:7, 2189:23, 2198:23
**parties** [10] - 2163:6, 2163:16, 2164:17, 2165:3, 2167:12, 2167:25, 2175:19, 2194:8, 2204:8, 2204:16
**partnership** [2] - 2174:13, 2179:2
**partnerships** [1] - 2179:3
**parts** [2] - 2149:23, 2177:5
**party** [6] - 2155:9, 2155:12, 2156:15, 2167:12, 2167:24, 2210:4
**pass** [1] - 2138:7
**passing** [2] - 2133:1, 2204:7
**password** [3] - 2202:4, 2202:7, 2202:10
**patient** [1] - 2201:21
**PAUL** [1] - 2125:8
**Paul** [1] - 2141:25
**pause** [2] - 2130:18, 2145:16
**paused** [2] - 2209:25, 2210:3
**payment** [2] - 2141:3, 2193:11
**payments** [1] - 2141:15
**PEACE** [1] - 2124:15
**Pennsylvania** [1] - 2124:22
**people** [13] - 2129:13, 2130:15, 2130:17, 2140:14, 2146:4, 2146:23, 2148:7, 2164:24, 2165:2, 2175:14, 2179:3, 2187:10, 2189:18
**People's** [4] - 2165:11, 2189:12, 2189:21, 2191:19
**perform** [2] - 2167:10, 2177:2, 2177:3
**performance** [1] - 2170:2
**perhaps** [1] - 2155:4
**period** [3] - 2186:4, 2193:16, 2193:19
**permit** [1] - 2172:13

**permitted** [7] - 2152:20, 2154:19, 2154:25, 2158:4, 2158:6, 2159:1, 2164:5

**persistently** [1] - 2198:18

**person** [46] - 2129:6, 2130:9, 2130:25, 2131:14, 2131:20, 2132:19, 2133:4, 2133:7, 2141:5, 2142:23, 2143:23, 2143:25, 2147:10, 2147:14, 2147:17, 2154:9, 2154:10, 2164:24, 2169:17, 2169:19, 2169:22, 2171:3, 2171:8, 2171:12, 2175:21, 2177:14, 2177:16, 2177:23, 2178:1, 2181:6, 2181:11, 2181:13, 2181:16, 2181:18, 2184:4, 2185:17, 2185:20, 2192:10, 2192:22, 2192:23, 2193:7, 2197:11, 2197:14, 2198:22, 2199:20

**person's** [2] - 2133:2, 2172:17, 2198:20

**personal** [6] - 2135:8, 2142:19, 2159:25, 2160:12, 2167:16, 2169:20

**personally** [2] - 2143:3, 2184:19, 2185:11

**personnel** [1] - 2187:20

**persons** [11] - 2162:3, 2164:21, 2174:11, 2174:21, 2179:16, 2184:4, 2188:20, 2188:22, 2192:11, 2195:8, 2196:25

**pertains** [1] - 2156:25

**pertinent** [1] - 2180:24

**philosophy** [1] - 2148:21

**phone** [4] - 2132:16, 2134:17, 2134:19, 2207:20

**photo** [1] - 2133:14

**photos** [1] - 2145:2

**phrasing** [2] - 2136:22, 2174:8

**physically** [1] - 2181:4

**PI** [1] - 2137:19

**PI's** [1] - 2138:21

**picture** [5] - 2131:23, 2132:5, 2132:7, 2144:3, 2144:8

**piece** [4] - 2131:12, 2132:3, 2145:9, 2145:10

**pieces** [1] - 2137:10

**place** [12] - 2162:3, 2178:21, 2181:19, 2194:19, 2195:6, 2196:23, 2197:9, 2197:23, 2198:16, 2205:1, 2206:7, 2207:24

**plain** [1] - 2127:18

**plan** [6] - 2128:16, 2143:7, 2143:12, 2175:14, 2177:22, 2184:8

**play** [5] - 2177:4, 2209:14, 2209:16, 2209:23

**played** [2] - 2209:25, 2210:3

**playing** [1] - 2209:4

**Plaza** [1] - 2124:16

**plea** [1] - 2152:9

**plead** [1] - 2160:12

**pleaded** [4] - 2149:21, 2160:5, 2160:11, 2169:2

**pockets** [1] - 2142:13

**point** [9] - 2128:23, 2128:25, 2136:21, 2139:16, 2140:15, 2141:11, 2142:4, 2168:22, 2173:25

**pointed** [3] - 2134:22, 2140:11, 2142:3

**points** [3] - 2127:3, 2143:14, 2154:3

**police** [16] - 2130:10, 2131:24, 2132:13, 2133:1, 2137:23, 2138:13, 2138:16, 2138:18, 2138:19, 2138:20, 2138:23, 2139:3, 2139:6, 2139:11, 2143:9, 2145:7

**police's** [1] - 2138:22

**portions** [2] - 2163:5, 2201:16

**positive** [2] - 2171:23, 2185:23

**possession** [1] - 2129:11

**possible** [5] - 2156:14, 2156:16, 2161:1, 2170:3, 2201:23

**possibly** [1] - 2143:16

**post** [2] - 2128:3, 2134:13

**poster** [1] - 2208:13

**practice** [1] - 2207:25

**PRC** [1] - 2146:13

**precise** [1] - 2175:10

**precisely** [3] - 2178:18, 2190:20, 2201:20

**prejudice** [1] - 2167:11

**preparation** [1] - 2161:4

**prepare** [1] - 2161:1

**prepared** [1] - 2126:6

**preparing** [1] - 2160:23

**preponderance** [1] - 2186:17

**presence** [3] - 2177:10, 2182:11, 2197:12

**present** [4] - 2126:3, 2157:9, 2162:3, 2163:25

**presented** [9] - 2152:12, 2152:13, 2152:14, 2158:8, 2162:19, 2163:12, 2163:16, 2200:11, 2203:4

**preserved** [1] - 2205:8

**presiding** [1] - 2126:2

**presumed** [2] - 2149:22, 2169:11

**presumes** [3] - 2162:10, 2166:17, 2169:7

**presumption** [1] - 2168:18

**prevalent** [1] - 2134:23

**prevent** [1] - 2186:12

**previously** [4] - 2152:8, 2190:13, 2194:15, 2196:6

**primarily** [1] - 2169:1

**principal** [1] - 2181:2

**principle** [1] - 2151:13

**principles** [1] - 2195:16

**prison** [1] - 2146:19

**privacy** [1] - 2165:22

**private** [2] - 2136:23, 2139:11

**probable** [1] - 2171:13

**problem** [1] - 2202:6

**proceed** [2] - 2200:15, 2206:16

**Proceedings** [1] - 2125:20

**proceedings** [2] - 2166:7

**process** [4] - 2148:3, 2148:4, 2167:20, 2199:25

**procures** [1] - 2181:1

**produced** [3] - 2125:20, 2161:17, 2186:22

**producing** [3] - 2162:14, 2166:21, 2169:9

**product** [2] - 2171:10, 2171:11

**profit** [1] - 2142:7

**progress** [1] - 2209:10

**prohibiting** [1] - 2196:4

**projected** [1] - 2148:20

**projection** [1] - 2209:16

**promote** [1] - 2185:22

**proof** [25] - 2128:24, 2134:23, 2137:23, 2146:14, 2154:3, 2161:7, 2167:15, 2168:18, 2169:20, 2169:21, 2169:22, 2170:4, 2170:19, 2175:17, 2176:8, 2177:20, 2183:12, 2185:25, 2187:2, 2187:14, 2187:15, 2190:14, 2196:8, 2198:20, 2198:24

**proper** [2] - 2186:10, 2203:17

**properly** [1] - 2162:17

**prosecute** [4] - 2129:21, 2134:14, 2134:15, 2140:10

**prosecution** [2] - 2160:11, 2167:21

**prosecutor** [2] - 2127:25

**Prosecutor** [1] - 2133:16

**prove** [24] - 2150:4, 2157:10, 2157:11, 2161:12, 2169:4, 2170:3, 2174:17, 2175:1, 2175:6, 2175:12, 2175:24, 2178:12, 2182:7, 2189:25, 2191:22, 2192:25, 2194:4, 2195:18, 2197:15, 2197:17, 2198:7, 2198:13, 2199:5, 2199:12

**proved** [8] - 2154:20, 2155:3, 2161:20, 2162:23, 2172:8, 2176:14, 2187:17, 2200:2

**proven** [7] - 2169:13, 2171:6, 2178:17, 2180:13, 2181:11, 2190:19, 2193:19

**proves** [3] - 2143:18, 2148:12, 2185:10

**provide** [4] - 2162:8, 2166:15, 2194:6, 2202:2

**provided** [4] - 2163:4, 2164:9, 2172:23, 2194:1

**provides** [4] - 2180:23, 2188:18, 2191:5, 2197:6

**providing** [2] - 2134:10, 2208:18

**proving** [8] - 2162:11, 2162:13, 2166:18, 2166:21, 2180:18, 2180:19, 2186:16, 2186:24

**published** [3] - 2133:12, 2140:18, 2141:2

**punishable** [2] - 2174:17, 2181:2

**punishment** [3] - 2160:18, 2168:6, 2168:13

**purely** [1] - 2169:1

**purpose** [20] - 2131:16, 2153:9, 2165:6, 2165:7, 2165:8, 2166:1,

2166:4, 2171:24, 2174:12, 2174:17, 2175:10, 2175:11, 2175:22, 2176:7, 2178:10, 2179:9, 2182:10, 2185:24, 2187:11, 2188:22

**purposefully** [2] - 2171:3, 2171:9
**purposes** [5] - 2169:1, 2177:25, 2178:3, 2187:14, 2188:4
**pursuant** [3] - 2184:7, 2185:4, 2193:1
**pursue** [2] - 2161:11, 2192:25
**pursuit** [1] - 2139:10
**push** [1] - 2141:6
**put** [10] - 2128:10, 2130:18, 2131:23, 2133:11, 2135:2, 2139:2, 2140:17, 2141:7, 2141:12, 2209:2
**puts** [1] - 2137:8
**putting** [1] - 2141:18

## Q

**QQ** [1] - 2128:11
**qualifications** [1] - 2158:13
**questions** [9] - 2133:23, 2140:4, 2140:5, 2140:8, 2152:1, 2152:2, 2153:13, 2182:22, 2183:6
**quibble** [1] - 2142:5
**quickly** [2] - 2129:5, 2207:6
**quiet** [1] - 2206:7
**quite** [2] - 2134:21, 2142:8
**quote** [1] - 2129:14

## R

**race** [1] - 2167:16
**rain** [1] - 2126:13
**raincoat** [1] - 2154:10
**rained** [2] - 2154:12, 2154:13
**raise** [3] - 2168:23, 2206:5, 2209:21
**raised** [3] - 2166:8, 2185:15, 2186:23
**rans** [1] - 2171:23
**rare** [1] - 2198:21
**rarely** [1] - 2172:8
**ratcheting** [1] - 2137:21
**rather** [6] - 2138:1, 2155:9, 2171:11, 2187:3, 2190:2, 2195:21
**rational** [1] - 2199:3
**reach** [3] - 2168:4, 2203:2, 2203:24
**reached** [3] - 2148:4, 2204:1, 2204:2
**reaching** [4] - 2153:19, 2158:11, 2167:14, 2203:10
**read** [15] - 2129:11, 2129:14, 2129:17, 2135:14, 2138:18, 2148:20, 2148:25, 2149:1, 2149:3, 2150:9, 2151:1, 2151:3, 2163:11, 2190:15, 2196:8
**reading** [2] - 2149:2, 2168:24
**reads** [3] - 2189:5, 2191:11, 2208:22
**real** [1] - 2145:13
**really** [3] - 2132:4, 2135:24, 2146:2
**realtime** [1] - 2139:1
**reason** [12] - 2132:13, 2133:6, 2147:2,

2154:16, 2154:22, 2158:13, 2158:21, 2159:6, 2165:1, 2169:6, 2169:17, 2185:2
**reasonable** [47] - 2148:12, 2150:21, 2153:21, 2154:20, 2157:10, 2159:10, 2161:8, 2161:20, 2162:12, 2162:23, 2166:19, 2168:11, 2169:5, 2169:14, 2169:15, 2169:17, 2169:19, 2169:21, 2169:22, 2169:25, 2170:4, 2170:7, 2170:11, 2170:22, 2171:20, 2174:20, 2175:24, 2178:7, 2178:19, 2179:13, 2180:13, 2181:10, 2183:15, 2183:20, 2183:25, 2184:17, 2185:10, 2186:14, 2191:24, 2193:18, 2193:20, 2197:17, 2198:8, 2198:14, 2199:6, 2200:2
**reasonableness** [1] - 2156:12
**reasonably** [11] - 2152:13, 2170:23, 2179:6, 2179:21, 2184:13, 2195:11, 2197:2, 2197:13, 2198:2, 2199:9, 2199:17
**rebuttal** [1] - 2126:15
**REBUTTAL** [2] - 2126:18, 2211:4
**recap** [1] - 2208:9
**receive** [6] - 2147:12, 2149:4, 2159:22, 2190:16, 2196:9, 2204:13
**received** [13] - 2142:4, 2142:8, 2144:25, 2152:15, 2152:18, 2164:8, 2186:21, 2193:11, 2207:19, 2208:16, 2208:19, 2208:21, 2209:12
**receiving** [2] - 2149:14, 2201:19
**Recess** [1] - 2208:7
**recollection** [2] - 2201:11, 2201:12
**reconsider** [1] - 2203:19
**record** [6] - 2148:25, 2149:3, 2201:22, 2202:5, 2207:16, 2208:8
**recorded** [2] - 2125:20, 2132:18
**recordings** [5] - 2163:7, 2164:8, 2164:10, 2164:12, 2164:13
**records** [1] - 2163:8
**red** [1] - 2139:22
**redacted** [1] - 2144:21
**refer** [1] - 2165:12
**reference** [1] - 2150:10
**references** [1] - 2165:10
**referred** [2] - 2174:12, 2179:2
**regard** [8] - 2162:2, 2164:18, 2166:7, 2191:11, 2195:17, 2195:24, 2196:6, 2203:17
**regarding** [4] - 2149:24, 2150:5, 2168:17, 2200:5
**regardless** [5] - 2139:18, 2151:8, 2168:4, 2186:20, 2186:21
**regular** [1] - 2142:12
**regulations** [1] - 2138:7
**related** [4] - 2130:4, 2164:21, 2194:10, 2199:21
**relatedly** [1] - 2167:13
**relation** [1] - 2160:16
**relationship** [2] - 2156:15, 2193:5
**relevant** [7] - 2157:25, 2186:19,

2186:21, 2188:18, 2191:4, 2197:5, 2197:7
**relieve** [1] - 2186:24
**relieved** [1] - 2209:10
**religion** [1] - 2167:17
**rely** [2] - 2159:3, 2169:23
**relying** [1] - 2204:8
**remainder** [1] - 2128:17
**remains** [1] - 2185:18
**Remember** [1] - 2132:6
**remember** [9] - 2127:12, 2133:10, 2135:4, 2139:1, 2143:22, 2144:2, 2144:15, 2186:22, 2204:6
**remind** [6] - 2127:2, 2135:3, 2151:5, 2162:9, 2166:17, 2190:6
**reminded** [1] - 2195:24
**reminder** [3] - 2189:25, 2190:18, 2200:9
**remiss** [1] - 2134:12
**remove** [2] - 2165:17, 2173:17
**render** [3] - 2173:3, 2173:21, 2204:12
**rendering** [1] - 2167:9
**rending** [1] - 2146:20
**RENEE** [1] - 2125:8
**reorient** [1] - 2127:2
**repeat** [2] - 2127:1, 2159:16
**replay** [1] - 2210:2
**replayed** [1] - 2210:1
**report** [4] - 2138:2, 2138:18, 2138:19, 2142:9
**reporter** [1] - 2151:2
**Reporter** [1] - 2125:17
**REPORTER** [1] - 2125:17
**reporting** [1] - 2128:1
**reports** [1] - 2138:20
**Republic** [4] - 2165:11, 2189:12, 2189:21, 2191:19
**request** [5] - 2149:15, 2201:15, 2201:17, 2208:18, 2209:2
**require** [5] - 2161:16, 2170:3, 2170:25, 2172:6, 2207:3
**required** [12] - 2149:3, 2157:11, 2175:6, 2178:1, 2178:16, 2183:18, 2183:22, 2189:14, 2190:18, 2191:21, 2194:5, 2198:24
**requirement** [2] - 2161:10, 2181:15
**requires** [8] - 2145:23, 2148:24, 2175:1, 2175:23, 2177:6, 2178:12, 2190:14, 2196:7
**requisite** [1] - 2166:3
**research** [2] - 2135:11, 2137:5
**resolve** [1] - 2150:19
**respect** [5] - 2150:4, 2170:8, 2170:12, 2183:13, 2195:15
**respective** [1] - 2150:13
**respond** [1] - 2141:10
**responding** [1] - 2128:18
**responsibility** [3] - 2161:2, 2185:6, 2200:10

VB     OCR     CRR

**responsible** [3] - 2147:24, 2179:11, 2200:20
**restating** [1] - 2150:13
**rests** [3] - 2158:22, 2160:19, 2168:9
**result** [11] - 2165:24, 2171:24, 2174:4, 2195:10, 2197:1, 2197:11, 2197:25, 2199:7, 2199:8, 2199:12, 2199:15
**results** [1] - 2157:1
**retire** [1] - 2200:3
**return** [7] - 2126:24, 2146:12, 2146:19, 2147:4, 2147:24, 2167:1, 2210:5
**returns** [1] - 2142:3
**review** [2] - 2135:2, 2190:17, 2196:11
**Review** [1] - 2166:6
**reviewed** [1] - 2126:7
**rid** [1] - 2173:11
**rise** [1] - 2206:25
**role** [2] - 2139:10, 2177:5
**Role** [1] - 2150:11
**roles** [2] - 2150:13, 2177:4
**room** [10] - 2137:11, 2157:15, 2200:3, 2201:1, 2201:17, 2203:5, 2208:3, 2208:25, 2209:8, 2210:6
**rule** [4] - 2151:7, 2152:23, 2185:2, 2201:3
**rules** [8] - 2138:6, 2149:25, 2150:5, 2152:17, 2152:20, 2152:25, 2199:24, 2200:4
**running** [1] - 2127:23

## S

**Sabrina** [3] - 2194:21, 2195:9, 2195:13
**safety** [1] - 2147:16
**satisfied** [5] - 2169:12, 2170:7, 2171:25, 2183:12, 2185:7
**saw** [6] - 2129:3, 2143:20, 2146:7, 2148:7, 2152:21, 2207:12
**scene** [1] - 2177:10
**schedules** [2] - 2163:25, 2164:3
**scheme** [16] - 2126:23, 2133:6, 2134:10, 2136:5, 2140:12, 2143:6, 2144:14, 2145:10, 2147:6, 2175:9, 2175:10, 2175:15, 2176:9, 2176:11, 2177:5, 2180:3
**scope** [1] - 2176:18
**screen** [1] - 2144:22
**scrutinized** [1] - 2159:12
**scrutiny** [1] - 2134:24
**seamless** [1] - 2133:23
**seated** [3] - 2126:11, 2207:2, 2209:6
**second** [14] - 2127:20, 2133:6, 2145:16, 2150:2, 2170:15, 2173:11, 2174:23, 2175:23, 2176:23, 2181:24, 2184:4, 2192:2, 2197:21, 2198:13
**secrecy** [1] - 2175:18
**secret** [1] - 2131:16
**secretive** [2] - 2142:11, 2172:9
**Section** [8] - 2180:23, 2188:18,

2189:15, 2191:5, 2194:14, 2195:14, 2197:6
**SECURITY** [1] - 2124:21
**Security** [1] - 2133:2
**see** [8] - 2132:10, 2134:2, 2135:14, 2135:15, 2139:9, 2149:9, 2156:1, 2207:11
**seeing** [1] - 2130:5
**seek** [1] - 2183:2
**seem** [1] - 2156:6
**send** [4] - 2201:4, 2204:1, 2205:13, 2206:19
**sense** [6] - 2154:16, 2154:22, 2154:25, 2158:22, 2168:7, 2168:15
**senses** [1] - 2153:25
**sensitive** [1] - 2138:5
**sent** [9] - 2146:2, 2146:13, 2147:2, 2201:16, 2201:24, 2206:21, 2207:10, 2207:11, 2207:15
**sentence** [2] - 2160:18, 2168:9
**sentencing** [1] - 2160:20
**separate** [16] - 2130:11, 2167:1, 2173:1, 2173:2, 2173:3, 2173:21, 2174:14, 2177:2, 2187:4, 2187:13, 2187:14, 2187:23, 2190:8, 2196:1, 2207:24, 2208:3
**separately** [2] - 2166:25, 2173:20
**September** [4] - 2189:6, 2191:13, 2194:25, 2196:17
**seriously** [1] - 2146:25
**served** [1] - 2159:23
**sessions** [1] - 2161:4
**set** [2] - 2132:3, 2193:21
**sets** [1] - 2186:3
**setting** [1] - 2131:9
**seven** [1] - 2209:14
**several** [6] - 2134:22, 2139:8, 2154:8, 2166:24, 2187:4, 2187:14
**sex** [1] - 2167:17
**shaking** [1] - 2154:10
**shall** [4] - 2188:23, 2191:10, 2197:14, 2206:8
**shared** [1] - 2135:24
**sheet** [3] - 2204:14, 2206:21, 2207:17
**sheets** [1] - 2208:14
**shifts** [1] - 2169:6
**short** [1] - 2128:18
**shorter** [1] - 2148:23
**show** [8] - 2138:25, 2144:21, 2145:23, 2159:5, 2178:23, 2181:4, 2187:2, 2190:23
**showed** [2] - 2127:12, 2133:9, 2144:2
**shown** [6] - 2131:10, 2163:2, 2163:18, 2172:12, 2193:17, 2198:21
**shows** [3] - 2135:9, 2139:17, 2143:4
**side** [3] - 2152:20, 2162:6, 2166:13
**sidebar** [1] - 2204:16, 2205:1
**Sidebar** [2] - 2204:20, 2205:19
**signed** [3] - 2201:5, 2201:7, 2204:2

**significance** [3] - 2152:2, 2155:7, 2157:12
**significantly** [2] - 2137:10, 2137:11
**signing** [1] - 2200:20
**similarity** [1] - 2177:17
**similarly** [4] - 2175:8, 2177:12, 2178:21, 2188:7
**simple** [2] - 2154:4, 2169:6
**simply** [11] - 2127:5, 2152:3, 2152:22, 2153:7, 2172:22, 2185:2, 2192:21, 2198:10, 2203:22, 2204:1, 2208:11
**single** [11] - 2131:12, 2135:14, 2141:3, 2151:16, 2177:6, 2187:5, 2187:11, 2187:15, 2187:17, 2187:19, 2188:1
**sister** [6] - 2143:20, 2146:8, 2146:17, 2146:24, 2147:3, 2199:19
**sister-in-law** [1] - 2143:20
**sitting** [2] - 2154:13
**situation** [3] - 2146:20, 2147:5, 2198:19
**skill** [1] - 2158:7
**Skynet** [3] - 2129:9, 2129:12, 2137:6
**slate** [1] - 2169:11
**slide** [1] - 2140:17
**slides** [1] - 2133:9
**slip** [1] - 2136:3
**sliver** [2] - 2130:8, 2131:6
**small** [4] - 2130:8, 2131:6, 2144:14, 2207:8
**society** [1] - 2146:9
**sole** [2] - 2150:17, 2155:16
**solely** [8] - 2151:15, 2152:12, 2158:23, 2160:7, 2164:25, 2168:11, 2171:23, 2200:13
**solemnly** [1] - 2206:6
**solution** [1] - 2209:14
**someone** [7] - 2132:10, 2142:22, 2142:23, 2143:21, 2158:9, 2180:4, 2184:3
**sometimes** [4] - 2140:15, 2159:3, 2174:12, 2201:21
**son's** [2] - 2137:8, 2141:15
**soon** [1] - 2137:4
**SOPHIE** [1] - 2125:17
**sorry** [7] - 2150:24, 2162:20, 2174:2, 2179:18, 2180:19, 2182:8, 2183:8
**sovereign** [1] - 2192:14
**speakers** [1] - 2209:15
**speaking** [1] - 2153:17
**special** [3] - 2152:2, 2153:6, 2158:7
**specific** [9] - 2150:3, 2161:10, 2168:17, 2171:16, 2176:7, 2182:9, 2190:9, 2196:2, 2201:19
**specifically** [8] - 2132:14, 2171:2, 2189:5, 2189:21, 2192:1, 2194:23, 2196:15, 2208:23
**specified** [1] - 2193:16
**speculate** [3] - 2161:14, 2165:1, 2165:14
**speculation** [2] - 2155:1, 2170:1

**spelled** [1] - 2131:17
**spend** [2] - 2128:17, 2145:15
**spent** [1] - 2134:4
**spoken** [1] - 2175:13
**spouse** [1] - 2199:18
**stalk** [1] - 2131:13
**stalked** [1] - 2148:1
**stalking** [17] - 2127:10, 2127:24, 2137:20, 2142:15, 2142:16, 2142:18, 2143:5, 2149:20, 2149:21, 2173:15, 2173:18, 2180:10, 2180:17, 2195:20, 2196:5, 2196:14, 2197:16
**stand** [3] - 2134:24, 2157:4, 2157:15
**standing** [3] - 2131:25, 2132:1, 2159:8
**stands** [1] - 2204:5
**start** [5] - 2134:25, 2135:9, 2135:13, 2150:13, 2169:10
**started** [2] - 2136:7, 2208:10
**starting** [1] - 2205:3
**startled** [1] - 2144:10
**starts** [1] - 2132:24
**state** [5] - 2151:8, 2151:14, 2172:7, 2172:14, 2172:17
**statement** [5] - 2144:16, 2152:6, 2157:3, 2172:24, 2174:6
**statements** [14] - 2131:11, 2131:20, 2153:12, 2175:20, 2179:7, 2179:11, 2179:15, 2179:18, 2179:19, 2179:20, 2179:22, 2179:24, 2180:2, 2180:4
**states** [1] - 2198:11
**STATES** [4] - 2124:1, 2124:3, 2124:12, 2124:15
**States** [36] - 2124:5, 2124:19, 2128:4, 2133:3, 2147:11, 2147:15, 2147:17, 2167:22, 2173:9, 2173:13, 2180:15, 2180:23, 2180:25, 2188:17, 2188:18, 2188:21, 2188:24, 2189:2, 2189:11, 2189:14, 2189:15, 2189:20, 2191:4, 2191:5, 2191:8, 2191:18, 2191:21, 2192:4, 2192:9, 2192:12, 2192:18, 2194:14, 2195:14, 2197:6, 2198:11
**stating** [1] - 2151:17
**statute** [3] - 2181:3, 2191:5, 2197:5
**steer** [1] - 2138:1
**stenography** [1] - 2125:20
**step** [1] - 2145:21
**steps** [4] - 2136:7, 2142:21, 2143:5, 2185:21
**still** [4] - 2136:14, 2142:8, 2146:17, 2174:17
**stipulated** [1] - 2194:8
**stipulation** [1] - 2164:17
**stop** [1] - 2145:23
**stopped** [1] - 2209:21
**story** [3] - 2131:7, 2135:22, 2135:23
**strange** [1] - 2130:3
**strangers** [1] - 2147:15
**stress** [1] - 2146:20
**stressed** [1] - 2143:24
**stretch** [1] - 2199:23

**stricken** [1] - 2153:14
**structure** [1] - 2128:7
**studying** [1] - 2130:23
**subdivision** [1] - 2192:13
**subject** [5] - 2159:18, 2192:18, 2193:1, 2193:7, 2201:8
**subjective** [2] - 2184:2, 2198:25
**submit** [1] - 2143:4
**subpoena** [1] - 2166:12
**substantial** [8] - 2145:22, 2145:24, 2195:13, 2197:3, 2197:13, 2198:2, 2199:9, 2199:15
**substantive** [12] - 2183:18, 2183:23, 2184:7, 2184:11, 2184:12, 2184:14, 2185:3, 2185:7, 2185:9, 2185:11, 2185:13, 2189:24
**substitute** [1] - 2158:21
**subtitles** [2] - 2164:6, 2164:12
**succeed** [6] - 2138:4, 2142:21, 2143:6, 2143:12, 2182:1, 2183:3
**succeeded** [1] - 2136:2
**success** [1] - 2182:18
**successfully** [1] - 2127:13
**suck** [1] - 2189:23
**suffer** [2] - 2145:22, 2147:5
**suffered** [1] - 2199:14
**sufficient** [10] - 2170:4, 2170:21, 2171:14, 2177:6, 2177:22, 2178:19, 2178:23, 2182:13, 2190:22, 2193:6
**suggest** [2] - 2200:6, 2201:18
**suggested** [1] - 2137:22
**suggestion** [1] - 2137:24
**suggests** [1] - 2141:18
**Suite** [1] - 2125:7
**sum** [1] - 2178:6
**summaries** [5] - 2163:17, 2163:23, 2163:25, 2164:3
**summarize** [1] - 2173:5
**summation** [1] - 2129:4
**summations** [1] - 2153:12
**Sun** [2] - 2127:22, 2128:11
**sunny** [1] - 2154:7
**support** [1] - 2127:11
**suppose** [1] - 2154:6
**supposed** [3] - 2135:15, 2140:3, 2141:16
**surprising** [1] - 2131:15
**surrender** [2] - 2203:12, 2203:21
**surrounding** [2] - 2171:7, 2199:2
**surveil** [1] - 2143:10
**surveillance** [11] - 2133:14, 2136:24, 2137:12, 2137:16, 2138:14, 2143:16, 2144:8, 2145:2, 2194:19, 2195:7, 2196:24, 2197:10, 2197:23, 2198:16
**surveilling** [2] - 2137:13
**suspect** [1] - 2156:7
**suspicion** [1] - 2170:1
**suspicious** [4] - 2138:2, 2138:21, 2139:8, 2140:16

**sustained** [2] - 2153:1, 2167:15
**sustaining** [1] - 2151:25
**swear** [1] - 2206:6
**sworn** [3] - 2151:5, 2152:14, 2206:3
**sympathy** [1] - 2167:11
**system** [2] - 2147:22, 2148:2

**T**

**table** [1] - 2150:9
**tailing** [1] - 2143:21
**tape** [2] - 2208:12, 2208:19
**target** [1] - 2129:16
**tasted** [3] - 2153:25
**taught** [1] - 2172:14
**tax** [2] - 2142:3, 2165:25
**techniques** [4] - 2161:11, 2161:14, 2161:15, 2162:16
**telephone** [1] - 2131:20
**Telephone** [1] - 2125:17
**temperature** [1] - 2209:8
**tending** [1] - 2155:10
**term** [4] - 2192:10, 2192:16, 2199:18, 2199:19
**terminate** [1] - 2185:21
**terms** [1] - 2176:1
**Terrific** [1] - 2126:9
**terrorizing** [1] - 2148:6
**testified** [5] - 2143:19, 2143:20, 2146:5, 2156:10, 2163:1
**testify** [7] - 2156:15, 2157:7, 2157:8, 2157:13, 2158:6, 2158:20, 2166:12
**testifying** [4] - 2156:5, 2158:14, 2159:22, 2159:24
**testimony** [56] - 2130:1, 2146:3, 2146:16, 2152:14, 2153:14, 2153:23, 2155:8, 2155:15, 2155:16, 2155:17, 2155:23, 2155:24, 2156:9, 2156:12, 2156:17, 2156:18, 2156:19, 2156:21, 2156:22, 2156:23, 2157:6, 2157:18, 2157:21, 2158:1, 2158:2, 2158:8, 2158:12, 2158:16, 2158:17, 2158:19, 2159:4, 2159:7, 2159:8, 2159:9, 2159:12, 2159:14, 2159:21, 2160:2, 2160:17, 2160:22, 2160:25, 2161:5, 2162:7, 2162:8, 2162:9, 2163:1, 2163:6, 2164:1, 2166:14, 2166:15, 2186:19, 2201:13, 2201:16, 2201:19, 2201:22
**text** [2] - 2135:14, 2144:6
**texts** [2] - 2144:7, 2144:23
**THE** [36] - 2124:12, 2126:4, 2126:9, 2126:11, 2126:17, 2148:16, 2148:17, 2162:2, 2185:2, 2202:6, 2203:2, 2205:3, 2205:6, 2205:9, 2205:11, 2205:13, 2205:18, 2206:2, 2206:5, 2206:10, 2206:11, 2206:12, 2206:25, 2207:2, 2207:20, 2207:25, 2208:5, 2208:8, 2208:17, 2208:22, 2209:6, 2209:20, 2210:1, 2210:4, 2210:8,

2211:6
**themselves** [5] - 2163:21, 2164:11, 2169:16, 2178:22, 2182:3
**theory** [3] - 2158:9, 2180:21, 2183:9
**therefore** [7] - 2161:12, 2163:21, 2169:21, 2183:5, 2185:5, 2188:10, 2196:2
**thereof** [1] - 2201:16
**thinks** [1] - 2152:20
**third** [8] - 2150:5, 2168:20, 2174:24, 2178:12, 2184:7, 2192:6, 2197:25, 2199:5
**thoroughly** [1] - 2161:1
**threatened** [1] - 2127:13
**threatening** [3] - 2127:6, 2146:18, 2147:16
**Three** [13] - 2173:14, 2174:9, 2174:18, 2183:22, 2185:17, 2194:12, 2194:23, 2195:23, 2195:25, 2196:3, 2196:7, 2196:10, 2196:12
**three** [7] - 2131:25, 2132:1, 2147:21, 2149:23, 2174:19, 2188:14, 2197:18
**throughout** [3] - 2162:12, 2165:9, 2166:20
**throw** [1] - 2146:18
**timely** [1] - 2186:9
**Title** [7] - 2180:23, 2188:17, 2189:15, 2191:5, 2194:14, 2195:14, 2197:5
**today** [2] - 2127:10, 2154:8
**together** [14] - 2132:4, 2167:5, 2175:3, 2175:7, 2175:22, 2177:18, 2187:10, 2189:10, 2191:17, 2194:17, 2195:4, 2196:21, 2206:7
**token** [1] - 2167:24
**toll** [1] - 2146:10
**took** [6] - 2127:16, 2142:21, 2143:4, 2144:8, 2205:1, 2208:17
**total** [1] - 2148:23
**totally** [2] - 2144:10, 2144:13
**touch** [1] - 2128:15
**touched** [1] - 2153:25
**touching** [2] - 2201:2, 2201:8
**toward** [1] - 2164:23
**towards** [2] - 2136:1, 2203:9
**training** [2] - 2140:7, 2158:8
**transaction** [3] - 2141:25, 2142:12, 2172:10
**transactions** [1] - 2140:16
**Transcript** [1] - 2125:20
**TRANSCRIPT** [1] - 2124:11
**transcript** [3] - 2138:25, 2144:1, 2164:15
**Transcription** [1] - 2125:20
**transcripts** [2] - 2164:6, 2164:9
**transferred** [1] - 2137:6
**translated** [2] - 2163:2, 2163:6
**translation** [1] - 2163:12
**translations** [4] - 2163:4, 2163:7, 2163:8, 2163:13
**translators** [1] - 2151:3

**travel** [17] - 2130:17, 2132:22, 2133:2, 2138:10, 2147:13, 2147:20, 2194:17, 2195:5, 2195:10, 2196:22, 2197:1, 2197:11, 2198:1, 2198:10, 2199:7, 2199:13
**traveled** [5] - 2132:14, 2197:19, 2197:21, 2198:8, 2198:14
**travels** [1] - 2197:8
**treatment** [1] - 2159:22
**trees** [1] - 2149:16
**Trial** [1] - 2124:23
**trial** [24] - 2148:5, 2148:21, 2151:23, 2152:22, 2156:16, 2157:18, 2158:24, 2160:10, 2160:22, 2160:24, 2161:17, 2162:12, 2162:15, 2162:25, 2164:20, 2164:24, 2164:25, 2165:2, 2165:5, 2165:9, 2166:20, 2200:11, 2201:24, 2202:6
**TRIAL** [1] - 2124:11
**tried** [1] - 2167:5
**trip** [3] - 2136:9, 2147:2, 2148:22
**true** [6] - 2135:25, 2137:25, 2140:14, 2164:18, 2164:19, 2204:12
**truly** [1] - 2204:11
**truth** [8] - 2132:16, 2132:17, 2136:3, 2155:21, 2159:20, 2160:2, 2171:25, 2203:13
**truthfully** [1] - 2159:24
**try** [5] - 2136:6, 2147:15, 2147:19, 2153:3, 2204:11
**trying** [3] - 2129:6, 2137:25, 2141:6
**Tu** [3] - 2127:25, 2133:16, 2143:5
**TUNG** [3] - 2125:10, 2125:11, 2205:12
**Tung** [1] - 2205:11
**turn** [1] - 2170:15
**turning** [1] - 2150:11
**two** [16] - 2141:19, 2141:20, 2141:21, 2153:17, 2153:20, 2174:11, 2174:21, 2175:2, 2175:13, 2179:14, 2181:23, 2187:10, 2188:20, 2189:18, 2198:11, 2206:13
**Two** [14] - 2173:10, 2180:8, 2183:11, 2183:19, 2184:1, 2184:2, 2184:18, 2185:12, 2185:13, 2190:12, 2190:25, 2191:12, 2191:23, 2193:22
**type** [2] - 2154:2, 2185:23
**types** [4] - 2153:17, 2153:18, 2153:20, 2179:3
**typographical** [1] - 2207:9

**U**

**U.S** [4] - 2124:21, 2136:5, 2147:22, 2148:2
**ultimate** [1] - 2198:24
**ultimately** [1] - 2142:9
**umbrella** [2] - 2126:14, 2154:10
**unaccounted** [1] - 2141:12
**unanimous** [1] - 2203:24
**under** [16] - 2143:8, 2152:25, 2157:7,

2168:12, 2178:1, 2179:9, 2180:20, 2180:22, 2181:2, 2183:8, 2194:19, 2195:7, 2196:23, 2197:9, 2197:23, 2198:16
**undermining** [1] - 2186:6
**understood** [1] - 2129:19
**undertaking** [1] - 2178:11
**unfavorable** [3] - 2160:14, 2160:25, 2164:23
**unfortunately** [1] - 2151:1
**unimportant** [1] - 2157:1
**UNITED** [4] - 2124:1, 2124:3, 2124:12, 2124:15
**United** [36] - 2124:5, 2124:19, 2128:4, 2133:3, 2147:11, 2147:14, 2147:17, 2167:22, 2173:8, 2173:13, 2180:15, 2180:23, 2180:25, 2188:17, 2188:21, 2188:24, 2189:2, 2189:11, 2189:14, 2189:15, 2189:20, 2191:4, 2191:5, 2192:9, 2192:12, 2192:18, 2194:13, 2194:14, 2195:14, 2197:6, 2198:11
**unlawful** [15] - 2174:12, 2174:22, 2175:14, 2175:22, 2176:21, 2177:22, 2178:5, 2178:8, 2179:4, 2180:3, 2187:6, 2187:11, 2187:13, 2190:1, 2195:19
**unless** [2] - 2185:10, 2187:16
**unlike** [1] - 2148:1
**unpleasant** [2] - 2170:2, 2198:18
**unredacted** [1] - 2144:22
**unspoken** [1] - 2175:13
**unusual** [2] - 2130:3, 2130:16, 2139:24
**up** [16] - 2130:18, 2131:23, 2132:21, 2133:11, 2134:24, 2135:9, 2137:21, 2138:25, 2139:9, 2140:4, 2140:5, 2140:17, 2145:4, 2159:21, 2172:3, 2209:14
**upset** [4] - 2146:2, 2146:5, 2146:9, 2146:18
**user** [1] - 2165:22
**uses** [1] - 2174:1

**V**

**vacuum** [1] - 2137:10
**variety** [1] - 2162:16
**various** [2] - 2145:13, 2187:5
**vehicles** [1] - 2139:8
**venture** [3] - 2182:19, 2183:1, 2183:3
**verdict** [23] - 2151:10, 2153:19, 2153:21, 2167:1, 2167:3, 2167:10, 2168:4, 2168:15, 2173:3, 2173:21, 2173:24, 2200:7, 2200:12, 2203:10, 2203:23, 2204:1, 2204:3, 2204:12, 2204:13, 2204:14, 2206:20, 2207:17
**version** [2] - 2144:22, 2155:21
**versions** [1] - 2164:11
**victim** [2] - 2128:4, 2145:15



**victim's** [1] - 2136:7
**victims** [10] - 2126:24, 2127:6, 2127:13, 2143:3, 2145:13, 2145:18, 2146:5, 2147:5, 2147:23, 2148:1
**Video** [2] - 2209:25, 2210:3
**video** [8] - 2127:7, 2164:7, 2164:11, 2208:25, 2209:13, 2209:15, 2209:25, 2210:3
**videos** [2] - 2202:8, 2208:23
**videotape** [2] - 2202:1, 2202:3
**view** [2] - 2151:11, 2203:9
**viewed** [1] - 2159:13
**violate** [3] - 2138:6, 2175:16, 2190:7
**violated** [3] - 2165:21, 2165:25, 2171:16
**violating** [3] - 2152:5, 2165:22, 2203:11
**violation** [11] - 2151:10, 2188:17, 2189:4, 2190:8, 2190:12, 2191:22, 2194:14, 2194:22, 2196:1, 2196:4, 2196:14
**violations** [1] - 2165:24
**virtue** [1] - 2153:24
**voice** [1] - 2135:18
**voluntarily** [1] - 2171:4
**vote** [1] - 2200:23

## W

**wait** [1] - 2207:10
**waiver** [1] - 2136:18
**walk** [1] - 2141:6
**walking** [1] - 2133:14
**wall** [2] - 2208:14, 2209:16
**wants** [5] - 2132:1, 2135:6, 2135:7, 2142:17, 2209:21
**ward** [1] - 2199:19
**warning** [1] - 2186:9
**warrant** [1] - 2140:9
**warranted** [1] - 2150:21
**Washington** [1] - 2124:22
**ways** [1] - 2145:13
**weakening** [1] - 2186:6
**wearing** [1] - 2154:9
**weather** [2] - 2133:20, 2154:7
**weeks** [1] - 2132:24
**weigh** [2] - 2168:10, 2199:25
**weighing** [4] - 2156:24, 2157:23, 2158:12, 2169:18
**weight** [9] - 2150:18, 2153:20, 2155:17, 2157:22, 2158:2, 2158:17, 2200:23, 2203:13, 2203:22
**wet** [2] - 2154:10
**whereas** [1] - 2174:3
**whim** [1] - 2169:25
**whole** [2] - 2151:18, 2157:4
**wholly** [1] - 2186:10
**wife** [2] - 2146:16, 2147:17
**willful** [2] - 2142:10, 2172:8

**willfully** [2] - 2189:11, 2195:5
**windows** [1] - 2154:9
**wink** [1] - 2135:24
**wire** [1] - 2137:4
**wisdom** [1] - 2151:7
**wise** [1] - 2172:11
**wished** [1] - 2182:24
**wit** [4] - 2189:12, 2191:19, 2195:8, 2196:25
**withdraw** [2] - 2185:20, 2186:8
**withdrawal** [4] - 2127:9, 2146:8, 2185:18, 2186:5
**withdraws** [1] - 2185:18
**withdrew** [3] - 2185:16, 2186:17, 2186:18
**witness** [33] - 2130:1, 2152:1, 2153:23, 2155:8, 2155:19, 2155:20, 2156:6, 2156:10, 2156:14, 2156:18, 2156:22, 2157:3, 2157:15, 2157:19, 2157:23, 2158:1, 2158:2, 2158:6, 2158:20, 2159:4, 2159:24, 2160:4, 2160:8, 2160:11, 2160:12, 2160:13, 2160:18, 2160:19, 2161:6, 2162:7, 2166:13, 2169:9
**witness'** [1] - 2163:6
**witness's** [12] - 2155:22, 2155:24, 2156:1, 2156:3, 2156:5, 2156:9, 2156:12, 2156:17, 2158:13, 2158:16, 2161:5, 2201:15
**witnesses** [20] - 2152:15, 2155:12, 2155:17, 2156:19, 2156:22, 2158:4, 2158:25, 2159:2, 2159:18, 2159:19, 2160:16, 2160:21, 2160:23, 2161:3, 2162:6, 2162:14, 2162:25, 2166:12, 2166:22, 2186:20
**witnesses'** [1] - 2201:15
**women** [1] - 2147:14
**wonder** [3] - 2129:10, 2129:14, 2149:1
**wondering** [1] - 2169:15
**WONG** [1] - 2125:8
**word** [7] - 2130:2, 2135:1, 2135:10, 2174:1, 2174:3, 2174:4, 2174:6
**words** [7] - 2169:10, 2169:16, 2172:15, 2172:17, 2175:9, 2185:22, 2199:2
**works** [1] - 2142:20
**world** [1] - 2147:13
**worry** [1] - 2138:21
**worthy** [1] - 2157:6
**wraps** [1] - 2143:8
**writing** [7] - 2131:12, 2131:17, 2134:7, 2134:16, 2175:9, 2201:7, 2201:9
**written** [4] - 2134:16, 2134:20, 2134:21, 2163:3
**wrote** [2] - 2198:22, 2208:13

## X

**Xinzi** [3] - 2194:21, 2195:8, 2195:12
**XU** [1] - 2165:10

**Xu** [37] - 2127:13, 2128:4, 2129:20, 2135:7, 2136:4, 2136:9, 2136:10, 2136:12, 2136:15, 2144:19, 2144:25, 2145:9, 2145:21, 2146:17, 2146:20, 2147:2, 2165:10, 2194:20, 2194:21, 2195:8, 2195:9, 2195:13, 2196:25, 2197:3, 2197:24, 2198:3, 2198:17, 2199:10, 2199:13, 2199:14, 2199:20, 2199:21

## Y

**Yan** [8] - 2132:25, 2135:9, 2135:21, 2137:2, 2143:19, 2144:8, 2145:8, 2146:7
**yesterday** [4] - 2126:21, 2127:1, 2127:17, 2127:20
**Yong** [15] - 2125:10, 2127:20, 2128:2, 2128:5, 2130:11, 2131:24, 2132:13, 2149:18, 2188:15, 2189:2, 2189:9, 2191:1, 2191:16, 2195:3, 2196:20
**YONG** [1] - 2124:8
**YORK** [1] - 2124:1
**York** [9] - 2124:6, 2124:16, 2124:17, 2125:7, 2125:11, 2189:8, 2191:15, 2195:2, 2196:19
**yourself** [5] - 2129:14, 2149:1, 2182:22, 2201:14, 2203:14
**yourselves** [3] - 2159:19, 2203:7, 2206:16

## Z

**Zheng** [17] - 2125:7, 2127:4, 2127:13, 2127:18, 2149:17, 2149:18, 2185:15, 2186:16, 2186:18, 2186:23, 2189:15, 2189:1, 2189:9, 2191:1, 2191:16, 2195:3, 2196:20
**ZHENG** [1] - 2124:8
**ZHU** [1] - 2124:8
**Zhu** [44] - 2124:9, 2125:10, 2127:20, 2127:21, 2128:1, 2128:2, 2128:5, 2128:10, 2130:11, 2130:12, 2131:24, 2132:8, 2132:13, 2133:17, 2133:24, 2134:1, 2135:21, 2135:22, 2136:2, 2136:8, 2137:1, 2137:2, 2141:17, 2143:5, 2143:7, 2144:7, 2144:8, 2144:23, 2145:3, 2145:4, 2188:15, 2188:16, 2189:1, 2189:2, 2189:9, 2189:10, 2191:1, 2191:2, 2191:16, 2191:17, 2195:3, 2195:4, 2196:20, 2196:21